**Lawrence E. Buterman**
Direct Dial: 212.906.1264
lawrence.buterman@lw.com

53rd at Third
885 Third Avenue
New York, New York 10022-4834
Tel: +1.212.906.1200 Fax: +1.212.751.4864
www.lw.com

LATHAM & WATKINS LLP

FIRM / AFFILIATE OFFICES
Beijing Moscow
Boston Munich
Brussels New York
Century City Orange County
Chicago Paris
Dubai Riyadh
Düsseldorf San Diego
Frankfurt San Francisco
Hamburg Seoul
Hong Kong Shanghai
Houston Silicon Valley
London Singapore
Los Angeles Tokyo
Madrid Washington, D.C.
Milan

September 25, 2020

**VIA ECF**

Hon. Judge Margo K. Brodie
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *NASL v. U.S. Soccer and MLS*, No. 1:17-cv-5495

Dear Judge Brodie:

Pursuant to the Court's September 18, 2020 Order, Defendant United States Soccer Federation, Inc. ("U.S. Soccer") responds to Plaintiff North American Soccer League, LLC's ("NASL") request for leave to file a motion for summary judgment ("Letter").

NASL's Letter largely rehashes its previous request for piecemeal adjudication of summary judgment on issues it wants prioritized. (ECF No. 180-3, "2019 Letter".) The Court denied that earlier request, finding "that deciding liability as to only one of Plaintiff's claims would neither be efficient nor promote judicial economy." (ECF No. 185.) U.S. Soccer respectfully submits that same logic applies here, and NASL's proposed motion for summary judgment on liability under Section 1 should proceed in tandem with Defendants' motions for summary judgment on all of Plaintiff's claims. In accordance with Rule 56, ¶3(A) of Your Honor's Rules, and Magistrate Judge Tiscione's recent order (ECF No. 220), letters requesting pre-motion conferences seeking summary judgment are due 30 days after the close of all discovery, which is October 15, 2020. Defendants anticipate filing pre-motion letters on that schedule, which provides time for the parties to receive the final transcripts and errata for NASL's three expert witnesses, and will propose that all summary judgment and *Daubert* motions be fully briefed by January 22, 2021. There is no reason the Court should hold a conference before Defendants submit their letters.

Timing aside, NASL's Letter mischaracterizes both the evidentiary record and the case law in an attempt to obfuscate what is now crystal clear: after the production of hundreds of thousands of documents and more than 70 depositions, NASL has no evidence of an unlawful agreement between U.S. Soccer and MLS, or of harm to competition in any relevant antitrust market.[1] Nor can NASL establish that the Professional League Standards ("the Standards") unreasonably

---

[1] NASL's 2019 letter was replete with false and misleading representations of the record in this case. U.S. Soccer addressed several of the most egregious misrepresentations in its response. (ECF No. 189.) NASL's Letter suffers from the same problem. The evidence NASL attached to its Letter is not "direct or circumstantial evidence that tends to exclude the possibility that the alleged conspirators acted independently," and therefore NASL's claims must be dismissed as a matter of law. *Anderson News, LLC v. Am. Media, Inc.*, 899 F.3d 87, 98 (2d. Cir. 2018).

LATHAM&WATKINS LLP

restrain trade. These failures demand the dismissal of this meritless case. NASL's Letter and proposed motion are nothing more than an attempt to muddy the waters in the hope that the Court will ignore its failure to meet its burden as an antitrust plaintiff.

**A. NASL's Cannot Sustain Its Burden Under Section 1**

For seven years, NASL operated as a Second Division men's professional soccer league. And for seven years, the NASL was an abject failure. Discovery has confirmed what history showed: the league never made a penny, was plagued by poor management, teams came and left every year, it had no significant sponsors, its Chairman was indicted as part of a major bribery scandal, and a criminal enterprise owned several of its teams. Nonetheless, NASL blames U.S. Soccer for its demise and seeks over [redacted] Not surprisingly, NASL cannot back up the conspiracy theories in its Amended Complaint, and it is telling that while seeking permission to file a summary judgment motion on its Section 1 claims against U.S. Soccer and MLS, NASL does not describe *any* direct or circumstantial evidence of concerted action to adopt or apply the Standards to "protect" MLS from competition from NASL. NASL's Letter mischaracterizes and selectively excerpts its many exhibits, and is significantly at odds with both controlling precedent and its own experts' testimony.

**1. NASL Has No Evidence That U.S. Soccer and MLS Engaged In Concerted Action**

As U.S. Soccer and this Court have noted, NASL's theory of concerted action has always been a moving target. (ECF No. 189 at 1-2 (citing *NASL v. U.S. Soccer*, 296 F. Supp. 3d 442, 461 n.27 (E.D.N.Y. 2017)).) After years of discovery, NASL still has no evidence of concerted action between U.S. Soccer and MLS, and so once again has changed its theory. NASL's Letter suggests that is it is absolved of its burden to show concerted action because the Amended Complaint alleges that "the Standards themselves—in totality—[are] violative of the antitrust laws." Ltr. at 2. Not so. NASL must still show that U.S. Soccer's Board members, "in their individual capacities, consciously committed themselves to a common scheme designed to achieve an unlawful objective." *NASL v. U.S. Soccer*, 883 F.3d 32, 40 (2d Cir. 2018). Nor did the Second Circuit's ruling change the well-established principle that constituency membership associations, like U.S. Soccer, are not a "walking conspiracy" such that every Board action amounts to concerted action under the antitrust laws. *AD/SAT v. Assoc. Press*, 181 F.3d 216, 234 (2d Cir. 1999).

Under well-established law, NASL's argument that U.S. Soccer's promulgation of the Standards in 1995 is direct evidence of an alleged conspiracy with MLS fails right out of the gate. As the Second Circuit said: "As for USSF sheltering MLS from competition in the mid-1990's, USSF's alleged co-conspirator leagues did not yet exist. Any anticompetitive promulgation or misuse of the Standards would be attributable to USSF alone. And unilateral action does not violate § 1 of the Sherman Act." *NASL*, 883 F.3d at 44. Discovery confirmed that no Board member affiliated with any professional league participated in any vote to revise or apply the Standards. [redacted] NASL's tepid assurance that it will show "that MLS participated in this concerted undertaking," without citation to any evidence, makes clear that NASL will not be able to satisfy its threshold burden on its Section 1 claims.

LATHAM&WATKINS LLP

### 2. NASL Cannot Establish That the Standards Are An Unreasonable Restraint of Trade Under Controlling Law

NASL's Letter misstates the law and its own burden as a plaintiff in an antitrust case. For instance, NASL's suggestion that the Court can decide the second element of NASL's Section 1 claim—whether the Standards unreasonably restrain trade—by first examining U.S. Soccer's procompetitive justifications for the Standards, Ltr. at 3, gets the law exactly backwards. Under controlling Second Circuit precedent, "[o]nly after a plaintiff has successfully met its initial burden [to show anticompetitive effects] under the rule of reason must an antitrust defendant offer evidence to exonerate its conduct." *Capital Imaging Assoc., P.C. v. Mohawk Valley Med. Assoc.,* 996 F.2d 537, 547 (2d Cir. 1993). Further, NASL's attempted reliance on "direct evidence" of anticompetitive effects also ignores controlling precedent. *Ohio v. Am. Express Co.*, 138 S.Ct. 2274, 2285 n.7 (2018). Finally, NASL's attempt to invoke the "quick look" test has already been rejected by the Second Circuit. *See NASL*, 883 F.3d at 41 ("Here, however, far from being obviously anticompetitive, the Standards could be found to have a net procompetitive effect, or no competitive effect at all."). NASL's Letter provides zero indication of how it plans to face reality and prove harm to competition in a properly defined antitrust market, as the law requires. Discovery has, instead, confirmed that the Standards did not harm competition, including in the markets NASL alleged in its amended complaint. Indeed, it is undisputed that output of professional soccer has grown across every metric since the Standards were first introduced in 1995. Moreover, though NASL may have failed as a league, multiple new professional leagues have emerged and every former NASL team that still wishes to field a professional soccer team does so—just in a league that isn't named "NASL." *See Capital Imaging*, 996 F.2d at 547 (affirming summary judgment where plaintiff only showed harm as an individual competitor).[2]

* * *

NASL does not present any coherent argument for why the Court should conduct a conference regarding NASL's motion first and on a different timetable than the other forthcoming motions. The fact that NASL is willing to abandon its Section 2 claims speaks volumes about how little confidence NASL (rightly) has in those claims, but has no bearing on whether the Court should hold a pre-motion conference in advance of receiving Defendants' letters. Defendants plan to file their pre-motion letters on October 15 in accordance with the Court's prescribed schedule. This timing will ensure that Defendants have received final deposition transcripts and the erratas from NASL's three recent expert depositions. In conjunction with those pre-motion letters, Defendants will propose that the parties serve any summary judgment and *Daubert* motions on the same schedule, with motions due on November 6, 2020, oppositions due on December 21, 2020, and replies due on January 22, 2021.

---

[2] NASL assures the Court that it can establish "each of the elements of liability under Sherman Act § 1," Ltr. at 3, but its Letter does not even address each element of liability, much less every element of its claims. NASL's requested motion is therefore procedurally improper because, as a plaintiff, "it is not appropriate to use summary judgment as a vehicle for fragmented adjudication of non-determinative issues." *Walker v. Carter*, 210 F.Supp. 3d 487, 505 (S.D.N.Y. 2016). Of course, courts frequently consider single element summary judgment motions from defendants, who can be entitled to a full judgment for defeating only a single element of a plaintiff's claim.

LATHAM&WATKINS LLP

Respectfully submitted,

*/s/ Lawrence E. Buterman*

Lawrence E. Buterman
of LATHAM & WATKINS LLP

cc: All Counsel of Record (via email)