UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NORTH AMERICAN SOCCER LEAGUE, LLC,<br><br>          Plaintiff,<br><br>  v.<br><br>UNITED STATES SOCCER FEDERATION, INC. and MAJOR LEAGUE SOCCER, L.L.C.,<br><br>          Defendants. | Case No. 1:17-cv-05495-HG<br><br><br>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO RECONSIDER AND FOR CLARIFICATION |

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................1

ARGUMENT ..............................................................................................................................2

I. The Standards for Reconsideration and Clarification. .........................................................2

II. The Scope of the Court's Decision on Market Definition Requires Clarification. ...............2

III. The Court Should Consider MLS's Motion to Dismiss the Part of Count III That Alleges a Conspiracy to Monopolize Division 2. ..................................................................7

IV. Professor Solomon Should be Allowed to Rebut Professor Szymanski's Scaled-Back Regulatory Capture Opinions. ......................................................................................9

CONCLUSION ..........................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bank of N.Y. Mellon, London Branch v. Cart 1, Ltd.*,
   No. 18-CV-6093 (JPO), 2021 WL 2358695 (S.D.N.Y. June 9, 2021) ...................... 2

*Cap. Imaging Assocs. P.C. v. Mohawk Valley Med. Assocs., Inc.*,
   996 F.2d 537 (2d Cir. 1993) .................................................................................... 5

*Golden Unicorn Enterprises, Inc. v. Audible, Inc.*,
   682 F. Supp. 3d 368 (S.D.N.Y. 2023) .................................................................... 10

*Liberty Media Corp. v. Vivendi Universal, S.A.*,
   861 F. Supp. 2d 262 (S.D.N.Y. 2012) ...................................................................... 2

*Med. Depot, Inc. v. Med Way US, Inc.*,
   No. 2:22-cv-01272 (OEM) (SIL), 2024 WL 1835374 (E.D.N.Y. Apr. 26, 2024) ................................................................................................................... 10

*N. Am. Soccer League, LLC v. U.S. Soccer Fed'n*,
   296 F. Supp. 3d 442 (E.D.N.Y. 2017), *aff'd*, 833 F.3d 32 (2d Cir. 2018) ................ 5

*Ohio v. Am. Express Co.*,
   585 U.S. 529 (2018) ................................................................................................. 5

*RxUSA Wholesale, Inc. v. Alcon Labs., Inc.*,
   661 F. Supp. 2d 218 (E.D.N.Y. 2009), *aff'd*, 391 F. App'x 59 (2d Cir. 2010) ......... 8

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
   956 F.2d 1245 (2d Cir. 1992) .................................................................................. 2

**OTHER AUTHORITIES**

Fed. R. Civ. P. 16 .............................................................................................................. 6

Defendants United States Soccer Federation, Inc. ("U.S. Soccer") and Major League Soccer, L.L.C. ("MLS") respectfully submit this Memorandum of Law in support of their Motion to Reconsider and for Clarification of Judge Cogan's Memorandum Decision and Order dated June 12, 2024, which granted in part and denied in part Defendants' motions for summary judgment and denied Plaintiff North American Soccer League, LLC's ("NASL") motion for summary judgment (the "Order") (ECF No. 399).

## INTRODUCTION

Reconsideration or clarification is appropriate to correct three issues in the Order:

*First*, Defendants seek clarification of an ambiguous statement in the Order relating to market definition. NASL wrongly claims that the statement demonstrates that the Court intended to resolve conclusively that hotly contested issue against Defendants and to take the issue of market definition away from the jury. NASL never sought that relief, the issue was never briefed, and the rest of the Court's order makes plain that the Court did not and could not have intended any such thing.

*Second*, MLS seeks reconsideration of its motion for summary judgment concerning Count III. The Court did not address that part of MLS's motion, and mistakenly stated that the parties had sought no relief on Counts III-V. MLS respectfully requests that the Court reconsider the denial of summary judgment as to Count III and, upon reconsideration, dismiss the portion of Count III that alleges a conspiracy to monopolize Division 2.

*Third*, U.S. Soccer seeks reconsideration of NASL's motion to exclude the testimony of U.S. Soccer's expert Stephen Solomon in its entirety. The Order excluded Professor Solomon's opinions entirely given the extensive limitations the Court placed on the testimony of NASL's expert Professor Szymanski. The Order nonetheless appears to allow limited testimony from

Professor Szymanski on the issue of "regulatory capture." If Professor Szymanski in fact provides testimony on that issue, then Professor Solomon should be allowed to offer limited rebuttal.

## ARGUMENT

### I. The Standards for Reconsideration and Clarification.

"Motions for reconsideration are governed by Local Rule 6.3 and are committed to the sound discretion of the district court." *Liberty Media Corp. v. Vivendi Universal, S.A.*, 861 F. Supp. 2d 262, 265 (S.D.N.Y. 2012). A motion for reconsideration may be granted to "correct a clear error or prevent manifest injustice." *Id.* (cleaned up); *see also Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).

"[A] motion for clarification is not intended to alter or change a court's order, but merely to resolve alleged ambiguities in that order." *Bank of N.Y. Mellon, London Branch v. Cart 1, Ltd.*, No. 18-CV-6093 (JPO), 2021 WL 2358695, *1 (S.D.N.Y. June 9, 2021) (citation omitted).

### II. The Scope of the Court's Decision on Market Definition Requires Clarification.

Defendants request that the Court clarify that the issue of market definition remains a disputed question for resolution at trial. NASL contends that the Order grants NASL summary judgment on this issue (rather than just denying Defendants' motion) and, thus, takes the issue away from the jury. NASL's position is both unsupportable and unreasonable.

Defendants sought to exclude the testimony of Plaintiffs' economic expert, Dr. Roger Noll, because, among other reasons, the relevant markets that he identified were not the same as the ones pleaded in NASL's Amended Complaint. *See* Defendants' Joint Motion to Exclude the Opinions of Roger Noll [ECF Nos. 290, 291]. Both U.S. Soccer and MLS argued in their summary judgment motions that without Dr. Noll's testimony, NASL had no evidence with which to prove its pleaded markets. *See, e.g.*, MLS's Motion for Summary Judgment [ECF No. 283] ("MLS Moving Br.")

2

at 45-48; U.S. Soccer's Motion for Summary Judgment [ECF No. 262] at 28-29.[1] The Court rejected these arguments, stating that Dr. Noll could offer testimony on his proposed relevant markets at trial. *See* Order at 31-32, 36, 52.

However, the Court went on to say that NASL's "definition of the relevant markets will govern during the trial" and that "as to the element of market definition, *NASL's motion for summary judgment is granted* and defendants' is denied." *Id.* at 53 (emphasis added). But NASL never moved for summary judgment on market definition. NASL now opportunistically latches onto this stray clause to contend that the Court has resolved the relevant market issue conclusively against the Defendants. It is obvious the Court intended only to reject Defendants' arguments for summary judgment on the market definition issue and to allow the issue to be tried to the jury. Accepting NASL's position would be error, for multiple reasons.

*First*, rather than seeking summary judgment on market definition, NASL insisted in its motion that the Court need *not* address market definition *and* that the issue would require expert testimony at trial if the Court did not apply the *per se* rule or quick look test. NASL's summary judgment motion focused on its contention that the *per se* rule or "quick look" standard should apply to its case. *See* NASL's Motion for Summary Judgment [ECF No. 293] at 5-6, 42-48. NASL made clear that one of the features of a *per se* or a "quick look" case is that "no analysis of the relevant market or market power is required." *Id.* at 37. Indeed, NASL represented that "[i]f the Court does not hold that the *per se* rule or quick look test applies on [its summary judgment motion],

---

[1] Defendants also argued that Dr. Noll's claimed relevant markets are not viable as a matter of economics or controlling law, although they do not seek reconsideration of that issue and it is preserved for further consideration under Rule 50 or appeal, if necessary. *See, e.g.*, U.S. Soccer's Motion for Summary Judgment at 27-36.

3

NASL would proceed to prove a full rule of reason violation at trial with expert evidence addressing the market definition and market power issues." *Id.* at 38 n.15.

Thus, NASL never sought summary judgment on the issue of relevant market and never briefed the issue, other than to recognize in opposing Defendants' motions that "market definition is a deeply fact-intensive inquiry." *See, e.g.*, NASL's Opposition to MLS's Motion for Summary Judgment [ECF No. 289] ("NASL Opp.") at 37. Nor did Defendants brief market definition in their Joint Opposition, instead focusing on the issues NASL raised. *See* Defendants' Joint Opposition to NASL's Motion for Summary Judgment [ECF No. 307] and Defendants' Joint Response to NASL's Rule 56.1 Statement [ECF No. 308]. Notably, the phrase "market definition" does not appear in either NASL's Rule 56.1 Statement or Defendants' Joint Response.

**Second,** a grant of summary judgment to NASL on the relevant market issue would be inconsistent with the remainder of the Order and the substance of its reasoning. As an initial matter, the Court expressly—and repeatedly—said that it was denying NASL's motion for summary judgment, not that it was granting it in whole or in part. *See* Order at 2, 43, 53, 63. And other than one stray phrase on page 53, every other part of the Order recognizes that market definition is an issue for trial. In ruling on Defendants' Joint Motion to Exclude the Opinions of Dr. Noll [ECF No. 290], the Court stated that although "there may be weaknesses or oversights in Noll's approach, those weaknesses are better left to cross examination rather than exclusion." Order at 31-32. The Court concluded its discussion of the Defendants' *Daubert* motion with the statement that "Noll may testify consistent with the above rulings." *Id.* at 36. And, in addressing Defendants' summary judgment motions, the Court reiterated that "[a]bove, I held that Dr. Noll will be permitted to testify as to his market definition-related opinions." *Id.* at 52. The Court further reiterated that the rule of reason would apply to NASL's claims at trial, and that NASL "bears the initial burden of

demonstrating that the PLS have an 'actual adverse effect on competition as a whole in the relevant market.'" *Id.* at 54 (quoting *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n*, 296 F. Supp. 3d 442, 469-70 (E.D.N.Y. 2017) ("*NASL I*"), *aff'd*, 833 F.3d 32 (2d Cir. 2018)). The threshold issue at this first step of the rule of reason—on which NASL bears the burden of proof—is, of course, a properly defined relevant market. *See Ohio v. Am. Express Co.*, 585 U.S. 529, 543 (2018) ("Without a definition of [the] market there is no way to measure [the defendant's] ability to lessen or destroy competition." (citation omitted)); *see also Cap. Imaging Assocs. P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 543 (2d Cir. 1993).

Despite these rulings, NASL now contends that the Court actually meant to say that NASL's proposed market definition was established for all purposes at trial. But such a ruling would have made no sense, because: (i) NASL never sought that relief—indeed, NASL itself argued that market definition *was* an issue for trial; (ii) NASL never claimed that its alleged relevant markets were undisputed as a matter of fact; and (iii) NASL never challenged the market definition opinions of U.S. Soccer's expert, Professor Kevin Murphy or sought to limit his extensive opinions on market definition in any way. The appropriate, and only fair, reading of the Court's decision is that NASL is permitted to advance the markets from Dr. Noll's report in attempting to meet its burden to prove its claim under the rule of reason at trial. But that does not mean that Defendants cannot challenge that market definition, or that the *jury* must accept it.

**Third**, it would be clear error to bar Defendants from offering evidence on market definition at trial. The parties hotly dispute numerous issues regarding the appropriate relevant market, including: (i) whether the proper geographic market for teams should be the U.S. or worldwide; (ii) whether the proposed team markets are too narrow because team investors have many other choices beyond investing in a Division 1 (or "D1") or Division 2 (or "D2") team; and

5

(iii) whether the proposed sanctioning market is too narrowly limited to D1/D2, and whether Division 3 or no divisional sanctions are reasonable substitutes.

There are plainly numerous issues regarding relevant market for a jury to consider. Discussion of the expert testimony that Defendants intend to provide on this issue can be seen in the expert reports of U.S. Soccer's economist Kevin Murphy [available at ECF No. 306 (Shiftan Ex. 7)] at 66-82, and MLS's economist Jonathan Walker [available at ECF No. 306 (Shiftan Ex. 5)] at 55-111.

Defendants will also present business records and percipient witness testimony that address this issue. For example, owners of MLS teams also own teams in Europe. In addition, when Rocco Commisso, the billionaire who is funding this lawsuit, decided he did not want to have his team (the NY Cosmos) play in another league in the United States, he simply went to Italy and purchased a team called AC Fiorentina that plays in the Italian league Serie A. Nor is the product market limited to men's soccer teams. Investors seeking to invest in sports invest in all kinds of sports across the world, including—for those who insist on investing only in soccer teams—women's teams. The Court did not—and had no reason to—consider any of this evidence, because NASL's summary judgment motion did not place this issue before the Court.

It would be error to preclude Defendants from defending this case on market definition grounds at trial. Nevertheless, citing the statement in the Order that "as to the element of market definition, NASL's motion for summary judgment is granted," NASL is now suggesting, opportunistically, that the Court meant to take the relevant market issue away from the jury as a matter of "trial management" under Fed. R. Civ. P. 16 (concerning pretrial conferences), without any hint that this is what the Court intended, without any pretrial conference having been held up to that point, and without regard for the Order's clear language that Dr. Noll's testimony on this

issue would be subject to cross-examination. NASL's suggestion is groundless, and the Court should clarify that market definition remains a triable issue to be presented to the jury.[2]

### III. The Court Should Consider MLS's Motion to Dismiss the Part of Count III That Alleges a Conspiracy to Monopolize Division 2.

Counts III, IV, and V of the Amended Complaint comprise NASL's Sherman Act Section 2 monopolization claims. *See* Amended Complaint [ECF No. 57] at ¶¶ 279–302. In Count III, NASL alleges that U.S. Soccer and MLS conspired to monopolize the market for "top-tier" and "second-tier" soccer leagues (corresponding to the D1 and D2 tiers in U.S. Soccer's Professional League Standards). *Id.* at ¶¶ 279-85. In Count IV, asserted against MLS only, NASL alleges that MLS has monopolized the market for "top-tier" men's professional soccer leagues. In Count V, also asserted against MLS only, NASL alleges a claim of *attempted* monopolization of that same market.

MLS moved for summary judgment on Counts III-V, and the parties fully briefed these issues. *See* MLS Moving Br. at 51-53; NASL Opp. at 44-48; MLS Reply in Support of its Motion for Summary Judgment [ECF No. 310] ("MLS Reply") at 25-30.

The Order states incorrectly that MLS did not move for summary judgment on or seek any relief as to Counts III-V. Order at 8, 57. However, MLS does not seek a blanket reconsideration of its motion as to Counts III-V, but rather focuses its request to ask that the Court consider MLS's unaddressed motion for summary judgment as to Count III, to the extent that it concerns an alleged conspiracy to monopolize D2.[3]

---

[2] In the unlikely event the Court did intend to take the issue of market definition away from the jury, Defendants seek reconsideration of the Order.

[3] MLS focuses its request because it recognizes that the Court's ruling on Count II subsumes certain of the arguments that MLS also made as to Counts III-V; notably that it is an issue of fact whether there was a conspiracy to apply the Professional League Standards so as to maintain

7

Specifically, MLS argued that NASL's claims with respect to D2 failed because MLS did not compete in the alleged D2 market. As the Second Circuit has observed, "it is axiomatic that a firm cannot monopolize a market in which it does not compete." *RxUSA Wholesale, Inc. v. Alcon Labs., Inc.*, 661 F. Supp. 2d 218, 227 (E.D.N.Y. 2009), *aff'd*, 391 F. App'x 59 (2d Cir. 2010) (citation omitted). Although NASL attempted to cure this deficiency by alleging in its Complaint that USL—a separately owned league that *is* a competitor in the alleged D2 market—was also a member of the alleged conspiracy, NASL advanced no evidence whatsoever that USL had joined any such conspiracy. MLS Moving Br. at 51-52.

In its Opposition, NASL did not dispute that it lacked evidence that USL was a member of the conspiracy. *See* NASL Opp. at 44-46. Rather, it argued that because some MLS operator-investors also owned reserve teams that played in USL at the time, MLS itself could be said to be a competitor in the alleged D2 market. *Id.*[4] MLS addressed this argument in its Reply, pointing out: (i) that the *competitor* in NASL's alleged D2 market was the league itself, not the teams that participated in the league; (ii) that neither MLS nor any of its operator-investors owned any interest in USL—the league is privately owned and the owners have no connection to MLS; and (iii) even if ownership of a team in a league could render a team owner a competitor in the alleged league market, MLS did not own any teams in USL. MLS Reply at 25-27; *see also* Defendants' Joint

---

MLS's alleged D1 monopoly. But nothing in the Order addresses the arguments MLS made with respect to the alleged conspiracy to monopolize D2.

[4] This was fundamentally in contradiction with NASL's insistence—in opposing Defendants' motion—that "NASL does not allege *monopolization or attempted monopolization* of the D2 market by MLS." NASL Opp. at 44 (emphasis in original).

Local Rule 56.1 Statement of Undisputed Facts [ECF No. 263] ("Defendants' SUFs") ¶¶ 69-72 (explaining MLS's limited relationship with USL).[5]

The Court's Order did not address these arguments beyond a blanket statement that MLS never moved for summary judgment on Count III. Nor did the Order contain any conclusions that would otherwise dispose of these arguments. MLS respectfully requests that the Court grant reconsideration of MLS's motion, consider these arguments, and dismiss the portion of Count III that alleges a conspiracy to monopolize D2.

## IV. Professor Solomon Should be Allowed to Rebut Professor Szymanski's Scaled-Back Regulatory Capture Opinions.

Defendants dispute that "regulatory capture" should play any role in this trial, but to the extent NASL's expert Professor Szymanski presents his theory to the jury, U.S. Soccer's expert Professor Solomon must be given an opportunity to rebut that theory. The Order grants-in-part and denies-in-part Defendants' motion to exclude Professor Szymanski's opinions. Order at 16. Regarding his regulatory capture opinion, the Court ruled that, while minimally qualified to offer a regulatory capture opinion, Professor "Szymanski would not be permitted . . . to testify that regulatory capture supersedes or stands in the place of the requirements for liability under antitrust law," but "he will be allowed to offer his opinion that regulatory capture 'provides an economic

---

[5] These facts are not meaningfully disputed by NASL. *See* NASL Response to Defendants' Joint Rule 56.1 Statement [ECF No. 273] ¶¶ 69-72. We note that the Order describes USL as "MLS's minor-league affiliate." Order at 6. Although MLS and USL had an arms'-length "affiliation agreement" under which MLS teams could either have their reserve teams form an "affiliation" with a USL team (such as in minor league baseball) or actually form a USL team, USL was not an "affiliate" of MLS in a corporate law sense. *See* Defendants' SUFs ¶ 70, citing, *inter alia*, Buterman Declaration Ex. 101 [ECF No. 266-34]. Also, the Order suggests that this affiliation relationship between MLS and USL existed in 2009, when NASL chose to break away from USL. Order at 6. But the affiliation relationship between MLS teams and USL began in 2013, and only after NASL had rejected a similar offer from MLS. *See* Defendants' SUFs ¶ 70, and the evidence cited therein; Complaint [ECF No. 1] at ¶ 169 n.42.

9

explanation of when the standard-setting process can have the anticompetitive effect of protecting an entrenched company from competition.'" *Id.* at 14-15. The Court then found Professor Solomon qualified but excluded all of his opinions—including his rebuttal to Professor Szymanski's regulatory capture opinions—as irrelevant.

NASL did not argue that Professor Solomon's regulatory capture rebuttal was irrelevant—and for good reason. Rebuttal testimony cannot be irrelevant unless the primary opinion is also excluded as irrelevant. *See, e.g.*, *Med. Depot, Inc. v. Med Way US, Inc.*, No. 2:22-cv-01272 (OEM) (SIL), 2024 WL 1835374, at *5 (E.D.N.Y. Apr. 26, 2024) ("With the Sheff Report excluded, Duffin's rebuttal report 'must also be excluded as irrelevant,' as its sole relevance at trial was to rebut now-excluded expert testimony."); *Golden Unicorn Enterprises, Inc. v. Audible, Inc.*, 682 F. Supp. 3d 368, 381 (S.D.N.Y. 2023) (precluding rebuttal testimony as irrelevant after primary testimony was excluded). That is not the case here. The Court ruled that Professor Szymanski may offer testimony that regulatory capture "provides an economic explanation" or "impetus" for the defendants' actions. Order at 14-15, 37. If that testimony is presented, Professor Solomon should be given an opportunity to present rebuttal testimony, as he does in his expert report.

## **CONCLUSION**

Defendants respectfully request that the Court (i) clarify that the Order does not grant summary judgment to NASL on the question of market definition, which remains an issue for the jury to resolve, (ii) reconsider MLS's motion for summary judgment as to Count III in NASL's Amended Complaint and, upon reconsideration, dismiss that portion of Count III that alleges a conspiracy to monopolize Division 2, and (iii) permit U.S. Soccer's expert Professor Solomon to testify in rebuttal to any opinion on the issue of "regulatory capture" that is offered by NASL's expert Professor Szymanski.

10

Dated: June 26, 2024

Respectfully submitted,
PROSKAUER ROSE LLP

s/ Bradley I. Ruskin
Bradley I. Ruskin
Kevin J. Perra
Keisha-Ann Gray
Scott A. Eggers

Eleven Times Square
New York, New York 10036
(212) 969-3000
bruskin@proskauer.com
kperra@proskauer.com
kgray@proskauer.com
seggers@proskauer.com

Colin R. Kass
1001 Pennsylvania Ave., NW, Suite 600S
Washington, DC 20004
(202) 416-6800
ckass@proskauer.com

Genesis Sanchez Tavarez
One International Place
Boston, MA 02110
GSanchezTavarez@proskauer.com

*Attorneys for Major League Soccer, L.L.C.*

LATHAM & WATKINS LLP

/s/ Christopher S. Yates
Christopher S. Yates (*pro hac vice*)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600
chris.yates@lw.com

Lawrence E. Buterman
885 Third Avenue
New York, NY 10022
Tel: (212) 906-1200 lawrence.buterman@lw.com

Anna M. Rathbun (*pro hac vice*)
David L. Johnson (*pro hac vice*)

11

555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004
(202) 637-2200
anna.rathbun@lw.com
David.johnson@lw.com

*Attorneys for United States Soccer Federation, Inc.*