UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NORTH AMERICAN SOCCER LEAGUE,
LLC,

                Plaintiff,

     v.

UNITED STATES SOCCER FEDERATION,
INC. and MAJOR LEAGUE SOCCER, LLC,

                Defendants.

**MEMORANDUM & ORDER**
17-CV-5495 (HG)

**HECTOR GONZALEZ**, United States District Judge:

      Plaintiff North American Soccer League LLC ("NASL") filed suit against Defendants

United States Soccer Federation, Inc. ("USSF") and Major League Soccer, LLC ("MLS") on

September 19, 2017, under Sections One and Two of the Sherman Act, 15 U.S.C. § 1, *et seq.*

The Court assumes the parties' familiarity with the facts and procedural history of this case as set

out in Judge Cogan's Order granting in part and denying in part the parties' motions for

summary judgment. ECF No. 399 (Summary Judgment Order). Trial in this matter is set to

begin on January 6, 2025. In advance of that trial date, the parties have filed certain motions *in

limine*, which the Court grants in part and denies in part, as detailed below.

## DISCUSSION

      Each side has filed two motions *in limine*. Defendants seek (1) to prevent Plaintiff from

offering evidence at trial that they allege is not relevant to Plaintiff's remaining claims,[1] *see* ECF

No. 409, and (2) to admit evidence of, and give jury instructions regarding, Plaintiff's destruction

---

[1]     Defendants allege that the evidence they seek to exclude was only probative of Count
One of the Amended Complaint, *see* ECF No. 57 (Amended Complaint), which Judge Cogan
dismissed at summary judgment.

of Aaron Davidson's emails and Davidson's invocation of the Fifth Amendment at his deposition, *see* ECF No. 410-16. Plaintiff seeks (1) to exclude evidence related to the indictments and convictions of Traffic Sports ("Traffic") and Davidson, *see* ECF No. 412-3, and (2) to exclude evidence related to the Ted Stevens Act and other activities in which Defendants are involved, *see* ECF No. 412-2. Defendants also filed a renewed *Daubert* challenge to exclude certain testimony of Plaintiff's damages expert, *see* ECF No. 441-1, and Plaintiff filed a motion to exclude certain testimony of Defendants' damages expert, *see* ECF No. 450. The Court rules on these motions as follows.

## I. Defendants' Motion to Exclude Evidence Allegedly Unrelated to NASL's Remaining Claims

In his Summary Judgment Order, Judge Cogan dismissed Count One of the Complaint, pursuant to which Plaintiff had argued that the Professional League Standards (the "Standards") constituted an unlawful restraint of competition in violation of Section One of the Sherman Act. ECF No. 399 at 41–44.[2] Judge Cogan found that NASL had not demonstrated that it had antitrust standing because each of NASL's claimed harms arose from the *application* of the Standards rather than the Standards *themselves*. *Id.* at 43. NASL's remaining claims are a single claim under Section One of the Sherman Act related to the Standards as applied, and three claims under Section Two of the Sherman Act, alleging conspiracy to monopolize, monopolization, and attempted monopolization. ECF No. 57 ¶¶ 267–302.

Defendants argue that Judge Cogan's decision "render[s] irrelevant a large swath of NASL's exhibits, deposition designations, and expert testimony," and ask the Court to exclude evidence and argument "relating to NASL's claim that the Standards themselves are

---

[2] The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

anticompetitive," and "evidence from before NASL existed regarding the adoption and application of the Standards and the process through which MLS first applied for and received a [D1] sanction almost thirty years ago."  ECF No. 409 at 5–6.  Plaintiff argues that the evidence Defendants seek to exclude is "highly relevant" and that its probative value "clearly outweighs any purported concerns of undue delay or juror confusion."  ECF No. 428 at 7.

Rule 402 of the Federal Rules of Evidence dictates that evidence that is not relevant is not admissible.  Relevant evidence is evidence that has a tendency to make a fact of consequence in determining the action more or less probable than it would be without the evidence.  Fed. R. Evid. 401; *see also Arlio v. Lively*, 474 F.3d 46, 52 (2d Cir. 2007) (evidence is relevant if it "tends to prove" a fact "that would affect the outcome of the suit under the governing law").[3]  It is well-established that Rule 401's test for relevance is a "low threshold, easily satisfied." *United States v. Garnes*, 102 F.4th 628, 638 (2d Cir. 2024).  However, even if challenged evidence is relevant, the Court must conduct a balancing test and may exclude relevant evidence if its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403; *see also Garnes*, 102 F.4th at 636.

The Court has undertaken this analysis with respect to the categories of evidence and argument that Defendants seek to exclude.  In dismissing Count One, Judge Cogan made clear that the remainder of Plaintiff's case turns on the *application* of the Standards, not on the decision to use sanctioning standards to restrict entry.  ECF No. 399 at 42–43.  Accordingly, at trial, Plaintiff may not offer evidence or argument that the use of a sanctioning standards-based

---

[3]    Unless otherwise indicated, when quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

system is anticompetitive and serves no legitimate purpose. Given the dismissal of Count One, such evidence has limited, if any, probative value to Plaintiff's remaining claims, and runs a high risk of confusing the issues and misleading the jury. For example, Plaintiff may not offer testimony or evidence criticizing USSF's decision to use a model based on sanctioning decisions (rather than, for example, on relegation), nor testimony or evidence regarding whether other sports or leagues both domestically and internationally use standards to restrict entry.

Plaintiff may, however, offer limited evidence on how the Standards came to be to the extent necessary to develop the narrative of its case. Any such evidence risks running afoul of this Order if it goes beyond this limited purpose and, for example, implies that there is something untoward in the use of a standards-based system. The Court at this stage denies the remainder of Defendants' motion and will allow Plaintiff to introduce evidence that predates NASL's formation, including evidence relating to the application of the Standards to MLS throughout the years, evidence relating to the enforcement of the Standards prior to 2009, and evidence regarding how the Standards have allegedly been applied to harm competition and restrain trade.[4] This evidence is relevant to Plaintiff's remaining claims, and its probative value is not outweighed by the danger of unfair prejudice to Defendants or confusion to the jury. If Plaintiff decides to use its trial time, *see infra* § VII, to put forward such evidence or testimony, Defendants are free to counter that evidence with their own. Accordingly, Defendants' motion, *see* ECF No. 409, is granted in part and denied in part.

---

[4] For example, while Plaintiff is not permitted to argue that USSF decided to use a standards-based system to shield MLS's predecessor from other leagues or that, economically, there was no basis to use a standards-based system, Plaintiff can argue that the Standards—as drafted or modified **and** applied—harmed competition.

## II.    Plaintiff's Motion to Exclude Certain Evidence Relating to Traffic Sports and Davidson

Plaintiff asks the Court to exclude evidence relating to the "criminal conduct, allegations, proceedings, and findings" involving Traffic, an international soccer organization that was involved with NASL, and Davidson, a Traffic executive who served as Chairman of NASL's Board of Governors.  ECF No. 412-3 at 7.  Plaintiff argues that this evidence is "irrelevant, unfairly prejudicial, confusing, and time-wasting" under the Federal Rules of Evidence.  *Id*. Defendants counter that the evidence Plaintiff seeks to exclude is "integral" to their defense because it is relevant to causation and more probative than it is prejudicial.  ECF No. 422-1 at 5.

The Court agrees that Defendants must be permitted to introduce evidence and solicit testimony related to Traffic's and Davidson's indictments and guilty pleas because such evidence is necessary to allow Defendants to provide a plausible alternative explanation for the injuries that Plaintiff claims to have suffered and to try to defeat Plaintiff's theory of causation.  Under Rule 403, the Court may "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice."  *Iverson v. Surber*, 800 F. App'x 50, 52 (2d Cir. 2020).  "Because virtually all evidence is prejudicial to one party or another, to justify exclusion under Rule 403, the prejudice must be *unfair*" and involve "some adverse effect beyond tending to prove a fact or issue that justifies admission."  *Costantino v. David M. Herzog, M.D., P.C.*, 203 F.3d 164, 175 (2d Cir. 2000) (emphasis in original); *see also Iverson*, 800 F. App'x at 52 ("Prejudice under this rule means unfair rather than harmful.").  While prejudicial, evidence of Traffic's and Davidson's indictments and guilty pleas is also highly probative of Defendants' theory of the case that NASL's injuries were not caused by Defendants' allegedly illegally anticompetitive conduct, but by fallout from the indictments and guilty pleas.

Although NASL was not aware of or involved in the criminal matters to which Davidson and Traffic pled guilty, NASL was admittedly closely affiliated with Traffic. ECF No. 412-3 at 9. Indeed, despite Plaintiff's argument to the contrary that Traffic's and Davidson's indictments are "irrelevant to" this case, *see id.* at 12, the record reflects that NASL's links to Traffic may have been germane to decisions made by USSF with respect to sanctioning and by NASL teams considering whether to remain in the league *in light of* the criminal nature of the allegations. *See, e.g.*, ECF No. 422-3 at 12 (April 2017 letter from CEO of NASL team to investors stating that, "[i]t became apparent that the ongoing relationship with Traffic Sports was a concern for the USSF sanctioning process, was affecting the decision of new ownership groups entering the [NASL], and was the primary grounds for claims by exiting teams to avoid paying exit fees"); ECF No. 422-4 at 4 (minutes from December 2015 USSF Board of Directors Meeting during which a board member suggested recommending that NASL's sanction for the 2016 season "be subject to resolution of all connections to Traffic"); ECF No. 423-2 at 2–3 (letter from NASL to Traffic after NASL was denied a D1 sanction stating that the NASL had suffered "damaging effects" as a result of Traffic's and Davidson's conduct and that the NASL's "continuing relationship with [Traffic has] also threatened the [NASL's] ability to maintain its Division II status"); ECF Nos. 423-6–423-7 (communications from NASL teams postdating USSF's 2016 decision to deny NASL a D1 sanction expressing concern about NASL's relationship with Traffic and a desire to withdraw from the NASL as a result of that relationship). To prove causation, Plaintiff will need to show that Defendants' unlawful conduct "was both a material and but-for cause" of its injuries. *In re Publ'n Paper Antitrust Litig*, 690 F.3d 51, 66 (2d Cir. 2012). To defeat causation, Defendants must be permitted to offer evidence and testimony to support their theory that the fallout from Traffic's and Davidson's indictments and guilty pleas,

including business decisions made by the NASL in the wake of the indictments, led to the collapse of the NASL. *See, e.g.*, *U.S. Football League v. Nat'l Football League*, 842 F.2d 1335, 1369 (2d Cir. 1988) (finding that district court did not err in admitting evidence of business decisions made by plaintiffs that was "highly relevant to issues of causation and damages" because the evidence "was highly probative on the central issue" of whether plaintiff's damages were caused by defendant's "anticompetitive conduct" or by plaintiff's "own deliberate business judgments").[5] Accordingly, this is clearly not a case in which evidence of prior criminal conduct is "tangential, not central, to the case." *Cf. Bohack Corp. v. Iowa Beef Processors, Inc.*, 715 F.2d 703, 710 (2d Cir. 1983).

On this record, after conducting a "conscientious assessment of whether unfair prejudice substantially outweighs probative value," the Court concludes that the probative value of Traffic's and Davidson's indictments and guilty pleas is not substantially outweighed by the danger of unfair prejudice. *See Boateng v. Bayerische Motoren Werke Aktiengesellschaft*, No. 17-cv-209, 2024 WL 1513601, at *2 (E.D.N.Y. Apr. 8, 2024) (quoting *United States v. Al-Moayad*, 545 F.3d 139, 162 (2d Cir. 2008)). The Court will not wholesale exclude evidence or testimony relating to the indictments and convictions of Traffic and Davidson. *See Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 554 (E.D.N.Y. 2011) ("A federal district court has the power to exclude evidence *in limine* only when evidence is clearly inadmissible on all potential grounds[.]"). Defendants will be allowed to put forward evidence and testimony establishing

---

[5]     Plaintiff's proposed middle ground—allowing Defendants to reference Traffic's and Davidson's "departures" from the NASL without allowing reference to the reasons behind those departures—is a non-starter. From the record, the jury could conclude that the criminal charges that led to Traffic's and Davidson's departures were factored into the decisions of NASL teams considering whether to remain in the league and of USSF in making its sanctioning decisions. *See, e.g.*, ECF No. 423-6 at 2–3; ECF No. 423-7 at 3–5; ECF No. 423-13 at 2.

that Traffic and Davidson were criminally indicted on charges related to the FIFA bribery scandals and that they pled guilty to those charges, as well as evidence and testimony about the fallout from those indictments and guilty pleas.  However, given the nature of this testimony, Defendants are warned that neither Davidson nor Traffic is on trial in this case and evidence about their prosecutions should not require a trial within a trial.  In other words, Defendants may not belabor the details of Davidson's and Traffic's conduct that led to their indictments and guilty pleas.  The Court will not permit Defendants to cross this line at trial and attempt to use the indictments and guilty pleas as a smear tactic against NASL.  If Defendants do so, the Court will consider whether it is necessary to give the jury a limiting instruction or to restrict Defendants' ability to reference the indictments and convictions for the remainder of the trial. *See Weyant v. Okst*, 182 F.3d 902, 1999 WL 491866, at *2 (2d Cir. July 8, 1999) (Rule 403 balancing may shift based on trial arguments).  Accordingly, Plaintiff's motion, *see* ECF No. 412-3, is denied.

### III.    Defendants' Motion for Adverse Inferences Related to Davidson

Defendants seek adverse inferences against Plaintiff based on (1) Plaintiff's destruction of Davidson's emails and (2) Davidson's invocation of the Fifth Amendment at his deposition in this case.

#### A.    *Destruction of Davidson's Emails*

With respect to the destruction of Davidson's emails, a form of electronically stored information ("ESI"), Defendants seek an adverse inference under Rule 37(e).[6]  For background,

---

[6]    The Court easily rejects Plaintiff's argument that this motion should be denied as a "belated discovery motion."  ECF No. 429-1 at 11–12.  That rationale might hold in a case where, for example, the spoliation required the defendant to undertake efforts during discovery to forensically track down the lost evidence and the defendant wanted to try to recoup costs.  But

Davidson was indicted in May 2015, and shortly thereafter, around July 2015, Plaintiff deleted his NASL email account. ECF No. 410-16 at 9; ECF No. 429-1 at 9. The parties disagree about why the account was deleted, but Plaintiff says it was an accident that happened while trying to deactivate Davidson's account. ECF No. 429-1 at 9. During the at-issue period, Davidson also used an email account associated with Traffic.

When a party moves for sanctions under Rule 37(e), the Court must conduct the following three-part analysis:

> The first is to decide if the rule applies at all – that is, if a party failed to take "reasonable steps" to preserve ESI "that should have been preserved in the anticipation or conduct of litigation." Fed. R. Civ. P. 37(e). If so, then the second step is to decide if there has been "prejudice to another party from loss of the information," in which case the Court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Lastly, the third step to consider – regardless of prejudice to any other party – is whether the destroying party "acted with the intent to deprive another party of the information's use in the litigation," in which event a court may consider whether to impose the most severe of measures such as mandatory presumptions or instructions that the lost information was unfavorable or the entry of default judgment.

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 494 (S.D.N.Y. 2022).

As to the first *Keurig* step, Plaintiff was obligated to preserve Davidson's emails. "The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 426, 436 (2d Cir. 2001). For the purposes of Rule 37(e), relevance "is an extremely broad concept." *In re Keurig*, 341 F.R.D. at 495. Defendants argue that "NASL's preservation obligations arose at least as early as June 24,

---

here, Defendants are seeking broader relief, and "it is appropriate to ascertain the adverse inference instruction"—or here, related sanctions—"in a motion *in limine*." *See Hernandez v. Hacienda Mexicana Corp.*, No. 17-cv-5608, 2018 WL 6427639, at *4 (S.D.N.Y. Dec. 6, 2018).

2015, when NASL engaged in communications with its attorneys, over which it has claimed work-product protection as material prepared in anticipation of litigation, which led to the preparation of a 13-page demand letter accusing [USSF] of violating the antitrust laws." ECF No. 410-16 at 13. Plaintiff responds that Defendants "miss[] the key point," since NASL's board "voted in early 2016 not to bring litigation against USSF in connection with the standards," and that NASL "had completely moved on from that dispute" by early 2017. ECF No. 429-1 at 12–13.[7] Plaintiff says it did not contemplate this specific litigation until September 2017, when its D2 sanction was revoked. *Id.* at 13.

The Court agrees with Defendants that Plaintiff was obligated to maintain Davidson's emails for this litigation at the time of their deletion. The record makes clear that the instant case is a continuation of the threatened litigation Plaintiff says it stopped pursuing in 2016. Plaintiff's July 2015 letter, *see* ECF No. 410-7, accused USSF then of conspiring with MLS to violate the antitrust laws in the same manner alleged in this case. *See Karsch v. Blink Health Ltd.*, No. 17-cv-3880, 2019 WL 2708125, at *18 (S.D.N.Y. June 20, 2019) (where the plaintiff outlined his claims in his demand letter, he was obligated to preserve ESI related to those claims, upon which he later sued). And privilege log entries from as early as March 2016 and stretching into January 2017 reflect communications regarding "litigation strategy." *See* ECF No. 446-3. All this makes clear that the exact issues in this litigation remained in play before and after the 2016 board vote.

---

[7]     The cited board minutes from June 2016 make clear that the decision not to sue had been made by that point, although it is unclear when exactly that decision took place. *See* ECF No. 426-6 at 6. The exact date in 2016 is immaterial to the Court's conclusion here.

The retention obligation did not dissipate, and by deleting the emails, Plaintiffs failed to take reasonable steps to preserve them.[8]

At the second step, the Court finds that the deletion of the emails prejudiced Defendants. "While the moving party need not establish the loss of a smoking gun, it is sufficient if the existing evidence plausibly suggests that the spoliated ESI could support the moving party's case." *In re Keurig*, 341 F.R.D. at 495. Defendants "must come forward with plausible, concrete suggestions as to what the destroyed evidence might have been." *Id.* Prejudice must be shown by a preponderance of the evidence. *Id.* at 496. Defendants have done so. The Court credits Defendants' arguments that Davidson played a central role at NASL and that he used the NASL email account, as he said during his deposition, when he "had to come across as an official authority of the league." ECF No. 410-16 at 15 (quotation and citation omitted). The Court finds particularly persuasive the specific examples identified by Defendants of Davidson emailing about core issues in this case,[9] including from his NASL account and without copying another NASL custodian. *Id.* at 15 n.5; ECF No. 444-1 at 8 & nn.3–4. The Court appreciates some of Plaintiff's mitigating arguments, such as that the NASL account appears not to have been Davidson's primary one and that some emails were recoverable from other custodians or Davidson himself. *See* ECF No. 429-1 at 14–15. Plaintiff suggests that demonstrating prejudice

---

[8]      The Court emphasizes that Plaintiff's position would have troubling consequences. For example, a business could threaten litigation against a former employee for stealing trade secrets. The business might then formally decide not to pursue litigation and delete all that employee's records. But if it had a change of heart and decided to sue the employee after all, in Plaintiff's world, the business would have effectively given itself a trap door out of critical retention obligations. The Court cannot endorse a rule that would permit such gamesmanship, especially in this somewhat unique case in which *Plaintiff* is accused of spoliation. *See Karsch*, 2019 WL 2708125, at *18 (the timing of the lawsuit was "wholly within [the plaintiff's] control").

[9]      By way of example, Davidson sent an email from his NASL account in which he stated that the D2 standards were "thankfully much higher." *See* ECF No. 446-9 at 6–7.

requires a showing of precisely what was lost. *See id.* at 14–15 & n.8. However, Defendants are right to point out that that is an impossible task since Plaintiff deleted the ESI. *See* ECF No. 444-1 at 8. And Plaintiff's view is also inconsistent with the law of spoliation. *See Kronisch v. United States*, 150 F.3d 112, 128 (2d Cir. 1998) (the Court should not "hold[] the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed evidence"). On this record, the Court has no trouble concluding that that the deleted ESI would have helped the defense.

At the third step, however, Defendants have failed to show that Plaintiff had "not merely the intent to perform an act that destroys ESI but rather the intent to actually deprive [them] of evidence." *In re Keurig*, 341 F.R.D. at 496. That "stringent and specific" burden, which must be supported by clear and convincing evidence, is hard to meet, even in a standard spoliation case. *Id.* Here, Defendants point to some circumstantial evidence bearing on intent, especially the timing of the destruction just two months after Davidson's indictment. *See* ECF No. 410-16 at 14. But they are still a ways off from demonstrating an affirmative intent to deprive. *Cf., e.g.*, *CATE3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 500 (S.D.N.Y. 2016) (finding intent to deprive where the plaintiffs intentionally altered at-issue emails). Inferring more is particularly inappropriate here where Plaintiff sought to recover the lost data post-deletion. *See* ECF No. 429-1 at 9.

Turning to remedy, the Court has discretion to craft a sanction based on case-specific facts. *Fujitsu*, 247 F.3d at 436. However, that discretion is limited by Rule 37. Because there was no intent to deprive, sanctions under Rule 37(e)(2), including an adverse inference, are unavailable. *In re Keurig*, 341 F.R.D. at 527. The Court therefore proceeds pursuant to Rule 37(e)(1), under which "the sanctions must be 'no greater than necessary to cure the prejudice.'"

*Id.* As an alternative to an adverse inference, Defendants seek "a jury instruction short of a mandatory inference." ECF No. 410-16 at 16. The Court has authority to provide such an instruction and finds that it is appropriate to do so in this case. *See* Fed. R. Civ. P. 37(e)(1) advisory committee's note to the 2015 amendment (remedies include "permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument, other than instructions to which subdivision (e)(2) applies"). Especially in light of the Court's decision allowing Defendants to more broadly introduce evidence related to Davidson, *see supra* § II, an instruction will help guide the jury about how to assess these holes in the evidentiary record. At this juncture, however, it is premature to decide on the precise scope of such an instruction. *See Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 68–69 (S.D.N.Y. 2020) (the instruction should be crafted based on "a full evidentiary record"). That being said, the Court has reviewed Defendants' proposed instruction, and in view of the foregoing, finds that it goes too far. *See* ECF No. 410-2 at 4. The Court will be unlikely to state that *the Court* has found destruction. Nor will the Court instruct the jury as to what evidence may have been lost. Since Defendants intend to put on evidence about the destruction, it will be preferable for, and the Court will permit, the parties to introduce evidence about the destruction, rather than having the Court declare as much. *See In re Keurig*, 341 F.R.D. at 528 (permitting the introduction of evidence concerning spoliation). More generally, the proposed instruction appears to intrude on Rule 37(e)(2)(B). When the parties propose final jury instructions, they must be cognizant of these limitations; in particular, Defendants' proposed instructions must be properly grounded in Rule 37(e)(1).

## B. *Davidson's Fifth Amendment Invocations*

Defendants also seek an adverse inference against Plaintiff based on Davidson's invocations of the Fifth Amendment during his deposition. *See* ECF No. 410-16 at 6. The parties agree that *LiButti v. United States*, 107 F.3d 110 (2d Cir. 1997), governs this dispute. In determining whether Plaintiff should face an adverse inference based on a third party's invocation of the Fifth Amendment, the Court must consider the following non-exclusive factors: (1) the nature of the relevant relationships; (2) the degree of control of the party over the non-party witness; (3) the compatibility of the interests of the party and non-party witness in the outcome of the litigation; and (4) the role of the non-party witness in the litigation. *Id.* at 123–24. "[T]he overarching concern is fundamentally whether the adverse inference is trustworthy under all of the circumstances and will advance the search for the truth." *Id.* at 124.

The first factor favors Defendants because there was a meaningful relationship between Plaintiff and Davidson at the time of the deposition. This factor is most important and seeks to test the likelihood that Davidson would "render testimony in order to damage the relationship." *Id.* at 123. Defendants say that the relationship was "overwhelmingly strong" based on Davidson's former role as NASL chairman and his deposition testimony about his dedication to NASL, including when he confirmed that he was "aligned with NASL" and stated that "no one can take it away from him." ECF No. 410-16 at 17–18 (alterations accepted and citation omitted). On the other hand, Plaintiff urges the Court to focus on the moment in time Davidson invoked the Fifth Amendment and, in particular, the fact that Davidson was no longer formally affiliated with NASL at the time. *See* ECF No. 429-1 at 19. It adds that Davidson had "no loyalty to NASL in 2019" because NASL had fired him in 2015 and a lengthy dispute between Davidson and Traffic followed. *Id.* Both sides exaggerate, but Defendants have the better of this

issue. They are correct in observing that Plaintiff puts too much weight on Davidson's firing. After all, the lack of an employment relationship is not dispositive. *Brink's Inc. v. City of New York*, 717 F.2d 700, 710 (2d Cir. 1983). Nor can his firing overpower the multiple pieces of specific evidence identified by Defendants—most importantly, Davidson's own sworn statements that he still felt aligned with NASL; his friendship with NASL's last commissioner, Rishi Sehgal; and that Sehgal volunteered NASL to cover Davidson's costs of producing documents and traveling to his deposition in connection with this litigation. ECF No. 410-16 at 17–18. Plaintiff fails to adequately engage with these issues, and the Court concludes on this record that at the time of his deposition, Davidson maintained enough of a bond to Plaintiff such that he would have avoided providing testimony harmful to it.

The second factor—Plaintiff's degree of control over Davidson—cuts in the other direction. This factor examines "[t]he degree of control which the party has vested in the non-party witness in regard to the key facts and general subject matter of the litigation." *LiButti*, 107 F.3d at 123. It is here that Plaintiff's argument about the timing of Davidson's invocation has force. Even if Davidson once had vast authority within NASL, *see* ECF No. 410-16 at 18; ECF No. 444-1 at 13, it no longer existed at the time of his deposition. As such, Plaintiff lacked control over Davidson. *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13-cv-7789, 2022 WL 4087842, at *2 (S.D.N.Y. Sept. 6, 2022).

The third factor weakly favors Defendants. Under this factor, the Court must "evaluate whether the non-party witness is pragmatically a noncaptioned party in interest and whether the assertion of the privilege advances the interests of both the non-party witness and the affected party in the outcome of the litigation." *LiButti*, 107 F.3d at 123. Defendants are right to concede that Davidson does not share a financial stake with NASL in the outcome of the litigation. ECF

No. 410-16 at 19.  Nevertheless, they observe that Davidson's testimony, in which he explained how he dedicated years of work to NASL without compensation and that NASL was something "no one could take away from him" show his "rooting interest" for NASL.  *Id.* (alterations accepted and citation omitted).  Plaintiff's cursory response that "NASL winning this litigation would not advance [Davidson's] own interests," including because he did not prepare for his deposition with NASL, is not very persuasive.  *See* ECF No. 429-1 at 19 & n.13.  Given his ongoing emotional bonds to NASL, Davidson would have been disinclined from providing testimony that would have harmed it.  *Cf. In re Foreign Exch.*, 2022 WL 4087842, at *2 ("The witnesses' interests in avoiding the full and public elucidation of their role in an antitrust conspiracy, and whatever consequences might follow, is compatible with Defendants' interest in avoiding liability for it.").  However, given his lack of a financial motivation, the Court cannot say he was "pragmatically a noncaptioned party," so this factor only weakly supports Defendants.  *LiButti*, 107 F.3d at 123.

The final factor—whether Davidson "was a key figure in the litigation and played a controlling role in respect to any of its underlying aspects"—strongly favors Defendants.  *Id*. at 123–24.  Defendants state, as has now been thoroughly discussed, that Davidson was a central figure in this litigation.  ECF No. 410-16 at 19.  Plaintiff largely ignores this factor and makes broader arguments.  It says that Defendants obtained testimony from Davidson on the at-issue antitrust claims and that "[i]t is not proper to grant an adverse inference . . . based on a non-party's Fifth Amendment invocation in response to questions unrelated to the antitrust claims at issue in this case, such as the criminal charges."  ECF No. 429-1 at 20.  But Plaintiff's view of what is related to the "antitrust claims" is too narrow, and it is not clear what facts would be sufficiently "related" in Plaintiff's view.  As Defendants correctly note, the Fifth Amendment

invocations concerned various topics Defendants expect to raise at trial, including the Davidson and Traffic indictments.[10]  ECF No. 410-16 at 11; ECF No. 426-2; ECF No. 444-1 at 14. Plaintiff also repeats the argument that Davidson no longer had ties to NASL at the time of his deposition, ECF No. 429-1 at 20, but that argument ignores the purpose of this factor, which explicitly goes to involvement in the "underlying aspects" of the case, wherein Davidson was a central figure acting pursuant to authority granted to him by NASL.  The Court is particularly persuaded by Defendants' argument that precluding the adverse inference will give Plaintiff an opportunity to argue about Traffic's allegedly limited importance, ECF No. 444-1 at 14, but that "[i]t would not serve the search for truth if the jury heard only from those who were particularly insulated from any alleged wrongdoing and not from [someone] who was sufficiently involved that [he] reasonably feared prosecution." *In re Foreign Exch.*, 2022 WL 4087842, at *2.  In sum, the record shows that testimony from Davidson would have materially advanced "the search for the truth" in this case. *LiButti*, 107 F.3d at 124.

As suggested by the above analysis and having considered the entire record before it, the Court finds that even after Davidson's separation from NASL, his interests remained aligned with Plaintiff's, and he maintained significant knowledge about important facts in this case. Accordingly, the Court concludes that an adverse inference against Plaintiff will be trustworthy

---

[10]     Plaintiff also asserts that an adverse inference will be unduly prejudicial "for the same reasons set forth in [its] own motion *in limine* to exclude any reference to the Davidson or Traffic criminal proceedings on grounds of relevance and prejudice." ECF No. 429-1 at 20 n.15. As discussed *supra*, the Court rejects those arguments.  However, the Court reminds Defendants that because they intend to play portions of Davidson's recorded deposition, "the admissibility of [his] privilege invocation [remains] governed by Rules 401 and 403," and that this applies to both the content of the evidence as well as the *form* in which it is presented. *In re 650 Fifth Ave. & Related Props.*, 934 F.3d 147, 171–72 (2d Cir. 2019) (rejecting as "inflammatory" the "dramatic presentation" of "videotapes of nontestifying individuals declining to answer question after question").  The Court will further entertain a proposed limiting instruction from Plaintiff as it relates to this testimony. *Mirlis v. Greer*, 952 F.3d 36, 47 (2d Cir. 2020).

and should be provided to the jury following the presentation of Davidson's deposition. *See id.* However, as above, the Court finds it premature to decide the exact form of the adverse inference instruction, which should be included as part of the complete set of proposed jury instructions. Therefore, Defendants' motion, ECF No. 410-16, is granted in part and denied in part.

## IV.    Plaintiff's Motion to Exclude Evidence Related to the Ted Stevens Act and Evidence of Other Activities

Plaintiff moves to exclude evidence related to:  (1) USSF's authority under the Ted Stevens Act; (2) USSF's nonprofit status, mission statement, and engagement in charitable activities; and (3) USSF, MLS, and the United Soccer League's support for and promotion of other forms of soccer, such as women's and youth soccer. *See* ECF No. 412-2.  For the sake of brevity, the Court will refer to the latter two categories collectively as "Other Activities." Plaintiff argues that the Court should exclude the challenged evidence under Rules 401, 402, and 403.  First, it contends that the evidence is "wholly irrelevant" to its at-issue antitrust claims.  *Id.* at 6–7.  Second, it says that even if the evidence has some probative value, that is "significantly outweighed by a very real danger of unfair prejudice, confusion of the issues, and misleading the jury."  *Id.* at 7.  The Court is not persuaded that the blanket exclusion of all this evidence is required or appropriate.

Starting with the Ted Stevens Act,[11] Plaintiff states that it gives USSF authority to regulate only Olympic and amateur soccer, not the men's professional soccer at issue in this action.  ECF No. 412-2 at 11–12.  Defendants retort that the Ted Stevens Act is relevant because

---

[11]    As a threshold matter, the Court rejects Plaintiff's claim that Defendants "effectively concede" its arguments related to Rule 403, and that the Court may rule against Defendants on this basis alone.  ECF No. 443 at 5 (capitalization and emphasis omitted).  Defendants could have been more explicit in referring to Rule 403, but Plaintiff misreads the opposition, which often advances points concerning, for example, relevance and prejudice, in the same argument. *E.g.*, ECF No. 424 at 14.

it recognizes USSF as soccer's national governing body and requires USSF to maintain membership in FIFA, the sport's global governing body, and to comply with FIFA's rules. ECF No. 424 at 11–13. Defendants' expert claims this incentivizes USSF to "expand interest and participation in soccer at all levels." *Id.* at 11 (quotation and emphasis omitted). Defendants also argue that the Act regulates the structure of USSF's board by mandating board representation from different areas of the sport. *Id.* at 11–12. In light of the foregoing, the Court agrees with Defendants that Plaintiff's effort to bar all references to the Act sweeps too broadly. *See* ECF No. 443 at 9–10. Even if the Act does not give USSF explicit statutory authority over men's professional soccer, it is clear that the statutory framework it sets up generally governs soccer in the United States. Especially insofar as (1) the Act governs USSF's board structure and therefore its decision-making and (2) the Act's placement of USSF within FIFA may create certain incentives for USSF to regulate soccer pro-competitively, it is relevant to the defense that there was no antitrust conspiracy. The jury may be unpersuaded, but Rule 401 is not a test of the proffered evidence's strength.

Nor does Rule 403 require preclusion of all references to the Act. Plaintiff says that if Defendants can bring in such evidence, "jurors will be confused into believing that USSF has some government-approved discretion or congressionally-granted authority to restrain competition," which would also unfairly prejudice it, and that the evidence would create a "diversionary mini-trial" about the Act. ECF No. 412-2 at 13–14. The Court rejects those arguments as speculative since they concern more how Defendants may ultimately characterize their evidence rather than the evidence itself. *See Weyant*, 1999 WL 491866, at *2. For one, Defendants provide no indication that they intend to argue at trial that the Act immunizes them from antitrust liability; rather, they may mention the Act to explain their behavior in the relevant

regulatory environment. *See* ECF No. 424 at 13. And the concerns about wasting time are substantially allayed by the overall limitations on the parties' time. *See infra* § VII. With those limits in mind, the Court does not expect the parties to dive into all the intricacies of the Act, which strikes the Court as minor in the grand scheme of this case. Finally, the Court is not persuaded that Defendants can advance their arguments without referencing the Act. *See* ECF No. 443 at 10. As Defendants argue, it would likely be more confusing for the jury were it to hear these structural arguments without the legal context. *See* ECF No. 424 at 12.

Similar reasons lead the Court to the same conclusion regarding the Other Activities evidence. As indicated above, evidence concerning "the alleged conspirators' states of mind" may be important in determining whether there was concerted action. *See Meredith Corp. v. SESAC LLC*, 1 F. Supp. 3d 180, 208 (S.D.N.Y. 2014). On this basis, the Court agrees with Defendants that the Other Activities evidence is at least minimally relevant to their defense. For example, Defendants may argue that USSF's nonprofit status drives its economic thinking and decision-making. ECF No. 424 at 14. Similarly, evidence of Defendants' support of other soccer programs outside of men's D1 professional soccer may "undercut[] the notion that [they] worked to undermine other leagues or otherwise diminish competition in the lower divisions." *Id.* at 17–18. Plaintiff's contrary argument that such evidence is irrelevant because it refers to economic benefits outside of the relevant market is not persuasive. *See* ECF No. 412-2 at 16. This is far from a case in which Defendants "seek[] special dispensation from the Sherman Act on the ground that their restraints of trade serve uniquely important social objectives beyond enhancing competition." *NCAA v. Alston*, 594 U.S. 69, 94–95 (2021). Rather, they seek to introduce such evidence to explain their businesses and how they conduct themselves in the relevant market. Of course, the jury might ultimately reject those arguments, but the Court does

not believe it is appropriate for Defendants to have to argue in a vacuum. *See Weyant*, 1999 WL 491866, at *1 ("The trial court has broad discretion over the admission of evidence, including background evidence to show the circumstances surrounding the events or to furnish an explanation of the intent with which certain acts were performed.").

Plaintiff's real issue with the Other Activities evidence is the risk that its introduction will disincentivize the jurors from finding liability and an appropriate damages award out of concern that they may interfere with such activities, which they might perceive as socially beneficial. ECF No. 412-2 at 17, 19. As explained in Plaintiff's cited authorities, some prejudice may result from allowing Defendants to reference the Other Activities evidence, but the Court does not agree that the evidence's probative value is "substantially outweighed" by Plaintiff's concerns. Fed. R. Evid. 403. As stated above, the probative value of such evidence is more than marginal. It may help the jury to evaluate whether Defendants' conduct was illegally anticompetitive. On the other side of the scale, the risk of unfair prejudice is small because the Court expects Defendants to refer to the Other Activities evidence only briefly, and such evidence forms a tiny portion of this case. Accordingly, Plaintiff's motion is denied. At this juncture, the Court reminds Defendants that they may not introduce the Other Activities evidence for the purpose of emphasizing the purportedly socially beneficial aspects of their businesses. Nor shall such evidence play a role in their arguments on damages. The Court will police such conduct at trial and may consider issuing a limiting instruction based on the presentation of evidence. Therefore, Plaintiff's motion, *see* ECF No. 412-12, is denied.

*       *       *

Many of the evidentiary disagreements that this Order attempts to address should now, with the guidance that this Order hopefully provides, be easily resolved by stipulation. In light

of the scheduled trial time, *see infra* § VII, the Court encourages the parties to diligently craft stipulations consistent with this Order.

## V. Defendants' Motion to Exclude Dr. Williams's Division I Damages Opinions, and Plaintiff's Motion to Exclude Meyer's Testimony

### A. *NASL's Agreement with Team Holdings*

First, Defendants move to exclude the Williams report on the basis that it fails to comply with Judge Cogan's Order directing him to "discount his [D1 damages] estimates to reflect the real-world conditions that existed at the time of the challenged conduct." ECF No. 441-1 at 6 (quoting ECF No. 399 at 27). Specifically, Judge Cogan directed Dr. Williams "to discount his damages forecast to reflect the terms of the Team Holdings contract as it existed in March 2016 – with Team Holdings taking the first $450,000 and a further 80% of expansion fees collected from the first 10 teams and 20% of expansion fees collected from further expansion." ECF No. 399 at 27. The Court assumes the parties' familiarity with this issue, but for brief background, Judge Cogan required the above because he found Dr. Williams's first D1 model, which attempted to capture a hypothetical settlement between NASL and Team, to be "too speculative." *Id.* at 25–26. So, he instead required Dr. Williams to account for the NASL-Team agreement, as described above. *Id.* Defendants say that Dr. Williams failed to do that because his revised report assumes that NASL later deferred the payment of the amount owed to Team, rather than deferring the "entire obligation, so that it would be calculated based on future incoming teams." ECF No. 441-1 at 6. They argue that Dr. Williams's interpretation of the NASL-Team agreement is contradicted by the evidence he relies on and other contemporaneous evidence. *Id.* at 11–14. For its part, Plaintiff asserts that Dr. Williams has made a permissible assumption about the meaning of the relevant agreement, and that in any case, his view of the agreement is right. *Id.* at 18–22.

The Court is persuaded by Plaintiff's claim that this branch of Defendants' argument overreaches. Defendants launch their argument at the wrong level of generality. Judge Cogan instructed Dr. Williams to replace his assumption about a hypothetical settlement with the terms of the agreement "as it existed in March 2016." ECF No. 399 at 27. Dr. Williams did that. Defendants disagree about the meaning of the agreement, but they can attack the legitimacy of any of Dr. Williams's assumptions—including about the agreement—at trial, just as Plaintiff will need to support those assumptions. The Court appreciates Defendants' argument that the Court must "undertake a rigorous examination of the facts on which the expert relies," but that argument has little resonance here because what they seek to cast as settled "fact" is a hotly contested issue about the meaning and anticipated performance of contractual terms. *See Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). This case is unlike *Washington v. Kellwood*, cited by Defendants, in which the Second Circuit found no abuse of discretion after the district court excluded expert testimony predicated on the parties renewing a contract where the contract gave just one party the unilateral right to renew. 714 F. App'x 35, 39 (2d Cir. 2017). This case is more complex. It does not involve an assumption squarely foreclosed by the agreement; rather, Dr. Williams has attempted to "discount his estimates to reflect the real-world conditions that existed at the time of the challenged conduct," including by making an assumption about what the agreement continued to require at that time. *See* ECF No. 399 at 27. Defendants are free to attack that assumption. But ultimately, as Chief Judge Brodie has explained, "[d]isputes of fact do not as a matter of law render an expert's opinion unreliable. Were it otherwise, no expert would ever be able to testify in any case not decided as a matter of law." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-md-1720, 2022 WL 14863110, at *16 (E.D.N.Y. Oct. 26, 2022).

In view of the foregoing analysis, Defendants' motion to exclude Dr. Williams's D1 damages testimony on the basis of his assumption about the contract is denied. Accordingly, the Court also agrees with Plaintiff that Defendants' rebuttal expert Mr. Meyer, like Dr. Williams, shall not be permitted "to give his opinion as to the legal obligations of the parties under the contract." *See* ECF No. 450 at 16 (quoting *Marx & Co. v. Diners' Club Inc.*, 550 F.2d 505, 508–09 (2d Cir. 1977)). The Second Circuit has squarely rejected such testimony. *See Marx*, 550 F.2d at 508–09 ("Th[e] testimony did not concern practices in the securities business . . . but were rather legal opinions as to the meaning of the contract terms at issue."); *see also Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 691 F. Supp. 2d 448, 470–71 & n.132 (S.D.N.Y. 2010) (where contracts required computation of "the monthly Net Asset Value," or NAV, applying *Marx* and permitting an expert to "testify about the standard practices employed by industry participants in calculating the NAV" but precluding him from "provid[ing] a legal interpretation of the term"). Applying that restriction to this case, Mr. Meyer may, based on his expertise as an accountant and review of the record, provide his opinion as to what "the real-world conditions that existed at the time of the challenged conduct" were as it relates to NASL's payment obligation to Traffic. ECF No. 399 at 27. For example, he may testify that Dr. Williams's conclusion regarding the payment obligation is faulty because it "is inconsistent with the 2014 valuation [of Team Holdings], and the actual contemporaneous accounting of the entity, Team Holdings, that owned the rights to future NASL entry fees." *See* ECF No. 441-3 ¶ 51. But he may not testify that this and related "evidence ***confirm[]*** that the Team Holdings Agreement as of March 2016 still ***obligated*** NASL to apply and pay Team Holdings . . . for the first ten new teams entering the league after March 2016." ECF No. 441-3 ¶ 30 (emphases added). That is an "inadmissible" opinion on the contract. *See Pension Comm.*, 691 F. Supp. 2d

at 476 & nn.173, 175 (disallowing expert from "opin[ing] on the legal obligations created by . . . documents to the extent that such legal questions are to be submitted to the jury" but allowing him to testify as to "industry practice" such as that "a hedge fund administrator's duties are dependent on the content of agreements between the administrator and the hedge fund's managers"). Therefore, the Court will narrowly exclude Meyer's testimony to the extent it reflects a legal opinion about the contract.

### B.    *Antitrust Damages*

Second, Judge Cogan found that Dr. Williams's D1 damages model had failed to properly calculate antitrust damages because Dr. Williams mistakenly assumed that NASL had zero value in the actual world if it was denied a D1 sanction even though the NASL could have continued as a D2 team and collected D2 expansion fees. ECF No. 399 at 24. Judge Cogan directed Dr. Williams to "assess and subtract the actual value of NASL's expansion fees in the real world after it was denied a D1 sanction in 2016 . . . from his estimate of the value of NASL's D1 expansion fees in the but-for world." *Id.* at 25.

The Court agrees with Defendants that Dr. Williams' revised D1 damages model is not consistent with the directives in Judge Cogan's Order as it still does not compare like for like. Dr. Williams's revised model assumes that in the but-for world where NASL is granted a D1 sanction in 2016, it will continue to operate as a D1 league bringing in expansion fees for ten years, through 2025. ECF No. 441-2 at 14–35. At the same time, Dr. Williams's revised model assumes that if NASL is denied a D1 sanction, it will only have value as a D2 league for a single season because NASL was actually denied a D2 sanction in 2017. *Id.* at 12–13. This comparison is fundamentally unequal and results in an inflated D1 damages calculation. As of March 2016, when NASL was denied a D1 sanction, it continued to have value as a D2 going

concern that could have attracted expansion fees through 2025, as made clear by Dr. Williams's own D2 damages model.  I agree with Defendants that "NASL's injury was the loss of its *incremental* value as a D1 league over its value as a D2 league."  ECF No. 441-1 at 14–15 (emphasis in original).  To calculate antitrust damages, Dr. Williams must compare like for like and calculate the difference between the value of NASL in the but-for world as a D1 league and the value of NASL as a D2 league had it continued as such through 2025.  He has not done so.

Because the Court is reluctant to hobble Plaintiff's case by precluding Dr. Williams from offering testimony as to D1 damages, the Court will allow Plaintiff one last opportunity to comply with Judge Cogan's directives and update Dr. Williams's report to properly calculate NASL's D1 antitrust damages by subtracting out the value of NASL as a D2 going concern through 2025.  This valuation may of course be informed by the expansion fees that NASL actually received for the years that it did in fact continue to operate as a D2 league.  Dr. Williams must serve his updated report on Defendants by November 12, 2024.  Plaintiff should view Judge Cogan's Order as a foul and this Order as its first yellow card.  Failure to comply with this Order in the production of Dr. Williams's supplemental expert report will result in a straight red card and the preclusion of Dr. Williams's D1 testimony.[12]  The Court warns Defendants, however, that it will not be amenable to any dramatic dives in an effort to draw that red card.  This issue has now been briefed exhaustively and repeatedly—the Court should not have to address it further.

---

[12]     For the same reasons that the Court has directed Dr. Williams to update his D1 damages model to account for the value of NASL as a D2 league, the Court declines to exclude Meyer's opinion and testimony on this issue.

## VI.    Sealing

The Court grants the sealing motions associated with the briefing for the issues addressed in this Order.  The parties shall not refile any of these papers.  Because the Court relied extensively on sealed materials, the Court is temporarily making this Order available only to the parties.  The parties are directed to make a joint motion to seal the appropriate portions of this Order, if necessary, on or before November 12, 2024.  The Court will thereafter rule on any sealing motion, apply any appropriate redactions, and make this Order publicly available.

## VII.    Trial Procedures

Jury selection will begin on January 6, 2025, and the Court will sit Monday through Friday from 9:30 A.M. to 5:30 P.M. every day thereafter with the following exceptions:  (1) the Court will not sit on January 9 or 10 due to a scheduling conflict; (2) the Court will not sit on January 20, 2025, because it is Martin Luther King Jr. Day; and (3) if necessary, the Court will end proceedings by 3:00 P.M. each Friday of trial to accommodate Sabbath observance.

As the parties will surely recall, trial in this matter was initially scheduled for September 9, 2024.  After USSF identified a scheduling conflict, the Court, relying on the parties' representations at the pretrial conference that they would need only three weeks for trial, moved the trial date to the current one.  Before doing so, the Court warned the parties that it had a multiweek criminal trial scheduled for December of this year and another multiweek criminal trial scheduled to begin in late January 2025.  The Court believed it would have no trouble accommodating both this trial and its subsequent criminal trial in January 2025 based on the parties' three-week trial estimate.  However, after reviewing the parties' preliminary motions *in limine*, it has become clear to the Court that the parties have deeply disparate views as to what this case is about and what evidence is relevant.  Additionally, each side expresses concern in its

*in limine* briefing that certain issues relevant to the case could result in a "trial within a trial," *see* ECF No. 412-3 at 18, or a "mini-trial," ECF No. 409 at 17. Accordingly, to avoid the risk of cumulative and unnecessary evidence, and to ensure that the Court can diligently attend to its criminal trial docket, each side will be allowed 35 hours of trial time in front of the jury, for a total of 70 trial hours.[13] The time for jury selection will not count for either party. Time will be kept by the Court and reported on the record periodically and at the close of evidence on each trial day. Time will accrue when counsel for a side is standing in the presence of the jury and during the presentation of a party's designated deposition testimony.

## **CONCLUSION**

For the reasons set forth herein, the Court: (1) grants in part and denies in part Defendants' motion to exclude certain evidence that is allegedly unrelated to Plaintiff's remaining claims; (2) denies Plaintiff's motion to exclude evidence related to Davidson's and Traffic's indictments and convictions; (3) grants in part and denies in part Defendants' motion seeking jury instructions regarding Plaintiff's destruction of Davidson's emails and Davidson's invocation of the Fifth Amendment; (4) denies Plaintiff's motion to exclude evidence related to the Ted Stevens Act and Other Activities; (5) grants in part and denies in part Defendants' motion to exclude Dr. Williams's D1 damages testimony; and (6) grants in part and denies in part Plaintiff's motion to exclude Meyer's D1 damages testimony. Dr. Williams must serve an updated report as to D1 damages as further detailed in this Order on Defendants by November 12, 2024. The Court also grants the sealing motions associated with the briefing for the issues

---

[13] The Court notes that Plaintiff proposed this approach, including the equal split of trial time, at the pre-trial conference, and reiterated its proposal that the Court set time limits for the parties in one of its *in limine* oppositions, *see* ECF No. 428 at 19.

addressed in this Order, and the parties must make a joint motion to seal the appropriate portions

of this Order, if necessary, on or before November 12, 2024.

SO ORDERED.

/s/ Hector Gonzalez
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
October 28, 2024