Hon. Hector Gonzalez  December 13, 2024
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**Re:** *North American Soccer League, LLC v. United States Soccer Federation, Inc. and Major League Soccer, L.L.C.*, **No. 1:17-cv-05495**

Dear Judge Gonzalez:

Pursuant to the Court's December 6, 2024 Order, which took issue with the contemplation of potentially "limitless" requests to seal information at trial, the parties jointly submit this letter regarding the sealing of materials at trial. As instructed by the Court, the parties set forth below (1) a joint statement of the legal standards for sealing materials at trial; (2) an estimate by each party of the discrete pieces of evidence it intends to ask the Court to rule on (if any), the types of relief each party intends to seek (if any), and precedent for the Court to order such relief; and (3) an estimate of the number of requests for relief that the parties expect from non-parties.

**I.** **<u>Legal Standard for Sealing Materials at Trial</u>**

"[E]vidence introduced at trial . . . enjoys a strong presumption of public access," *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019), and the First Amendment "secure[s] to the public . . . a right of access to civil proceedings," *Westmoreland v. Columbia Broad. Sys.*, 752 F.2d 16, 23 (2d Cir. 1984). So even if a court has already granted a motion to seal, such determinations may be limited to a given "stage of the case"—such that "at trial, the factors governing sealing (and pseudonymity) determinations may very well weigh differently." *Doe v. N.Y. Univ.*, 2023 WL 2609315, at *3 (S.D.N.Y. Mar. 22, 2023). As a result, the "continued sealing of the documents may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Brown*, 929 F.3d at 47 (citation omitted). "Broad and general findings by the trial court, however, are not sufficient to justify closure." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (quoting *In re N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)).

The "First Amendment right of access is always qualified," and so "a trial judge, in the interest of the fair administration of justice, [may] impose reasonable limitations on access to a trial." *N.Y. Civ. Liberties Union v. N.Y. City Transit Auth.*, 684 F.3d 286, 303-04 (2d Cir. 2012) (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 581 n.18 (1980) (plurality op.)). Courts may thus require an explanation of "what countervailing factors outweigh the public's 'strong presumption' of access to information introduced at trial" and ask parties to "detail proposed measures for maintaining the confidentiality of sealed information at trial as well as why these measures are lawful, citing examples where such measures have been utilized." *Valassis Commc'ns, Inc. v. News Corp.*, 2020 WL 2190708, at *5 (S.D.N.Y. May 5, 2020).

To "determine whether the presumption attaches to a particular record," courts within the Second Circuit conduct "a three-step inquiry." *Mirlis v. Greer*, 952 F.3d 51, 59 (2d Cir. 2020). *First*, before the right of public access "can attach," a court "must first conclude that the documents at issue are indeed 'judicial documents.'" *Lugosch*, 435 F.3d at 119. A judicial document "is one

1

that has been placed before the court by the parties and that is 'relevant to the performance of the judicial function and useful in the judicial process.'" *Mirlis*, 952 F.3d at 59 (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*")). The "mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *Amodeo I*, 44 F.3d at 145. But a document is "relevant to the performance of the judicial function if "it would reasonably have the *tendency* to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision." *Brown*, 929 F.3d at 49 (emphasis in original). If "documents filed by a party are *not* relevant to the performance of a judicial function, no presumption of public access attaches." *Id.* (emphasis in original). If the document filed "would reasonably have the *tendency* to influence a district court's ruling on a motion or in the exercise of its supervisory powers," then "the fact that the district court ultimately found the content of [the document] to be immaterial under the law does not undermine its classification as a judicial document." *Olson v. Major League Baseball*, 29 F.4th 59, 89 (2d Cir. 2022); *see, e.g., Valassis*, 2020 WL 2190708, at *2 ("Here, all the documents at issue were submitted to the Court in support of and so would reasonably have the tendency to influence the Court's decision on the outstanding motions in limine, to exclude, and for sanctions. In fact, the parties submitted these documents with this very intention. As such, all documents submitted in support of these motions are judicial documents and enjoy some presumption of public access.").

*Second*, "if the record sought is determined to be a judicial document, the court proceeds to 'determine the weight of the presumption of access' to that document." *Mirlis*, 952 F.3d at 59 (citation omitted). That weight is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.* (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) ("*Amodeo II*")). "[E]vidence introduced at trial . . . enjoys a strong presumption of public access," whereas documents "that are never filed with the court, but simply 'passed between the parties in discovery, lie entirely beyond the presumption's reach.'" *Brown*, 929 F.3d at 49-50 (quoting *Amodeo II*, 71 F.3d at 1050).

*Third*, the court "must identify all of the factors that legitimately counsel against disclosure of the judicial document, and balance those factors against the weight properly accorded the presumption of access." *Mirlis*, 952 F.3d at 59. The burden is on the party requesting nondisclosure to put forth "substantial countervailing considerations—supported by examples or explicit reasoning—to overcome the presumption of public access." *Connecticut Gen. Life Ins. Co. v. Biohealth Lab'ys, Inc.*, 2023 WL 5567393, at *2 (D. Conn. May 2, 2023); *see also DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997); *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009). Such "countervailing values may include" interests such as, "the protection of attorney-client privilege," and "the privacy interest of those who resist disclosure." *Brown*, 929 F.3d at 47 n.13 (citation omitted); *see also Hanks v. Voya Ret. Ins. & Annuity Co.*, 2020 WL 5813448, at *1 (S.D.N.Y. Sept. 30, 2020) ("[e]stablished factors and values that can outweigh the presumption of public access" include business secrecy, privacy interests, and legal privilege). With respect to the latter, "[t]he privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation." *Amodeo II*, 71 F.3d at 1050 (quoting *In re Newsday, Inc.*, 895 F.2d. 74, 79-80 (2d Cir. 1990)). "Financial records of a wholly

owned business, family affairs, illnesses, embarrassing conduct with no public ramifications and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public." *Id.* at 1051. In weighing "an assertion of a right of privacy," courts should consider "the degree to which the subject matter is traditionally considered private rather than public," the "nature and degree of the injury," and "the reliability of the information." *Id.*; *see also SEC v. TheStreet.Com*, 273 F.3d 222, 231-32 (2d Cir. 2001).

As this Court has explained, the uniform practice of courts in the Second Circuit is to require rigorous showings in order to obtain sealing at trial. *See, e.g., Valassis*, 2020 WL 2190708, at *5 ("The submission should also detail proposed measures for maintaining the confidentiality of sealed information at trial as well as why these measures are lawful, citing examples where such measures have been utilized."); *accord Doe*, 2023 WL 2609315, at *3.

## II.     The Parties Anticipated Sealing Requests, If Any

Set forth below is an estimate by each party of the discrete pieces of evidence it intends to ask the Court to rule on (if any), the types of relief each party intends to seek (if any), and precedent for the Court to order such relief. Pursuant to the Court's instructions, the parties do not herein make motions to seal any specific pieces of evidence. Accordingly, no party includes below any response to any other party's statement.

### A.     North American Soccer League's Statement

Consistent with the legal standards set forth above, NASL does not intend to seek to seal any evidence submitted at trial. As such, NASL (i) does not have any discrete pieces of evidence it intends to affirmatively ask the Court to rule regarding sealing, (ii) does not have any type of affirmative relief it intends to seek regarding sealing, and (iii) does not submit any precedent as a basis for the Court to order affirmative relief regarding sealing. NASL reserves all rights to respond to sealing requests made by any Defendant and/or third-party.

### B.     U.S. Soccer's Statement

Recognizing the standards set forth above, U.S. Soccer does not presently intend to seek to seal the courtroom for the presentation of any evidence at trial. There are, however, discrete commercial terms within several broadcasting or licensing agreements to which U.S. Soccer is a party that U.S. Soccer intends to seek to redact from any public display of the exhibit at trial, or in connection with trial or post-trial briefing. This anticipated relief would not affect the Court or jury's ability to see the full contents of the agreements. U.S. Soccer will not seek to seal testimony regarding these contracts at trial. U.S. Soccer, however, believes that questioning regarding the specific dollar terms of these broadcasting or licensing agreements could be done in such a way so as to avoid needlessly disclosing commercially sensitive information that U.S. Soccer contends would harm its future broadcasting and licensing negotiations, and U.S. Soccer may ask the Court to impose such relief.

The specific licensing or broadcast agreements on an exhibit list for which U.S. Soccer would seek the above relief are the following:

- April 9, 2004 – U.S. Soccer / SUM Licensing Agent Agreement

- October 2010 – U.S. Soccer / SUM Licensing Agent Agreement Extension

- January 1, 2015 – U.S. Soccer / SUM Master Rights Agreement

- May 2, 2014 – Major League Soccer & U.S. Soccer Federation / ESPN Memorandum of Understanding

- May 2, 2014 – Major League Soccer & U.S. Soccer Federation / FOX Memorandum of Understanding

- May 2, 2014 – Major League Soccer & U.S. Soccer Federation / Univision Memorandum of Understanding

- October 20, 2014 – Major League Soccer & U.S. Soccer Federation / IMG Memorandum of Understanding[1]

Precedent for this type of relief includes: *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp.*, 2021 WL 2935963, at *1-2 (S.D.N.Y. July 13, 2021) (granting application to seal or redact trial exhibits due to "confidential and proprietary financial, trade secret and personal information" and finding "proposed redactions and sealing requests [to be] narrowly tailored to prevent unauthorized dissemination of sensitive business information"); *United States v. Schulte*, 608 F. Supp. 3d 70, 73-74 (S.D.N.Y. 2022) (granting motion to admit at trial "classified exhibits [that] would be viewable by the Court, the jury, and the parties, but not by the public"); *Rubik's Brand Ltd. v. Flambeau, Inc.*, 2021 WL 1085338, at *1 (S.D.N.Y. Mar. 22, 2021) (sealing licensing agreement in summary judgment record because "[d]isclosure of these contractual terms could harm RBL and/or its business partners by disadvantaging them in negotiating future licensing agreements"); *United States v. Roberts*, 2010 WL 1010000, at *1, 8-9 (E.D. Tenn. Mar. 17, 2010) (granting request such that "exhibits containing confidential and trade secret information not be displayed to the public during trial" and not "be available for copying by the public or competitors"); *Standard Inv. Chartered, Inc. v. Fin. Indus. Reg. Author.*, 347 F. App'x 615, 617 (2d Cir. 2009) (affirming sealing of judicial documents containing "confidential business information" that would cause "financial harm" if disclosed publicly); *see also* Fed. R. Civ. P. 26(c)(1)(G) (listing "trade secret[s] or other confidential research, development, or commercial information" as material that the Court may protect from public disclosure).

U.S. Soccer also anticipates that each side will admit as exhibits certain transcripts and minutes of U.S. Soccer Board of Director meetings at trial. Sanctioning professional men's soccer leagues is only one portion of U.S. Soccer's governance of the sport of soccer in the United States. Accordingly, in U.S. Soccer's view, large portions of these general Board meeting minutes and

---

[1] The values in these agreements that U.S. Soccer intends to move to redact from public disclosure may have been incorporated by reference in other documents, such as U.S. Soccer financial statements, over which U.S. Soccer would also seek the same relief.

transcripts would not have any reasonable tendency to influence the Court's rulings or supervisory powers, or the jury's findings. U.S. Soccer will not seek to seal the courtroom for any discussion regarding these Board meeting minutes or transcripts, and U.S. Soccer does not intend to request any ruling in advance of trial regarding the relevance, probative tendency, or confidential nature of any of those Board materials. If U.S. Soccer's Board meeting minutes and transcripts are admitted as trial exhibits, and portions of those transcripts or minutes that are not inquired into during the trial satisfy the above requirements for sealing, U.S. Soccer intends to request that the Court permit U.S. Soccer an opportunity to apply to redact those unused portions of the admitted minutes and transcripts.

Precedent for this remedy includes: *NAACP v. A.A. Arms Inc.*, 2003 WL 21135579, at *1 (E.D.N.Y. May 8, 2003) (ordering that certain "documents designated as confidential will be available to the jury and the court in unredacted form, but will be redacted as placed in the public record"); *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, 2022 WL 15033005, at *1 (S.D.N.Y. Oct. 25, 2022) ("Filing the deposition transcripts under seal is necessary to prevent the disclosure of confidential business information that was not relied upon by any party or the Court and thus is subject to a weaker presumption of public access, but is included in the exhibits only because it is adjacent to the relevant portions."); *Syntel Sterling Best Shores Mauritius*, 2021 WL 2935963, at *1-2 (granting application to seal or redact trial exhibits due to "confidential and proprietary financial, trade secret and personal information" and finding "proposed redactions and sealing requests [to be] narrowly tailored to prevent unauthorized dissemination of sensitive business information"); *In re Citibank August 11, 2020 Wire Transfers*, 2020 WL 6782213, at *2 n.3 (S.D.N.Y. Nov. 18, 2020) (discussing "public access to trial exhibits" and noting that "if information in a document is not relevant to the issues in the case, *and no party asks the Court to consider it*, the parties may—and should—redact the information without leave of Court to obviate any concerns about public access").

### C. Major League Soccer's Statement

Recognizing that evidence introduced at trial enjoys a strong presumption of public access, Major League Soccer, L.L.C. ("MLS") does not seek to close the courtroom for discussion of any subject at trial. The only relief MLS may seek related to its confidential information would be to request that MLS be permitted to maintain under seal or redact portions of certain trial exhibits that the parties may file on the docket (*i.e.*, admitted trial exhibits, or exhibits submitted in connection with Rule 50 motions or with post-trial briefing). Because many of the documents containing confidential information currently listed on the parties' exhibit lists will never be introduced or admitted into evidence at trial, it is likely that many of the potential requests for relief that MLS catalogs herein will not be necessary.

The types of confidential information in the trial exhibits MLS may move to seal or redact mirror some of the categories of confidential information MLS moved to seal in connection with the parties' motions for summary judgment and *Daubert* briefing: (1) commercially sensitive contracts; (2) league and team financial information; and (3) MLS's marketing information, business research, and internal analysis. *See* ECF No. 354-2 (Schmidt Declaration), ECF No. 354-

1 (Memo of Law).[2]  Pursuant to the Court's December 6, 2024 Order, MLS outlines below the precedent that supports sealing each of these categories of confidential information, as well as additional details on the types of potential trial exhibits that fall into each category.

### 1. *Commercially Sensitive Contracts*

MLS seeks to protect from disclosure (i) the non-public terms of agreements between MLS or its marketing affiliate Soccer United Marketing, LLC ("SUM") and broadcasters, sponsors, licensees, and/or other business partners (which overlap with the licensing and broadcasting agreements U.S. Soccer identifies above); (ii) the non-public terms of MLS expansion and purchase agreements with investor-operators (but not now-public expansion fees); and (iii) documents containing information pertaining to the negotiations of these agreements.  While MLS does not object to the discussion of these terms and topics during trial, if these contracts were to be made publicly available on the docket in their entirety, MLS and SUM would be disadvantaged in future negotiations with third parties, as prior contractual obligations and priorities could be exploited by potential partners to MLS's and SUM's detriment.

Precedent for sealing commercial information and confidential business records includes:  Fed. R. Civ. P. 26(c)(1)(G) (listing "trade secret[s] or other confidential research, development, or commercial information" as material that the Court may protect from public disclosure); *Standard Inv. Chartered, Inc. v. Fin. Indus. Regul. Auth., Ind.*, 347 F. App'x 615, 617 (2d Cir. 2009) (affirming district court's conclusion "that [Defendant]'s interest in protecting confidential business information outweighs the qualified First Amendment presumption of public access . . . ."); *Rubik's Brand Ltd. v. Flambeau, Inc.*, 2021 WL 1085338, at *1 (S.D.N.Y. Mar. 22, 2021) (granting motion to seal confidential licensing agreement because "[d]isclosure of these contractual terms could harm [Plaintiff] and/or its business partners by disadvantaging them in negotiating future licensing agreements"); *Regeneron Pharms., Inc. v. Novartis Pharma AG*, 2021 WL 243943, at *1 (S.D.N.Y. Jan. 25, 2021) ("[C]ourts in this District routinely seal documents to prevent the disclosure of a party's confidential or competitively sensitive business information.").

Further, MLS believes that it will be able to narrowly tailor its request to protect information in these types of agreements such that MLS would only seek to seal or redact sensitive terms and information, particularly where the competitively sensitive information is unnecessary to the public's understanding of the issues presented at trial.  *See Graczyk v. Verizon Comm's, Inc.*, 2020 WL 1435031, at *8-9 (S.D.N.Y. Mar. 24, 2020) (granting request to seal portions of contracts containing "sensitive financial information" that would cause the requesting party to suffer "competitive disadvantage in future negotiations"); *NAACP v. A.A. Arms Inc.*, 2003 WL 21135579, at *1 (E.D.N.Y. May 8, 2003) (permitting redaction of trial exhibits placed in the public record).

---

[2]    Judge Cogan granted MLS's motion to seal portions of the summary judgment and *Daubert* briefing and exhibits as to all of MLS's requested categories of confidential information except contracts containing past expansion fees.  ECF No. 399 at 61.  The Court reasoned that because past expansion fees had been made public, such information is not entitled to sealing.  *Id.*  As to the rest of the information, the Court found that it was "at most, tangentially relevant to the summary judgment analysis and that MLS's privacy interests outweigh the presumption of public access." *Id.*

### 2. *League and Team Financial Information*

MLS has produced, and the parties have identified as potential trial exhibits, detailed financial statements that contain confidential data on the financial results, attendance metrics, revenues, operating budgets, losses, and profits of MLS and all of its teams. Although certain categories of this financial data are relevant to the parties' experts' analyses, the wholesale publication of this information would cause MLS significant competitive harm that weighs against the presumption of public access. *See Amodeo II*, 71 F.3d at 1051 ("Commercial competitors seeking an advantage over rivals need not be indulged in the name of monitoring the courts . . . ."). This financial information could be exploited by MLS's and its investor-operators' competitors and potential counterparties, and MLS accordingly anticipates requesting that it be permitted to seal any admitted trial exhibits that contain confidential and detailed financial data. *See Encyclopedia Brown Prods., Ltd. v. Home Box Off., Inc.*, 26 F. Supp. 2d 606, 614 (S.D.N.Y. 1998) ("Confidential business information dating back even a decade or more may provide valuable insights into a company's current business practices that a competitor would seek to exploit.").

Motions to seal or redact highly sensitive financial information are regularly granted in this Circuit. *See, e.g.*, *Saint-Jean v. Emigrant Mortgage Co.,* 2016 WL 11430775, at *4 (E.D.N.Y. May, 24, 2016) ("[D]ocuments falling into categories commonly sealed are those containing . . . revenue information, pricing information and the like.") (internal citation and quotation omitted); *Valassis Commc'ns, Inc. v. News Corp.*, 2020 WL 2190708, at *3 (S.D.N.Y. May 5, 2020) (holding that "pricing, costs, revenue, and profit information could result in significant harm to [the requesting party] without providing much value in the monitoring of the federal courts").

### 3. *Marketing Information, Business Research, & Internal Analyses*

The types of documents that fall into this category that MLS would request to seal or redact include analysis conducted by the Boston Consulting Group, which evaluated MLS's economic strength and suggested strategic business decisions MLS might pursue, as well as internal MLS marketing plans and research that MLS utilizes to position itself in the sports industry. If publicly disclosed, competitors could make use of valuable and detailed models, consumer research, and recommendations to weaken MLS's bargaining power and commercial status. *See GoSMile, Inc. v. Dr. Jonathan Levine, D.M.D. P.C.*, 769 F. Supp. 2d 630, 649 (S.D.N.Y. 2011) (holding that the privacy interests in documents that "contain highly proprietary material concerning the defendant's marketing strategies, product development, costs and budgeting" outweigh the presumption of public access and should remain under seal); *Oliver Wyman, Inc. v. Eielson*, 282 F. Supp. 3d 684, 706-07 (S.D.N.Y. 2017) (holding documents that reveal a firm's internal analysis of competitiveness could harm competitive standing and thus may be maintained under seal).

Courts have permitted motions to seal documents containing highly sensitive marketing and business material where parties may be harmed if their strategies, plans, and internal policies are available to competitors. *See Tropical Sails Corp. v. Yext, Inc.*, 2016 WL 1451548, at *4 (S.D.N.Y. Apr. 12, 2016) (holding that "exposure to its competitors of [Defendant's] market predictions and intelligence, product comparisons, and strategy" constituted a "specific harm" that justified sealing marketing and business material).

As with MLS's potential request to seal commercially sensitive contracts, MLS envisions that it would seek to seal or redact only those portions of admitted trial exhibits that contain this category of sensitive business information and analysis. *See Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015) (granting motion to redact documents revealing advertising expenditures and plans and merchandising strategies, policies, and sales).

### III. Non-Parties' Anticipated Sealing Requests, If Any

Collectively, the parties have provided notice of potential disclosure to 20 non-parties whose designated Confidential Information is included in a party's exhibit list or deposition designations. Because some non-parties produced materials several years ago, in some instances notice was provided to the last known point of contact for the non-party. The parties endeavored to notify the non-parties listed below.

As of the filing of this letter, only United Soccer Leagues ("USL") has stated its intention to move to seal materials at trial. Counsel for USL represented that it intends to seek to seal seven to ten exhibits and portions of the deposition of Alec Papadakis previously designated as Confidential Information.

1. Aaron Davidson
2. Bob Watkins
3. Boston Consulting Group
4. Cotti Foods (Pete Capriotti)
5. David Downs
6. Detroit City FC
7. ESPN
8. FOX
9. IMG / TKO Group
10. Jeff L'Hote
11. Luis Cuccatti (Ft. Lauderdale Strikers)
12. Miami FC
13. Mind Soccer Group
14. Minnesota United FC
15. New York Cosmos
16. Soccer United Marketing, LLC ("SUM")
17. Steven Wagoner
18. TelevisaUnivision
19. U.S. Soccer Federation Foundation, Inc.
20. United Soccer Leagues ("USL")

Respectfully submitted,

By: *s/ Jeffrey L. Kessler*

Jeffrey L. Kessler
David G. Feher
Eva W. Cole
Johanna Rae Hudgens
Mark E. Rizik Jr.
**WINSTON & STRAWN, LLP**
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
jkessler@winston.com
dfeher@winston.com
ewcole@winston.com
jhudgens@winston.com
mrizik@winston.com

Clifford H. Pearson (Admitted *Pro Hac Vice*)
Daniel L. Warshaw (Admitted *Pro Hac Vice*)
Matthew A. Pearson (Admitted *Pro Hac Vice*)
**PEARSON WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Tel.: (818) 788-8300
Fax.: (818) 788-8104
cpearson@pwfirm.com
dwarshaw@pwfirm.com
mapearson@pwfirm.com

Neil Swartzberg (Admitted *Pro Hac Vice*)
**PEARSON WARSHAW, LLP**
555 Montgomery Street, Suite 1205
San Francisco, California 94104
Tel.: (415) 433-9000
Fax.: (415) 433-9008
nswartzberg@pwfirm.com

*Counsel for Plaintiff North American Soccer League, LLC*

By: *s/ Lawrence E. Buterman*

Lawrence E. Buterman
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
Fax: (212) 751-4864

Christopher S. Yates (*pro hac vice*)
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 391-0600
Fax: (415) 395-8095

*Counsel for Defendant United States Soccer Federation, Inc.*

By: *s/ Bradley I. Ruskin*

Bradley I. Ruskin
Kevin J. Perra
Scott A. Eggers
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, New York 10036
(212) 969-3000
bruskin@proskauer.com
kperra@proskauer.com
seggers@proskauer.com

Colin R. Kass
**PROSKAUER ROSE LLP**
1001 Pennsylvania Ave., NW, Suite 600S
Washington, DC 20004
(202) 416-6800
ckass@proskauer.com

*Counsel for Defendant Major League Soccer, L.L.C.*