**Pl.'s Objections to Exhibits Used in Defendants' Opening Statement Demonstratives**

| Att. # | Ex. # | Description | Relevant Language | Pl.'s Objection | Defendants' Response |
|---|---|---|---|---|---|
| 1 | DX-166 | October 28, 2011 email from J. Loesch to E. Sanz et al. re "Cosmos: Consulting Agreement signed" attaching Consulting Services Agreement | .0003-.0004: Consulting Services Agreement between Traffic Sports International Inc. & Golden Miracle Management S.A. | 602: Defendants are not calling, and have not designated testimony from, a witness who has personal knowledge of this document. | This exhibit is, at a minimum, being admitted through the deposition of Aaron Davidson. *See* A. Davidson Tr. 127:21-23; 128:3-7, ECF No. 479-16 (discussing Cosmos Dep. Ex. 4, which is DX-166). NASL previously objected to Mr. Davidson's deposition regarding this exhibit, but the Court overruled those objections in its December 26, 2024 Order. ECF No. 493 at 2.<br><br>Furthermore, Defendants attached and relied upon this exhibit in their opposition to NASL's motion *in limine* regarding the payment Traffic Sports made for the New York Cosmos to join NASL. *See* ECF No. 465-1 at 14; ECF No. 465-7. When denying NASL's motion, the Court ruled that Defendants may rely upon "the documentary evidence referenced in defendants' opposition to plaintiff's motion and any testimony, including any Fifth amendment invocation, that Davidson gave on the topic." Dec. 5, 2024 Hr'g Tr. at 13:5-14:6.<br><br>Additionally, Defendants have reason to believe, and intend to show at trial, that one or more witness testifying live at trial has knowledge of this exhibit. |

| Att. # | Ex. # | Description | Relevant Language | Pl.'s Objection | Defendants' Response |
|---|---|---|---|---|---|
| 2 | DX-667 | April 8, 2017 email from B. Helmick to F. Igel et al. re "SF Deltas - Investor Update 16Q4" attaching Investor Update 16Q4 | .0002, .0011: Business report by Brian Helmick, NASL Board of Governors Alternate Governor, NASL Expansion Committee, NASL Commercial Committee, NASL Tampa Bay and Ottawa Cleanup Committee, & NASL Team Owner, CEO | 801-802: The statements within the document are offered for the truth of the matter asserted.<br><br>805: Hearsay within hearsay as to Helmick's recounting of prior conversations with various individuals. | Plaintiff objected to questioning regarding this exhibit in Brian Helmick deposition designations. *See* B. Helmick Tr. 152:3-15, ECF No. 479-22 (discussing Dep. Ex. 1, which is DX-667). The Court overruled NASL's objections in its December 26, 2024 Order, ECF No. 493 at 2, and thus testimony about this exhibit is admissible.<br><br>This exhibit is a quarterly investor update from an NASL team owner to investors in that NASL team. Accordingly, the exhibit is, at a minimum, a business record of that NASL team, as established in the testimony of Mr. Helmick that the Court has ruled is admissible. Fed. R. Evid. 803(6).<br><br>In addition to providing information about his team's operation, Mr. Helmick provides information regarding NASL's operations within the scope of his role as an NASL team owner, and member of NASL's Board of Governors, member of NASL's Expansion Committee, and member of NASL's Tampa Bay and Ottawa Cleanup Committee. Mr. Helmick's report on issues, such as that the "league has gone through tremendous turbulence losing more than half of the existing ownership groups" and the work he performed "as part of the Expansion Committee," are statements of a party opponent, as NASL's Board of Governors controlled and governed the league, and the team owners owned the league. Fed. R. Evid. 801(d)(2). As described at DX-733.0011, "NASL is owned and operated by its member clubs and the club-appointed Board of Governors." |

| Att. # | Ex. # | Description | Relevant Language | Pl.'s Objection | Defendants' Response |
|---|---|---|---|---|---|
| 3 | DX-713 | July 24, 2017 email from B. Helmick to F. Igel et al. re "SF Deltas - Investor Update 17Q2" attaching Investor Update 17Q2 | .0002, .0011: Business report by Brian Helmick, NASL Board of Governors Alternate Governor, NASL Expansion Committee, NASL Commercial Committee, NASL Tampa Bay and Ottawa Cleanup Committee, & NASL Team Owner, CEO | 801-802: The statements and information in the email and attachment are offered for the truth of the matter asserted. | Plaintiff objected to questioning regarding this exhibit in Brian Helmick deposition designations. *See* B. Helmick Tr. 207:16-209:9, ECF No. 479-22 (discussing Dep. Ex. 3, which is DX-713). The Court overruled NASL's objections in it December 26, 2024 order, ECF No. 493 at 2, and thus testimony about this exhibit is admissible.<br><br>This exhibit is a quarterly investor update from an NASL team owner to investors in that NASL team. Accordingly, the exhibit is, at a minimum, a business record of that NASL team, as established in the testimony of Mr. Helmick that the Court has ruled is admissible. Fed. R. Evid. 803(6).<br><br>In addition to providing information about his team's operation, Mr. Helmick provides information regarding NASL's operations within the scope of his role as an NASL team owner, and member of NASL's Board of Governors, member of NASL's Expansion Committee, and member of NASL's Tampa Bay and Ottawa Cleanup Committee. Mr. Helmick's report on issues, such as "[w]e're not moving forward because last year's league turbulence materially affected our business plan with revenue-generation and there continues to be league fragility," his reporting on league fan attendance, and other statements, are statements of a party opponent, as NASL's Board of Governors controlled and governed the league, and the team owners owned the league. Fed. R. Evid. 801(d)(2). As described at DX-733.0011, "NASL is owned and operated by its member clubs and the club-appointed Board of Governors." |

| Att. # | Ex. # | Description | Relevant Language | Pl.'s Objection | Defendants' Response |
|---|---|---|---|---|---|
| 4 | DX-340 | April 5, 2015 NASL Newsstand" with lead story *NASL Seeks To Outgrow 'Minor League' Label As Fifth Year Kicks Off*, Sports Illustrated | .0004: Statements by Peter Wilt NASL Board of Governors Alternate Governor & NASL Team President, General Manager:<br><br>"Right now, I don't think any neutral party or unbiased party would say we're first division. We need to improve on the field and off the field."<br><br>"The standards that are in place are fair and I think if our goal as a club is to operate at a first division level, that means having a bigger, better stadium. It means selling more sponsorships, having a better broadcast deal and having a more competitive team on the field. We're not first division, arguably, in any of those categories. But we're heading in the right direction." | 801-802/805: Hearsay within hearsay as to the comments/statements made within the article. | The speaker of these statements, Mr. Peter Wilt, was at the time on NASL's Board of Governors, as well as a President and General Manager of an NASL team, which was thus an owner of NASL. He is speaking about information within the scope of those roles, relating directly to the quality of the NASL and its teams, and the Standards at issue in this litigation. His statements are opposing party statements. Fed. R. Evid. 801(d)(2).<br><br>As a member of NASL's Board of Governors and team principal, quoted in the highly reputable publication *Sports Illustrated*, Mr. Wilt's statements carry sufficient indicia of trustworthiness and are more probative than other evidence. Fed. R. Evid. 807.<br><br>Mr. Wilt's statements (indicated in a blue box within the attached exhibit) are also admissible for the non-hearsay purpose of showing that NASL was on notice that one of the members of its Board of Governors and team principals believed that "I don't think any neutral party or unbiased party would say we're first division," only weeks before NASL applied to be sanctioned as a Division I league.<br><br>NASL's compilation and internal circulation of articles about the league is also relevant for the non-hearsay purpose of showing notice NASL received about how its league was perceived publicly, only weeks before its Division I application. |

| 5 | DX-464 | May 18, 2016 Email from B. Edwards to M. Frisch et al. re "NASL Team Holdings, LLC's Class B membership interest in NASL" | .0002: Statements by Bill Edwards, NASL Board of Governors, NASL Executive Committee, NASL Finance & Audit Committee Chair, & NASL Team Owner | 401-403: Description of the details of Davidson's and Traffic's criminal conduct and proceedings are not relevant and would serve to prejudice, confuse, and mislead the jury. Portions of email that Defendants seek to use consist of generalized, conclusory expressions of negativity toward NASL without factual content, and therefore lack any probative value and risk prejudicing the jury.<br><br>801-802: The information/statements within the exhibit are offered for the truth of the matter asserted. | The Court has ruled that "Defendants must be permitted to introduce evidence and solicit testimony related to Traffic's and Davidson's indictments and guilty pleas because such evidence is necessary to allow Defendants to provide a plausible alternative explanation for the injuries that Plaintiff claims to have suffered and to try to defeat Plaintiff's theory of causation." ECF No. 451 at 5. The Court further ruled that "evidence of Traffic's and Davidson's indictments and guilty pleas is also highly probative of Defendants' theory of the case that NASL's injuries were not caused by Defendants' allegedly illegal anticompetitive conduct, but by fallout from the indictments and guilty pleas." *Id.* This exhibit falls squarely within the Court's prior rejection of NASL's Rule 401 and 403 arguments. In DX-464, a leader of NASL's Board of Governors and owner of NASL team Tampa Bay Rowdies reports that "[a]s a direct result of Traffic Sports scheme, the Rowdies will be forced to withdraw from NASL," and that "[t]he Rowdies have suffered substantial damages already, to its reputation, to its investment in NASL and to its investments in the team" due to the Traffic scandal and that the NASL team owners "need to lead as a Group and STOP THIS MADNESS."<br><br>The document is also relevant to NASL's theory of damages, as it shows Traffic Sports' right to future NASL expansion fees as of May 2016.<br><br>These are statements by a party opponent (801(d)(2)), as Mr. Edwards was a member of NASL's governing body—the Board of Governors through his ownership of the Tampa Bay Rowdies, and also a member of NASL's Executive Committee and Finance & Audit Committee. His statements about NASL's operations, |

5

| Att. # | Ex. # | Description | Relevant Language | Pl.'s Objection | Defendants' Response |
|---|---|---|---|---|---|
| | | | | | to other NASL Board of Governors members, are neither hearsay nor hearsay within hearsay.<br><br>These statements are also a business record of NASL's Board of Governors (which consisted of the owners of the teams that made-up the NASL), which the evidence will show owned and operated NASL. *See, e.g.*, DX-733.0011 ("NASL is owned and operated by its member clubs and the club-appointed Board of Governors."). |

| 6 | DX-733 | August 22, 2017 letter from M. Hale to L. Wahlke et al. re "TBR Holdings Confidential Mediation Statement Not To Be Distributed to Anyone Outside of USSF" | .0001-.0002: Statements by attorney on behalf of Bill Edwards, NASL Team Owner | 401-403: Description of the details of Davidson's and Traffic's criminal conduct and proceedings are not relevant and would serve to prejudice, confuse, and mislead the jury, particularly because the exhibit is a confidential mediation statement making conclusory, unsubstantiated allegations against NASL, rather than a factual source document.<br><br>801-802: The statements and information in this statement are offered for the truth of the matter asserted.<br><br>408: Document is from a confidential mediation and no showing has been made that the parties to that | As page DX-733.011 states, the "NASL is owned and operated by its member clubs and the club-appointed Board of Governors." Mr. Edwards was an owner of an NASL team and a member of its Board of Governors. The statements in the letter from Mr. Edwards' attorney are directly relevant to the issues relating to Traffic and causation that the Court has already ruled are "highly probative of Defendants' theory of the case that NASL's injuries were not caused by Defendants' allegedly illegally anticompetitive conduct, but by the fallout from the indictments and guilty pleas." ECF No. 451 at 5. This letter is direct evidence of that theory, showing that even in August 2017—over two years after the Traffic scandal was made public—issues relating to Traffic were still causing disputes and turmoil within NASL, including through the departure of NASL teams.<br><br>The letter is also admissible for the non-hearsay purpose of showing that NASL was on notice that its member teams were blaming the Traffic scandal for the need for teams, including the Tampa Bay Rowdies, to depart from the league—contrary to NASL's claims in this litigation that the Traffic scandal had no effect on the league.<br><br>The letter is also admissible for the non-hearsay purpose of showing that U.S. Soccer was on notice of the turmoil within NASL, as this statement was submitted to U.S. Soccer shortly after NASL's Division 2 application for 2018.<br><br>NASL waived its Rule 408 objection by failing to timely assert it within objections provided to the Court within the pre-trial order. *See* ECF No. 464-5 at 233. |

| Att. # | Ex. # | Description | Relevant Language | Pl.'s Objection | Defendants' Response |
|---|---|---|---|---|---|
| | | | | mediation consented to using the document outside of that mediation. | Moreover, this exhibit was used in the deposition of Luis Cuccatti over four years ago without any Rule 408 objection. The statement and attachments were provided to U.S. Soccer in 2017 as part of a request that U.S. Soccer help NASL resolve disputes with the Tampa Bay Rowdies—which U.S. Soccer was ultimately successfully in resolving. That fact, as well, undermines NASL's claim that U.S. Soccer was part of any conspiracy to harm NASL.<br><br>Furthermore, the claims at issue in this exhibit are not between NASL and Defendants, and therefore do not implicate Rule 408, which "only bars the use of compromise evidence to prove the validity or invalidity of the claim that was the subject of the compromise, not some other claim." *Williams v. Regus Mgmt. Grp., LLC*, 2012 WL 1890384, at *3 (S.D.N.Y. May 15, 2012) (citing cases).<br><br>This dispute relates to the mediation statement itself, contained at DX-733.0001 to .0008. The attachments to the mediation statement have standalone evidentiary merits that are not being presented to the Court at this time. For example, Plaintiffs objected to questioning regarding an attachment to this exhibit in Luis Cuccatti deposition designations. *See* L. Cuccatti Tr. 118:2-122:17, ECF No. 479-14. The Court overruled such objections in December 26, 2024 order, ECF No. 493 at 2, and thus testimony about that attachment is admissible. |

| Att. # | Ex. # | Description | Relevant Language | Pl.'s Objection | Defendants' Response |
|---|---|---|---|---|---|
| 7 | DX-545 | November 16, 2016 email from B. Melekian to R. Sehgal re "Fwd: Rayo OKC Players Statement" attaching Rayo OKC Players Statement | .0001-.0002: Statement by Brian Melekian, NASL Chief Operating Officer, conveying notice of non-payment from players of NASL team Rayo OKC | 801-802: The statements within the attachment are offered for the truth of the matter asserted. | The receipt by NASL's Chief Commercial Officer (Brian Melekian) and Legal Director (Rishi Sehgal) of a notice by NASL team players that they were not being paid, that the league and its club are engaged in "highly unacceptable" conduct, and requesting an "immediate response from the league on these issues," is relevant for the non-hearsay effect on NASL, as this notice ultimately contributed to the withdrawal of NASL team Rayo OKC after the 2016 season, contradicting NASL's theory of harm.<br><br>In addition, as the notice was received by NASL's Chief Operating Officer and forwarded to NASL's Legal Director asking if the Commissioner of the NASL had seen it, the document is a business record of NASL, and not hearsay or hearsay within hearsay. Fed. R. Evid. 803(6). |

| 8 | DX-520 | October 13, 2016 letter from D. Kelley to A. Markus re "Resolution of Claims between North American Soccer League and NASL Team Holdings, LLC" | .0002: Statements by NASL's attorney on behalf of NASL | 401-403: Description of the details of Davidson's and Traffic's criminal conduct and proceedings are not relevant and would serve to prejudice, confuse, and mislead the jury, particularly because letter is a confidential settlement communication from a separate legal dispute.<br><br>801-802: The statements within the attachment are offered for the truth of the matter asserted.<br><br>408: Document is a confidential settlement communication from a separate mediation, and no showing has been made that the parties to that mediation | Plaintiffs objected to questioning regarding this exhibit in the deposition designations of Bill Peterson. *See* B. Peterson Tr. 104:25-105:6, 105:14-108:8, 108:10-25, 112:9-22, 112:25-113:7, ECF No. 479-40 (discussing Dep. Ex. 11, which is DX-520). The Court overruled NASL's objections in its December 26, 2024 order, ECF No. 493 at 3, and thus testimony about this exhibit is admissible.<br><br>The Court has ruled that "Defendants must be permitted to introduce evidence and solicit testimony related to Traffic's and Davidson's indictments and guilty pleas because such evidence is necessary to allow Defendants to provide a plausible alternative explanation for the injuries that Plaintiff claims to have suffered and to try to defeat Plaintiff's theory of causation." ECF No. 451 at 5. The Court further ruled that "evidence of Traffic's and Davidson's indictments and guilty pleas is also highly probative of Defendants' theory of the case that NASL's injuries were not caused by Defendants' allegedly illegal anticompetitive conduct, but by fallout from the indictments and guilty pleas." *Id.* This exhibit falls squarely within the Court's prior rejection of NASL's Rule 401 and 403 arguments, as NASL's attorney writes in the exhibit that "the League has also suffered the exact same damaging effects as a result of Traffic USA's, Hawilla's and Davidson's conduct," and that two NASL member teams "will withdraw from the League because of the League's continuing relationship with Team Holdings and Traffic USA."<br><br>The relevant statements within this letter were written by NASL's attorney, who prefaced his letter with the statement, "I represent the North American Soccer |

10

| Att. # | Ex. # | Description | Relevant Language | Pl.'s Objection | Defendants' Response |
|---|---|---|---|---|---|
| | | | | consented to using the document outside of that proceeding. | League." This is a non-hearsay statement of a party opponent. Fed. R. Evid. 801(d)(2)(D).<br><br>NASL waived its Rule 408 objection by failing to timely assert it within objections provided to the Court within the pre-trial order. *See* ECF No. 464-5 at 154. Moreover, Defendants do not seek to admit this exhibit for any purpose precluded by Rule 408, but instead to show that (1) Traffic was still affiliated with NASL as of October 2016; and (2) the effects of the Traffic scandal lingered far longer than NASL's suspension of Aaron Davidson in May 2015, notwithstanding NASL's claims to the contrary in this litigation. The claims at issue in this exhibit are not between NASL and Defendants, and therefore do not implicate Rule 408, which "only bars the use of compromise evidence to prove the validity or invalidity of the claim that was the subject of the compromise, not some other claim." *Williams v. Regus Mgmt. Grp., LLC*, 2012 WL 1890384, at *3 (S.D.N.Y. May 15, 2012) (citing cases). |

| Att. # | Ex. # | Description | Relevant Language | Pl.'s Objection | Defendants' Response |
|---|---|---|---|---|---|
| 9 | DX-567 | December 2, 2016 email from N. Malone to B. Peterson re "Re: NASL future" attaching Confidential Draft | .0008: NASL draft statement | 401-403: The probative value of a draft press statement about NASL suspending its 2017 season (which did not occur) would be significantly outweighed by the risk of prejudicing, confusing, and misleading the jury.<br><br>602: Defendants are not calling, and have not designated testimony from, a witness who has personal knowledge of this document. | That NASL was on the verge of collapse—as evidenced by its having drafted this press release "announc[ing] that it will suspend its competition in 2017 as part of a detailed restructuring plan"—is relevant to refuting plaintiff's contentions that (a) the NASL (a failing enterprise) was entitled to waivers of U.S. Soccer's sanctioning requirements and (b) the denial of a sanction (as opposed to NASL's own failings) precipitated the league's collapse or caused NASL's asserted damages. Because this exhibit is squarely relevant, there is no unfair prejudice or confusion.<br><br>Moreover, pursuant to the parties' so-ordered stipulation, this exhibit (which was on the Defendants' Exhibit List) "shall not be excluded . . . on authenticity grounds, absent a showing of good cause," and Defendants are "not required to authenticate [this] document using live testimony, video testimony, self-authentication, or any other means of authentication." ECF No. 491 ¶ 2. Plaintiff makes no showing of good cause. Indeed, the document is unambiguous on its face and there is no plausible reason to doubt its authenticity.<br><br>In addition to its use in Defendants' opening demonstrative, Defendants intend to use this document in the course of examining one or more witnesses whom Defendants have reason to believe have knowledge of this exhibit. |

| 10 | DX-673 | April 19, 2017 email from R. Sehgal to B. Watkins re "Re: Call to Nicolas" | .0002: Statement by Bob Watkins, NASL Board of Governors Alternate Governor, NASL Team Owner | 401-403: Non-party Watkins' unfounded and inflammatory statement about NASL being built on "corrupt activities and deceit" fails to state any specific facts and consists solely of a generalized, conclusory expression of negativity toward NASL, which has no probative value and would be inflammatory and prejudicial.<br><br>801-802/805: Hearsay within hearsay as to the recounting of prior conversations with outside investors. | Plaintiff objected to questioning regarding this exhibit in Robert Watkins deposition designations. *See* R. Watkins Tr. 147:9-150:3, ECF No. 479-52 (discussing Dep. Ex. 15, which is DX-673). The Court overruled NASL's objections in its December 26, 2024 order, ECF No. 493 at 3, and thus testimony about this exhibit is admissible.<br><br>This exhibit records NASL's Interim Commissioner attempting to recruit a team to join the league. It is a business record of NASL. 803(6).<br><br>This document, including Mr. Watkins' statement, are highly relevant to the difficulties that NASL faced recruiting expansion teams because of the Traffic scandal, which is a point that NASL and Mr. Sehgal have denied, but which is central to Defendants' causation defense. This exhibit is squarely within the Court's prior Order that "evidence of Traffic's and Davidson's indictments and guilty pleas is also highly probative of Defendants' theory of the case that NASL's injuries were not caused by Defendants' allegedly illegal anticompetitive conduct, but by fallout from the indictments and guilty pleas." ECF No. 451 at 5. Mr. Watkins' comments are neither generalized nor conclusory—nor would that be a basis to excluded them. Mr. Watkins is specific in his references to NASL's lack of audited statements, the Class B ownership structure through which new entry fees were owed to Traffic Sports, and NASL's opaque "ownership structure."<br><br>Mr. Watkins did become a team owner of NASL, and thus a Class A owner of NASL, making his statements non-hearsay for the additional reason that they are statements of a party opponent. The information |

| Att. # | Ex. # | Description | Relevant Language | Pl.'s Objection | Defendants' Response |
|---|---|---|---|---|---|
| | | | | | Mr. Watkins is reacting to in part of this letter, he learned from other NASL team owners, which are also statements of party opponents, as the team owners own and operate the league. *See* DX-733.0011 ("NASL is owned and operated by its member clubs and the club-appointed Board of Governors."). <br><br>This entire conversation is also admissible for the non-hearsay purpose of showing that NASL was on notice that the Traffic scandal was creating a roadblock to NASL's attempt to recruit new teams. |