**LATHAM&WATKINS**LLP                                                                                                     **Proskauer»**

January 22, 2025

<u>**VIA ECF**</u>

The Honorable Hector Gonzalez
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

                Re:    *North American Soccer League, LLC ("NASL") v. United States Soccer Federation, Inc. ("U.S. Soccer"), and Major League Soccer, L.L.C. ("MLS"),* No. 1:17-cv-05495-HG (S.D.N.Y.) – Letter Motion for Leave to File Additional Letter re: Request for Guidance Concerning Dr. Williams' Testimony

Dear Judge Gonzalez:

       Defendants U.S. Soccer and MLS respectfully request leave to submit this brief letter in further support of their request for guidance concerning Dr. Williams' testimony with respect to NASL's claimed Division 1 damages (ECF No. 510) and in response to Plaintiff NASL's letter (ECF No. 512).

       As for timeliness, in suggesting that it is too late for Defendants to now raise this issue, NASL essentially asks the Court to abandon its "continuing duty to exclude inappropriate evidence and testimony." *Guerrero v. Deane*, No. 1:09-cv-1313, 2012 WL 3834907, at *9 (E.D. Va. Sept. 4, 2012). This Court, however, does not have "discretion to abandon [its] gatekeeping function" under Rule 702 and *Daubert. Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 158-59 (1999) (Scalia, J., concurring); *see also NetQuote, Inc. v. Byrd*, No. 07-cv-630, 2008 WL 4572528, at *1 (D. Colo. Oct. 14, 2008) ("The court's duty to admit testimony only if allowed under *Daubert* and the Federal Rules of Evidence . . . is a continuing obligation and requires the court to strike expert testimony that does not meet *Daubert* standards."); *In re: NFL "Sunday Ticket" Antitrust Litig.,* No. ML 15-02668, 2024 WL 3628118, at *11 (C.D. Cal. Aug. 1, 2024) (concluding after jury trial in antitrust case that expert's damage model was based on flawed assumption and vacating jury verdict for plaintiffs). Indeed, "even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Luce v. United States,* 469 U.S. 38, 41–42 (1984). Here, the recent developments at trial confirming that Dr. Williams' Division 1 damages calculations are incorrectly based on terms of the 2009 Agreement that he wrongly assumes remained unchanged in the 2013 Agreement necessitate the Court's exercise of its gatekeeping function. The timing of the discovery of this error is no justification to permit the jury to hear indisputably incorrect and unreliable expert testimony regarding Division 1 damages.

      Regardless, NASL's argument about timeliness is wrong. The Court's October 2024 order stated that "Defendants [we]re free to attack" at trial Dr. Williams' "assumption about what the agreement continued to require." ECF No. 451 at 23. As Defendants prepared to examine Mr. Sehgal and Dr. Williams, they recognized that Mr. Sehgal's and Dr. Williams' interpretation and assumptions were contrary to the plain language of the 2013 Agreement. Defendants then tested that interpretation during their cross of Mr. Sehgal, who acknowledged that the critical definition of "Expansion Team" had been added to the 2013 Agreement, that Schedule A in the 2013 Agreement had changed, and that the teams which Dr. Williams included as the first 10 teams in his Division 1 damages analysis were not "New

Class A Members" under the 2013 Agreement. Jan. 16, 2025 Trial Tr. at 673:4-647:7, 678:3-680:16; DX-0233.0075-.0076. This confirmed that what NASL claims is a "factual dispute" is actually a matter of law. ECF No. 512 at 1. And NASL concedes that Mr. Sehgal "is the only negotiator of the agreement who will have testified on that subject." *Id.* So the time to decide this issue—which only the Court can decide—is now.[1]

As for the merits, NASL has little to say about the plain language of the 2013 Agreement. While NASL makes half-hearted arguments that the 2013 Agreement is ambiguous, it does not and cannot offer any plausible explanation for why that is so. The term "Expansion Team" is defined unambiguously in both the 2009 Agreement and the 2013 Agreement:

| **2009 Operating Agreement (JX-25)** | **2013 Operating Agreement (DX-0233)** |
|---|---|
| The Class B Member may, from time to time, propose to the Finance Committee a plan for the expansion of the League, including, without limitation, the admission of additional Teams (each, an "Expansion Team") and New Class A Members in connection therewith.<br><br>JX-25.041 (Section 5.13). | "Expansion Team" means an additional Team added to the League ***after the date of this Agreement***.<br><br>DX-0233.0009 (Section 1.01) (emphasis added). |

Given both the differences in language and the different placement of the provisions within the two agreements, there can be no question that this reflects an unambiguous and deliberate change, such that the "first ten New Class A Members" are counted after July 25, 2013. *See* DX-0233.0042. NASL offers no contrary explanation. Nor could it, as it makes no sense to argue that this change means that the applicable provisions remained the same.

NASL's argument about elephants and mouseholes also misses the mark. To start, the definition of "Expansion Team" in the 2013 Agreement does not stand alone as one "elephant." Rather, it is accompanied by changes to Schedule A (showing that those teams are not "New Class A Members" even though Dr. Williams assumes they are), DX-0233.0075-.0076, and other new terms in the 2013 Agreement not present in the 2009 Agreement that provide additional protection to Team Holdings. *Compare* JX-25.0060 (Section 13.13(a)), *with* DX-0233.0056-.0057 (Section 13.14(a)(ii)); *compare* JX-25.0060-0061 (Section 13.13), *with* DX-0233.0057 (Section 13.14(d)). Nor is a defined term at the start of a contract a "mousehole." All defined terms are capitalized throughout the 2013 Agreement, and Delaware courts regularly enforce the plain language of such definitions. *See, e.g.*, *Buckeye Partners, L.P. v. GT USA Wilmington, LLC*, 2022 WL 906521, at *11, 15 (Del. Ch. Mar. 29, 2022); *Grace v. Ashbridge LLC*, 2013 WL 6869936, at *5 & n.30 (Del. Ch. Dec. 31, 2013). Expressly defining terms is

---

[1] NASL's alternative request—that Dr. Williams be permitted to disclose yet another downward Division 1 damages estimate, this time in the middle of trial, to account for the plain language of the 2013 Agreement—misses the point. The burden for establishing damages lies with NASL and Dr. Williams, and the factual assumption upon which Dr. Williams based his Division 1 damages claim is fundamentally and indisputably wrong. Dr. Williams has had three chances to get this right. This should be his "red card."

good drafting practice, not some nefarious plan to "bury" changes (as NASL claims without any support). ECF No. 512 at 3.

Finally, NASL's evidence about the "intent of the parties" and later developments, ECF No. 512 at 3–5, is wholly irrelevant because the language of the 2013 Agreement is clear and unambiguous. *Exelon Generation Acquisitions, LLC v. Deere & Co.*, 176 A.3d 1262, 1267 (Del. 2017) ("If a contract is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract, or to create an ambiguity.").[2] The "[c]onstruction (of a contract) is always a matter of law for the Court." *Marx & Co. v. Diners' Club Inc.*, 550 F.2d 505, 509 (2d Cir. 1977) (citation omitted). And this Court's role is to determine "whether the text itself is ambiguous." *Novartis Pharma AG v. Incyte Corp.*, 2024 WL 3608338, at *9 (S.D.N.Y. July 29, 2024). If—and only if—the text is ambiguous, then the jury is called upon to determine the parties' intent. *Id.* at *9-10. It is not ambiguous here. The jury should not be permitted to hear testimony from Dr. Williams on Division 1 damages that is based on a legally erroneous assumption.

Respectfully submitted,

*/s/ Lawrence E. Buterman*
Lawrence E. Buterman
of LATHAM & WATKINS LLP
*Counsel for Defendant*
*United States Soccer Federation, Inc.*

*/s/ Bradley I. Ruskin*
Bradley I. Ruskin
of PROSKAUER ROSE LLP
*Counsel for Defendant*
*Major League Soccer, L.L.C.*

cc: All counsel of record (via ECF)

---

[2] NASL is also wrong that the November 2016 settlement with Traffic is at all relevant. *See* ECF No. 512 at 4–5; *see* DX-0549.0002. By that time, Traffic had pleaded guilty to wire fraud conspiracy, DX-0357.0005, and NASL was a "dying league" where any potential expansion fees were low, DX-0497.0001. Even then, in NASL's contemporaneous settlement with Fath Sports, NASL paid Fath $3.8 million because of its 7.6% ownership interest in Team Holdings. DX-0557.0002.