January 26, 2025

**VIA ECF**

The Honorable Hector Gonzalez
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    *North American Soccer League, LLC ("NASL") v. United States Soccer Federation, Inc. ("U.S. Soccer"), and Major League Soccer, L.L.C. ("MLS"),* No. 1:17-cv-05495-HG (E.D.N.Y.)

Dear Judge Gonzalez:

Defendants U.S. Soccer and MLS ("Defendants") respectfully submit this letter outlining proposed remedies to address various "knock-on effects" arising from Dr. Williams's January 24, 2025, Supplemental Declaration ("January 24, 2025, Supplemental Declaration"). ECF No. 518-1. As the Court is aware, Dr. Williams's six expert reports to-date have been riddled with inaccuracies and legally erroneous assumptions. In an attempt to mitigate the prejudice imposed on Defendants by Dr. Williams's latest revisions to his expert testimony, Defendants respectfully request that the Court: (1) permit Defendants to question Dr. Williams on the fact that he has submitted numerous reports in this case that have contained errors that have necessitated revisions and corrections, including in response to Court orders and exclusions; (2) preclude Dr. Williams from referencing his valuation and benchmark models, as well as indicating generally that he created any other models that corroborate his "primary baseline" damages figures; (3) preclude Plaintiff from cross-examining Defendants' damages expert, Paul Meyer, on any rebuttals to Dr. Williams' now-excluded prior expert opinions; and (4) permit Mr. Meyer to submit a report offering rebuttal testimony, calculations, and adjustments to Dr. Williams' latest Division 1 damages estimates contained within his January 24, 2025, Supplemental Declaration. Given that Defendants received Dr. Williams's latest report on Friday, January 24, with his anticipated cross examination beginning on Tuesday, January 28, Defendants submit that Mr. Meyer should have until Friday, January 31, 2025, to submit his report.

**I.    BACKGROUND**

Dr. Williams submitted his first report on August 15, 2019, with initial Division 1 damages as high as $380,435,000. Dr. Williams revised his calculations on March 11, 2020, because, as he conceded, he failed to (1) include certain factors, including player salaries and attendance, as explanatory variables in his baseline and valuation models; (2) account for the historical relationship between existing team values and future expansion fees; (3) deduct amounts owed to NASL Team Holdings; and (4) deduct certain league and interest costs, among other things. Williams Rebuttal Rep. ¶ 152. Then, despite already having had to correct his first report, Dr. Williams was later forced to again revise his analysis when new errors were discovered. Williams Suppl. Rep. ¶ 12. Specifically, Dr. Williams improperly relied on favorable *ex post* data, *i.e.*, data after the Division 1 and Division 2 denials, all while ignoring unfavorable *ex post* data and despite claiming to have performed an *ex ante* valuation of NASL. *Id.*



On June 12, 2024, the Court ordered Dr. Williams to revise each of his initial three reports because Dr. Williams committed two key errors. ECF No. 399. First, he failed to "assess and subtract the actual value of NASL's expansion fees in the real world after it was denied a D1 sanction in 2016." *Id.* at 24-25. The Court found Dr. Williams's assumption that NASL's actual world value was zero following the denial of its Division 1 sanction application to "make[] little sense," given that NASL continued to operate as a Division 2-sanctioned league through September 2017. *Id.* at 24; *see also id.* ("[T]here is no reason to think that [NASL] couldn't have collected D2 expansion fees even if it was denied a D1 sanction."). Second, the Court found that Dr. Williams's failure to account for NASL's agreement with NASL Team Holdings was a "major oversight." *Id.* at 25. The Court rejected as "too speculative" Dr. Williams's attempt to account for the Team Holdings agreement by determining "but-for settlement terms." *Id.* at 25-26. Exercising "its role as a gatekeeper," the Court ordered Dr. Williams "to discount his damages forecast to reflect the terms of the Team Holdings contract as it existed in March 2016." *Id.* at 27.

Thereafter, Dr. Williams submitted a Supplemental Declaration on July 2, 2024 and purported to address the Court's concerns. However, after *another* round of *Daubert* briefing, the Court found that Dr. Williams's revisions *again* failed to pass muster. Indeed, the Court found that Dr. Williams failed to follow the Court's Order that he "assess and subtract the actual value of NASL's expansion fees in the real world after it was denied a D1 sanction in 2016 . . . from his estimate of the value of NASL's D1 expansion fees in the but-for world." ECF No. 451 at 25 (quoting ECF No. 399 at 25). Instead, Dr. Williams only subtracted the value of a single Division 2 season in 2017, despite assuming, inconsistently, that NASL would have continued to attract Division 2 expansion fees through 2025. *Id.* at 25-26. The Court gave Dr. Williams another chance, and he submitted yet another Supplemental Declaration on November 12, 2024.

As the Court found on January 22, 2025, the uncontroverted trial testimony of NASL's Rishi Sehgal and the plain, unambiguous language of NASL's 2013 Second Amended & Restated LLC Agreement (DX-233), confirmed that Dr. Williams unreliably and incorrectly assumed that the obligation to pay NASL Team Holdings (and its majority member Traffic Sports USA) a flat fee of $450,000 per team plus 80% of any remaining expansion fees applied to the first ten (10) teams to join the NASL after the date of the December 2009 Amended & Restated LLC Agreement. *See* Trial Tr. Jan. 22, 2025, at 1489-1525. At Plaintiff's urging, the Court permitted Dr. Williams to revise his analysis yet again. On January 24, 2025, Dr. Williams revised his Division 1 damages estimate on January 24, 2025, dropping them from $172 million to $48.4 million. ECF No. 518-1, at 3. In that filing, Dr. Williams maintained in the alternative that his prior Division 1 damages figure of $172 million was reasonable. *Id.* at 7. The Court exercised its discretion under *Daubert* and struck that opinion, though is permitting Dr. Williams to present his new $48.4 million Division 1 damages figure.

Defendants submit that even if Dr. Williams's latest attempt to estimate NASL's alleged Division 1 damages were defensible (it is not), Dr. Williams's "'dance of the seven veils' approach" to expert testimony justifies excluding his Division 1 damages testimony altogether. *See Lava Trading, Inc. v. Hartford Fire Ins. Co.*, 2005 WL 4684238, at *21 (S.D.N.Y. Apr. 11, 2005) (concluding damages expert's methodology "[did] not meet minimum standards for the admissibility of his opinions about lost revenues under the Daubert precedent" because his approach was, among other things, "demonstrably unreliable" and concluding the damages expert "should be precluded from testifying to those opinions"). Dr. Williams is well-beyond even the "second bite at the apple" courts regularly disallow. *See On Track*



*Innovations, Ltd. v. T-Mobile USA, Inc.*, 2015 WL 14072083, at *5 (S.D.N.Y. July 24, 2015).  Since the outset of this case, Dr. Williams and Plaintiff "have had notice of the exacting standards of reliability such evidence must meet," *Weisgram v. Marley Co.*, 528 U.S. 440, 455-56 (2000), but have repeatedly disregarded and failed to meet these standards in a transparent effort to inflate NASL's claimed damages at every turn.  Defendants submit that Dr. Williams's analyses do not meet the requirements of Rule 702, particularly in light of the 2023 amendments.

In light of the Court's ruling permitting Dr. Williams to present his $48.4 million Division 1 damages claim to the jury, Defendants request that the Court impose the following guidelines intended to mitigate unfair prejudice Defendants may suffer, and confusion the jury may experience, by Dr. Williams's new anticipated testimony.

## II.     REMEDY

Defendants respectfully request the following:

- Permission to question Dr. Williams on the fact that he has submitted numerous reports in this case that have contained errors that have necessitated several rounds of revisions and corrections, including corrections and exclusions ordered by the Court.  Defendants should be permitted to cross-examine Dr. Williams as to his history of errors and the substantial impact that these errors had on his calculations.  Relatedly, Dr. Williams should not be permitted to argue that any of the revisions or corrections he was required to make to previous reports constitute or represent an effort to be "conservative," as Defendants are not able to use his various prior reports during cross-examination without exposing the jury to those previously submitted erroneous figures.

- Precluding Dr. Williams from offering opinions regarding his models other than his "baseline" models for either his Division 1 or Division 2 damages claims.  While Plaintiff stated in Court that it only intends to present Dr. Williams's newly-revised baseline model for Division 1 damages, Plaintiff has not indicated its intentions with respect to Dr. Williams's Division 2 models.  In the event the Court permits Dr. Williams to reference his alternative models for Division 2 damages or even indicate broadly that his other models corroborate the accuracy of his baseline calculations, Defendants should be permitted to elicit testimony from Dr. Williams that he has no such corroboration for his Division 1 calculations.  Relatedly, Dr. Williams should be explicitly prohibited from presenting any Division 1 damages figure other than the $48.4 million figure that is contained in his January 24, 2025 Supplemental Declaration.  Allowing Dr. Williams to present any alternative number of any kind for Division 1 damages, regardless of how Dr. Williams arrives at that number, would significantly prejudice Defendants.

- Preclusion of any examination by Plaintiffs of Defendants' damages expert, Mr. Meyer, regarding Mr. Meyer's prior rebuttal calculations and adjustments to any of Dr. Williams's prior opinions regarding Division 1 damages, since those prior Dr. Williams opinions will not be presented to the jury.

//

//



- The opportunity for Mr. Meyer to submit a report, on January 31, 2025, offering rebuttal testimony, calculations, and adjustments in light of Dr. Williams's latest Division 1 damages estimate of $48.4 million as set forth in his January 24, 2025, Supplemental Declaration.

Respectfully submitted,

*/s/ Lawrence E. Buterman*                 */s/ Bradley I. Ruskin*
Lawrence E. Buterman                     Bradley I. Ruskin
of LATHAM & WATKINS LLP           of PROSKAUER ROSE LLP
*Counsel for Defendant*                     *Counsel for Defendant*
*United States Soccer Federation, Inc.*      *Major League Soccer, L.L.C.*

cc: All counsel of record (via ECF)