**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

---

NORTH AMERICAN SOCCER LEAGUE, LLC,

               Plaintiff,

v.

UNITED STATES SOCCER FEDERATION,
INC. and MAJOR LEAGUE SOCCER, L.L.C.,

               Defendants.

---

Case No.: 1:17-cv-05495-HG

**<u>FINAL JURY INSTRUCTIONS</u>**

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................... 1

**Instruction No. 1: Role of the Jury**...................................................... 2

**Instruction No. 2: Parties Equal**.......................................................... 3

**Instruction No. 3: Two or More Parties – Different Legal Rights**........................................... 4

**Instruction No. 4: The Evidence**.......................................................... 5

**Instruction No. 5: Direct and Circumstantial Evidence**......................... 6

**Instruction No. 6: Inferences**.............................................................. 7

**Instruction No. 7: Credibility of Witnesses**........................................ 8

**Instruction No. 8: Video Testimony**.................................................... 10

**Instruction No. 9: Opinion Testimony**................................................. 11

**Instruction No. 10: Inconsistent Statements**....................................... 12

**Instruction No. 11: Uncalled Witnesses**.............................................. 13

**Instruction No. 12: Fifth Amendment Testimony**................................. 14

**Instruction No. 13: Spoliation**............................................................. 15

**Instruction No. 14: Demonstrative Exhibits**........................................ 16

**Instruction No. 15: Preponderance of the Evidence**............................ 17

**Instruction No. 16: The Sherman Act**................................................. 19

**Instruction No. 17: Elements of the Unreasonable Restraint of Trade Count**..................... 21

**Instruction No. 18: Corporations**........................................................ 22

**Instruction No. 19: First Element: Existence of a Contract, Combination, or Conspiracy**23

**Instruction No. 20: Decisions by Membership Organizations**............... 25

**Instruction No. 21: Rule of Reason**..................................................... 27

**Instruction No. 22: Rule of Reason: Step One – Substantial Harm to Competition in the Relevant Market**........................................................................................... 28

**Instruction No. 23: Relevant Product Market**...................................... 29

**Instruction No. 24: Relevant Geographic Market**................................ 31

**Instruction No. 25: Proof of Competitive Harm**................................... 32

**Instruction No. 26: Rule of Reason: Step Two – Evidence of Competitive Benefits**........... 34

**Instruction No. 27: Rule of Reason: Step Three – Less Restrictive Alternatives**............... 35

**Instruction No. 28: Unreasonable Restraint of Trade – Balancing Anticompetitive Harms and Procompetitive Benefits**............................................................................. 36

**Instruction No. 29: Injury and Causation**............................................ 37

**Instruction No. 30: Sherman Act Section 2**......................................... 39

**Instruction No. 31: Elements of the Conspiracy to Monopolize Count** ................................. 40

**Instruction No. 32: First Element: Existence of a Conspiracy** ............................... 42

**Instruction No. 33: Second Element: Specific Intent to Monopolize** ................................. 44

**Instruction No. 34: Third Element: Overt Acts in Furtherance of the Conspiracy** ........... 46

**Instruction No. 35: Fourth Element: Injury and Causation** ................................... 47

**Instruction No. 36: Elements of the Monopolization Count** .................................... 48

**Instruction No. 37: First Element: Relevant Market** ...................................... 49

**Instruction No. 38: Second Element: Monopoly Power** .................................... 50

**Instruction No. 39: Existence of Monopoly Power—Direct Proof** ........................................ 51

**Instruction No. 40: Existence of Monopoly Power—Indirect Proof** .................................... 52

**Instruction No. 41: Third Element: Anticompetitive Conduct** ............................................. 53

**Instruction No. 42: Fourth Element: Injury and Causation** ................................................. 55

**Instruction No. 43: Elements of the Attempted Monopolization Count** ............................. 56

**Instruction No. 44: First Element: Anticompetitive Conduct** ............................................. 57

**Instruction No. 45: Second Element: Specific Intent** ....................................... 58

**Instruction No. 46: Third Element: Dangerous Probability of Success** .............................. 59

**Instruction No. 47: Fourth Element: Injury and Causation** ............................................. 60

**Instruction No. 48: Antitrust Damages: Introduction and Purpose** .................................... 61

**Instruction No. 49: Basis for Calculating Damages** ....................................... 62

**Instruction No. 50: Causation and Disaggregation** .................................................. 63

**Instruction No. 51: Lost Profits** ....................................................... 64

**Instruction No. 52: Mitigation** .............................................................. 65

**Instruction No. 53: General Instructions for Deliberations** ............................................. 66

**Instruction No. 54: Use of Notes** ......................................................... 67

**Instruction No. 55: Communications with the Court** ........................................... 68

**INTRODUCTION**

Now that the evidence has been presented and the attorneys for Plaintiff and Defendants have concluded their closing arguments, it is my responsibility to instruct you as to the law that governs this case.

My instructions will be in three parts:

- **<u>First</u>**, I will give you instructions regarding the general rules that define and govern the duties of a jury in a civil case such as this;

- **<u>Second</u>**, I will instruct you as to the legal elements of Plaintiff's claims; and

- **<u>Third</u>**, I will instruct you as to some general rules regarding your deliberations following these instructions.

## Instruction No. 1:  Role of the Jury

To begin with, it is your duty to find the facts from all the evidence in this case.  You are the sole judges of the facts, and it is therefore for you and you alone to pass upon the weight of the evidence, to resolve such conflicts as may have appeared in the evidence, and to draw such inferences as you deem to be reasonable and warranted from the evidence.

With respect to any question concerning the facts, it is your recollection of the evidence that controls.  I express no view on the facts or on whether Plaintiff has met its burden of proving the elements of its claims against Defendants.  You should not draw any inference or conclusion in that regard from anything I may have said or done during the trial.  You must decide this case solely on the evidence and the law.

You must, however, apply the law to the facts as you find them in accordance with my instructions.  While the lawyers may have commented on some of these rules, you must be guided only by what I instruct you about them.  You must follow all the rules as I explain them to you.  You may not follow some and ignore others; even if you disagree or don't understand the reasons for some of the rules, you are bound to follow them.

## Instruction No. 2:  Parties Equal

In this case, all the parties are corporate entities as opposed to natural persons.  All parties are equal before the law.  An entity is entitled to the same fair consideration that you would give any individual person.

## Instruction No. 3:  Two or More Parties – Different Legal Rights

Because there are two separate Defendants in this case, you should decide the case as to each Defendant separately.  Each Defendant is entitled to have its case determined from its own conduct and from the evidence that may be applicable to it.

Unless otherwise stated, these instructions apply to all parties.

## Instruction No. 4:  The Evidence

I wish to instruct you now as to what is evidence and how you should consider it.  The evidence upon which you are to decide what the facts are comes in several forms:

- Sworn testimony of witnesses, both on direct and cross-examination, and regardless of who called them;

- Exhibits that have been received by me in evidence;

- Facts to which all the lawyers have agreed or stipulated.  A stipulation is an agreement among the parties that a certain fact is true or that a witness would have given certain testimony.

Certain things are not evidence and are to be disregarded by you in deciding what the facts are.  The following is not evidence:

- Arguments or statements by lawyers;

- Questions put to the witnesses to which there is no answer;

- Objections to such questions or to offered exhibits.  In this regard, attorneys have a duty to their clients to object when they believe evidence should not be received.  You should not be influenced by the objection or by my ruling on it.  If the objection was sustained, ignore the question.  If the objection was overruled, treat the answer like any other answer;

- Testimony that has been excluded, stricken, or that you have been instructed to disregard is not evidence, and you must disregard it;

- Obviously, anything you may have seen or heard outside the courtroom is not evidence.

## Instruction No. 5:  Direct and Circumstantial Evidence

While you should consider only the evidence, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience.  In considering the evidence you may make deductions and reach conclusions which reason and common sense lead you to make; and you should not be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of one who asserts actual knowledge of a fact, such as an eyewitness.  "Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove another fact.  The law makes no distinction between the weight you may give to either direct or circumstantial evidence.

Let me give you an example of the difference between direct evidence and circumstantial evidence.  Suppose that in a trial one of the parties is trying to prove that it was raining on a certain morning.  A witness testifies that on that morning she walked to the subway and as she walked she saw rain falling, she felt it striking her face, and she heard it splashing on the sidewalk.  That testimony of the witness's perceptions would be direct evidence that it rained on that morning.

Suppose, on the other hand, the witness testified that it was sunny as she walked to the subway, that she went into the subway and got on the train and that while she was on the train, she saw passengers come in at one station after another carrying wet umbrellas and wearing wet clothes and raincoats.  That testimony constitutes direct evidence of what the witness observed.  And, because an inference that it was raining in the area would flow naturally, reasonably, and logically from that direct evidence, the witness's testimony would constitute circumstantial evidence that it began to rain in the area after the witness got on the subway.

**Instruction No. 6: Inferences**

During the trial, and as I have given you these instructions, you have heard the use of the term "inference." For instance, in their closing arguments, the attorneys have asked you to infer, based on your reason, experience, and common sense, from one or more established facts, the existence of some other fact. I have instructed you on circumstantial evidence and that it involves inferring a fact based on other facts, your reason, and common sense.

What is an "inference"? What does it mean to "infer" something? An inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists based on another fact that you know exists.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. Plaintiff asks you to draw one set of inferences, while Defendants ask you to draw another. It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion that you, the jury, are permitted but not required to draw from the facts that have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense.

Therefore, while you are considering the evidence presented to you, you may draw, from the facts that you find to be proven, such reasonable inferences as would be justified in light of your experience.

In deciding the factual issues presented in this case, the test is not which side brings the greater number of witnesses, or presents the greater quantity of evidence, but which witnesses and evidence appeal to your minds as being most accurate and trustworthy.

## Instruction No. 7:  Credibility of Witnesses

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

- The opportunity and ability of the witness to see or hear or know the things testified to;

- The witness's memory;

- The witness's manner while testifying;

- The witness's interest in the outcome of the case, if any;

- The witness's demonstrated bias or prejudice, if any;

- Whether other evidence contradicted the witness's testimony;

- The reasonableness of the witness's testimony in light of all the evidence; and

- Any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said.  Sometimes different witnesses will give different versions of what happened.  People often forget things or make mistakes in what they remember.  Also, two people may see the same event, but remember it differently.  You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.  On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

Your determination of the issue of credibility should depend on the impression that a witness makes upon you as to whether or not he or she is telling you the truth or giving you an accurate version of what occurred.

In other words, what you are trying to do, in plain English, is to size the person up, just as you would do in any important matter in your personal or professional life when you are trying to determine whether or not a person is being truthful, candid, straightforward, or otherwise reliable.

## Instruction No. 8:  Video Testimony

During the trial, certain testimony was presented to you by video.  You should evaluate and give this testimony the same consideration you would give it had the witness appeared and testified here in court.  I also instruct you that the portions of the video testimony that were played for you were edited.  That is for your convenience.  You should evaluate the testimony as you saw it and give no weight to the fact that the videos were edited.

## Instruction No. 9:  Opinion Testimony

During the trial, you have heard witnesses give opinions about matters requiring special knowledge or skill.  You should judge this testimony in the same way that you judge the testimony of any other witness.  The fact that such witness has given an opinion does not mean that you are required to accept it.  No opinion is binding on your determinations, and you may reach opposite conclusions based on other evidence in the case.  If you decide that a witness's opinion is not based on sufficient knowledge, or that the reasons given in support of the opinion are not sound, or that other evidence outweighs the opinion, you may disregard the opinion altogether.  Give the opinion testimony whatever weight you think it deserves, considering the reasons given for the opinion, the witness's qualifications, and all the other evidence in the case.

## Instruction No. 10:  Inconsistent Statements

You have heard evidence that several witnesses made one or more statements on earlier occasions that counsel argues are inconsistent with the witness's trial testimony.  Evidence of a prior inconsistent statement is not to be considered by you as affirmative evidence bearing on whether Plaintiff has proven the existence of liability in this case.  Evidence of the prior inconsistent statement was placed before you for the more limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted his or herself.  If you find that the witness made an earlier statement that conflicts with his or her testimony, you may consider that fact in deciding how much of his or her trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so, how much, if any, weight to be given to the inconsistent statement in determining whether to believe all or part of the witness's testimony.

## Instruction No. 11:  Uncalled Witnesses

There are several persons whose names you have heard during the trial, but who did not appear here to testify.  I instruct you that each party had an equal opportunity, or lack of opportunity, to call any of these witnesses.  Therefore, you should not draw any inferences or reach any conclusions as to what they would have testified to had they been called.  Their absence should not affect your judgment in any way.

## Instruction No. 12:  Fifth Amendment Testimony

You have seen videotaped testimony in which Aaron Davidson declined to answer certain questions on the grounds of his Fifth Amendment privilege against self-incrimination.  As I instructed you during the trial, a witness has a right under the Fifth Amendment to the Constitution to decline to answer questions on the ground that doing so may tend to incriminate him.

However, because this is a civil case, you may, but are not required to, infer from such refusal that the answer would have been adverse to the witness's interest and the interest of any parties in the case who are closely associated with the witness.  Whether the witness is sufficiently associated with a party to justify an adverse inference depends upon all the facts and circumstances of the case.  For example, a witness who is a past or present employee, officer, or agent of a party may be, but is not necessarily, sufficiently associated with that party to justify an adverse inference.

You should consider any inference you may or may not choose to draw from a refusal to testify on Fifth Amendment grounds together with all the other evidence in the case.

<u>**Instruction No. 13: Spoliation**</u>

You have heard testimony about certain of Aaron Davidson's emails that Plaintiff did not produce because the documents were deleted and are not recoverable. You may consider the evidence presented by the parties regarding the deletion of these emails, along with all the other evidence in this case, in making your decision. You may give the evidence regarding the deletion of the emails whatever force or effect that you think is appropriate under all the facts and circumstances.

**Instruction No. 14:  Demonstrative Exhibits**

Certain demonstrative exhibits have been shown to you.  These exhibits were used for convenience and to help explain the facts of the case.  They are not themselves evidence or proof of any facts.

**Instruction No. 15: Preponderance of the Evidence**

As a general rule, with exceptions that I'll describe in a moment, in a civil action such as this, Plaintiff has the burden of proving each of the essential elements of its claims by a preponderance of the evidence. If the proof fails to establish any essential element of Plaintiff's claim by a preponderance of the evidence, you should find for Defendants.

To establish a claim "by a preponderance of the evidence" means to prove that something is more likely so than not so. In other words, a preponderance of the evidence means such evidence as, when considered and compared with the evidence opposed to it, produces in your minds the belief that what is sought to be proved is, more likely than not, true.

A preponderance of the evidence means the greater weight of the evidence. That does not mean the greater number of witnesses or exhibits, or the greater length of the time taken by either side in presenting its case. This determination is based on the quality and persuasiveness of the evidence—the weight and effect it has on your minds.

In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

If you find that the credible evidence on a given issue is in balance or evenly divided between the parties, that it is equally probable that one side is right as it is that the other side is right, or that the evidence produced by Plaintiff is outweighed by evidence against its claim, then you must decide that issue against Plaintiff. That is because Plaintiff must prove more than simply equality of evidence—it must prove the element at issue by a preponderance of the evidence. On the other hand, Plaintiff needs to prove no more than a preponderance. So long as you find that the scales tip, however slightly, in favor of Plaintiff—that what it claims is more

likely true than not true—then the element will have been proved by a preponderance of the evidence.

Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard in a criminal trial. That requirement does not apply to a civil case such as this, and you should put it out of your mind.

<u>**Instruction No. 16: The Sherman Act**</u>

I'm now going to tell you about the law that you will have to apply to the facts as you find them. These instructions are meant to help you evaluate the evidence that you have heard during trial.

The claims in this case are being brought under the Sherman Act. The purpose of the Sherman Act is to preserve free and unfettered competition in the marketplace. The Sherman Act rests on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress.

The Sherman Act protects competition, not competitors. Plaintiff challenges Defendants' conduct under Sections 1 and 2 of the Sherman Act. Section 1 of the Sherman Act prohibits agreements, combinations and conspiracies that unreasonably restrain trade. Section 2 of the Sherman Act prohibits the willful acquisition or maintenance of a monopoly in any business, unlawful attempts to monopolize, and unlawful conspiracies to monopolize.

Plaintiff in this action alleges four claims:

1. **<u>First</u>**, Plaintiff alleges that Defendants violated Section 1 of the Sherman Act by participating in a conspiracy to unreasonably restrain trade by denying Plaintiff's application for a Division 1 sanction for the 2016 season, and in a conspiracy with United Soccer League, or "USL," to unreasonably restrain trade by denying Plaintiff's application for a Division 2 sanction for the 2018 season.

2. **<u>Second</u>**, Plaintiff alleges that Defendants violated Section 2 of the Sherman Act by conspiring with each other to monopolize the alleged relevant market for team membership in a Division 1 sanctioned league in the United States and Canada, and that Defendants conspired with each other and with United Soccer League to

monopolize the alleged relevant market for team membership in a Division 2 sanctioned league in the United States and Canada.

3. **<u>Third</u>**, Plaintiff alleges that MLS violated Section 2 of the Sherman Act by engaging in unlawful monopolization.  More specifically, Plaintiff claims that it was injured by MLS's monopolization of the alleged market for team membership in a Division 1 sanctioned league in the United States and Canada.

4. **<u>Fourth</u>**, Plaintiff alleges that MLS violated Section 2 of the Sherman Act and injured Plaintiff by attempting to monopolize the alleged relevant market to obtain team membership in a Division 1 sanctioned league in the United States and Canada.

# FIRST COUNT—UNREASONABLE RESTRAINT OF TRADE

## Instruction No. 17:  Elements of the Unreasonable Restraint of Trade Count

Plaintiff's first claim challenges Defendants' conduct under Section 1 of the Sherman Act. Section 1 prohibits contracts, combinations, and conspiracies that unreasonably restrain trade. To establish a violation of Section 1 of the Sherman Act, Plaintiff must prove the following three elements:

The **first** element of a Section 1 conspiracy claim is the existence of a contract, combination, or conspiracy between or among at least two separate entities.

The **second** element is that the contract, combination, or conspiracy unreasonably restrains trade.

The **third** and final element is that Plaintiff suffered an injury to its business or property.

You will have to decide whether Plaintiff has proved each of these elements. If you find that Plaintiff has proven each of these elements by a preponderance of the evidence, then you must find for Plaintiff on this claim.  If any of these three elements has not been proven, you should find for the Defendants on this claim.  I will now further explain each of the three elements.

Before doing that, however, let me first instruct you that Plaintiff and Defendants are corporate entities and not natural persons.  Under the law, a corporate entity is considered a person, but it acts only through its agents.  An entity's agents include its directors, officers, employees, or others acting on its behalf.  An entity is not capable under the law of conspiring with its own agents.  Through its agents, however, a corporate entity is capable of conspiring with other entities.

## Instruction No. 18:  Corporations

A corporate entity is legally bound by the acts and statements of its agents or employees done or made within the scope of the agent's employment.

The fact that a corporate entity has instructed its agents not to violate the antitrust laws does not excuse the corporate entity from responsibility for the unlawful acts of its agents done within the scope of their employment.

A corporate entity is entitled to the same fair trial as a natural person.  The acts of a corporate entity are to be judged by the same standards as the acts of a person, and you may hold a corporate entity liable only if such liability is established by a preponderance of the evidence. As I said earlier, all persons, including corporate entities, are equal before the law.

**Instruction No. 19:  First Element:  Existence of a Contract, Combination, or Conspiracy**

I will now instruct you on the first element of Plaintiff's Section 1 claim:  the requirement that Plaintiff prove that Defendants entered into a conspiracy.  Plaintiff alleges that Defendants participated in a conspiracy to unreasonably restrain trade by denying Plaintiff's application for a Division 1 sanction for the 2016 season and in a conspiracy with United Soccer League to unreasonably restrain trade by denying Plaintiff's application for a Division 2 sanction for the 2018 season.

To prove the first element, Plaintiff must prove both of the following things by a preponderance of the evidence:

(1) that the alleged conspiracy existed; and

(2) that each Defendant knowingly became a member of that conspiracy.  To act knowingly means to participate deliberately, and not because of mistake or accident or other innocent reason.

The basis of a conspiracy, as applicable to this case, is an agreement or understanding between two or more entities.  An agreement or understanding between two or more entities exists when they share a commitment to a common scheme.  To establish the existence of a conspiracy, the evidence need not show that its members entered into any formal or written agreement.  The agreement itself may have been entirely unspoken.  A person or entity can become a member of a conspiracy without full knowledge of all of its details, the identity of all of its members, the scope of the conspiracy, or the parts such members played in the conspiracy.  A conspiracy can exist even if the members of the conspiracy did not meet together at the same time or in the same place.  They do not need to have directly said to each other what their object or purpose was, or stated the details or the means by which they would accomplish their purpose.

It is not essential that all entities acted exactly alike, nor is it necessary that they all possessed the same motive for entering the agreement. It is also not necessary that all of the means or methods claimed by Plaintiff were agreed upon to carry out the alleged conspiracy, nor that all of the means or methods that were agreed upon were actually used or put into operation, nor that all the entities alleged to be members of the conspiracy were actually members. It is the agreement or understanding to restrain trade in the way alleged by Plaintiff that constitutes a conspiracy. Therefore, you may find a conspiracy existed regardless of whether it succeeded or failed.

Plaintiff may prove the existence of the alleged conspiracy through direct evidence, circumstantial evidence, or both.

Direct evidence of an agreement may not be available, and therefore a conspiracy also may be shown through circumstantial evidence. You may infer the existence of a conspiracy from the circumstances, including what you find the alleged members of the conspiracy actually did and the words they used. Mere similarity of conduct among various entities, however, or the fact that they may have associated with one another and may have met or assembled together, does not by itself establish the existence of a conspiracy. If they acted similarly but independently of one another, without any agreement among them, then there would not be a conspiracy.

In determining whether an agreement or understanding between two or more entities to restrain trade has been proved by Plaintiff, you must view the evidence as a whole and not piecemeal.

<u>**Instruction No. 20: Decisions by Membership Organizations**</u>

The actions challenged in this case involve decisions of USSF after votes of certain of its Board members. The fact, however, that USSF is a membership organization and that its Board has voting members, and that USSF takes actions based on the outcome of the votes of its Board is not, in and of itself, concerted action. In other words, not every action taken by an organization with voting members like USSF is concerted action. Instead, because Plaintiff alleges that Defendants entered into a conspiracy to deny Plaintiff a Division 1 sanction for the 2016 season and a Division 2 sanction for the 2018 season, Plaintiff must present evidence that at least some Board members, in their individual capacities, consciously committed themselves to a common scheme designed to achieve an unlawful objective. In other words, the fact that USSF is a membership organization is not enough to establish that USSF conspired with its members.

That is because Section 1 of the Sherman Act concerns agreements between separate entities. If separate persons or corporations are a single entity for a particular activity, they cannot conspire with each other with respect to that activity.

A similar principle applies in the context of a membership organization such as USSF. Both Defendant MLS and Plaintiff NASL are members of USSF and both had representatives on USSF's Board of Directors in 2017. The fact that multiple people were involved in USSF's sanctioning decisions, including multiple officers, employees, and members of the Board of Directors is not itself enough to establish that USSF acted pursuant to an agreement, rather than unilaterally. For that reason, Plaintiff must show that USSF conspired with at least one other party acting in that other party's individual capacity to deny Plaintiff's sanction applications.

In this case, Plaintiff contends that MLS was another party that USSF conspired with. To establish an unlawful conspiracy, Plaintiff must establish that USSF reached an agreement with

MLS, acting in its individual capacity, to illegally deny Plaintiff a Division 1 sanction for the 2016 season and/or a Division 2 sanction for the 2018 season.

Likewise, the antitrust laws do not prevent a representative member of a membership organization from expressing its views based on its own business interests. As such, the fact that a representative member of USSF's Board or a Board Committee expressed views based on the business interests of the entity that person represents does not, by itself, establish an agreement between USSF and that person for purposes of Section 1.

## Instruction No. 21:  Rule of Reason

Under Section 1 of the Sherman Act, a restraint of trade is illegal only if it is found to be unreasonable.  You must determine, therefore, whether the restraint challenged here, namely denying Plaintiff a Division 1 or Division 2 sanction, was unreasonable.  In making this determination, you must apply what is called the "rule of reason."  The analysis under the rule of reason proceeds in the following way:

First, you must determine whether Plaintiff has proven that the challenged restraint resulted in a substantial harm to competition in a relevant product and geographic market.

Next, if you find that Plaintiff has met this burden, the burden then shifts to Defendants to come forward with evidence that the challenged restraint produces countervailing competitive benefits.

If Defendants make that showing, then the burden shifts back to Plaintiff to rebut those claimed procompetitive benefits or rationales or to show that any procompetitive benefits or rationales could have been reasonably achieved in a substantially less restrictive manner.  The challenged restraint is illegal under Section 1 of the Sherman Act if you find that these countervailing procompetitive benefits could reasonably have been achieved in a substantially less restrictive manner.  If you find that Plaintiff has not proven that these same countervailing procompetitive benefits could reasonably have been achieved in a substantially less restrictive manner, then you must balance the competitive harm against the competitive benefits of the restraint.  The challenged restraint is illegal under Section 1 of the Sherman Act only if you find the anticompetitive harm outweighs the procompetitive benefits from the restraint.

I will now review each step of the rule of reason analysis in more detail.

**Instruction No. 22:  Rule of Reason:  Step One – Substantial Harm to Competition in the Relevant Market**

To prove that the challenged restraint is unreasonable, Plaintiff must demonstrate at the first step of the rule of reason that the restraint has resulted in a substantial harm to competition. Although it may be relevant to the inquiry, harm that occurs merely to the individual business of Plaintiff is not sufficient, by itself, to demonstrate harm to competition generally.  That is, harm to a single competitor or group of competitors does not necessarily mean that there has been harm to competition.

Furthermore, Plaintiff must show that the harm to competition occurred in an identified market, known as a relevant market.  There are two aspects to a relevant market.  The first aspect is known as the relevant product market.  The second aspect is known as the relevant geographic market. It is Plaintiff's burden to prove the existence of a relevant product and geographic market.

## Instruction No. 23: Relevant Product Market

The first step in determining whether an agreement has an anticompetitive effect is to define a relevant antitrust market. Like I just said, the relevant market has both a product and geographic dimension.

The parties disagree over what constitutes the relevant product market. More specifically, Plaintiff contends that Defendants' conduct had anticompetitive effects in four separate markets: (i) the market for Division 1 sanctions; (ii) the market for Division 2 sanctions; (iii) the market for team membership in Division 1 leagues; and (iv) the market for team membership in Division 2 leagues. Defendants deny that these are relevant antitrust markets. USSF contends that the two sanctioning markets alleged by Plaintiff are not markets where things are bought and sold at all, but designations or labels conferred by USSF pursuant to its authority as the sport's governing body. Defendants also contend that the Plaintiff's Division 1 and Division 2 team membership markets do not include all reasonable alternatives, such as team membership in Division 3 leagues, leagues in other sports, or soccer leagues or other sports leagues in other regions of the world.

The basic idea of a product market is that the products within it are reasonable substitutes for each other from a buyer's point of view. This does not mean that products have to be identical to be in the same product market. It means that, as a matter of practical fact and the actual behavior of buyers, the products are reasonable substitutes for the buyer's needs.

One way you may be able to tell if products are reasonable substitutes—and therefore in the same product market—is by considering whether the changes in the price of one product have fairly direct and noticeable effects on the prices or sales of the other products. If so, the products are in the same market.

You may also consider how people in the industry and the public at large view the products; whether the products have the same or similar characteristics or uses; whether the products have similar prices; whether the products are sold to similar customers; and whether they are distributed and sold by the same kinds of distributors or dealers.

In sum, to determine the relevant product market, you must decide which products compete with each other. This is a practical determination. Products do not have to be identical to be in the same relevant product market, but they must be sufficiently similar in the respects I have just mentioned to compete meaningfully with each other.

The definition of the relevant product market is very important. If you find that the relevant product market is the broader market suggested by Defendants, it will be difficult for you to find that Defendants have unreasonably restrained competition in that broader market.

It is for you to decide whether the markets Plaintiff has alleged are relevant antitrust markets. Your decision as to whether Plaintiff has proven the existence of one or more relevant antitrust product markets must be unanimous as to at least one such market. If you conclude that Plaintiff's alleged markets are not relevant antitrust markets, you should find in favor of Defendants. You should *not* go on to determine whether the alleged conduct has had an anticompetitive effect in some other market.

## Instruction No. 24: Relevant Geographic Market

The parties also disagree over what constitutes the relevant geographic market. More specifically, Plaintiff claims that the geographic market is the United States and Canada, and Defendants claim that the geographic market is worldwide.

The geographic market is the area in which the products compete. This area need not be of any particular size. It may, depending on the facts, be local, regional, national, or international.

In determining the geographic market, you may consider if changes in prices at one geographic location have fairly direct or meaningful effects on prices or sales at other locations. You may consider if people in the industry and the public at large view sellers in different geographic locations as being in competition with each other. You may also consider how readily a seller can shift from selling in one geographic location to selling in another. In addition, you may consider where purchasers, as a practical matter, can buy the product—that is, whether buyers residing in one location buy from the same sources as buyers residing in another location, or instead find it more practical or convenient to buy from local sources rather than more distant sources. In this regard, you may consider whether an increase in prices charged by suppliers in one location would cause a substantial number of purchasers to turn to more distant suppliers. If so, the geographic market would cover these more distant suppliers.

The definition of the relevant geographic market, like the definition of the relevant product market, is very important. If you find that the relevant geographic market is the larger market claimed by Defendants, it will be difficult for you to find that Defendants have unreasonably restrained competition in that larger geographic market.

## Instruction No. 25:  Proof of Competitive Harm

If you find that Plaintiff has proven the existence of a relevant antitrust market or markets, then you must determine whether Plaintiff also has proven that the challenged restraint had a substantial harmful effect on competition in one or more of those markets.  A harmful effect on competition, or competitive harm, refers to a reduction in competition that results in the loss of some of the benefits of competition, such as lower prices, increased output, or higher product quality.  If the challenged conduct has not resulted in higher prices, decreased output, or lower quality, then there has been no competitive harm, and you should find that the challenged conduct was not unreasonable.  Although it may be relevant to the inquiry, harm that occurs merely to the individual business of Plaintiff is not sufficient, by itself, to demonstrate harm to competition generally.  That is, as I've said before, harm to a single competitor or group of competitors does not necessarily mean that there has been harm to competition more broadly.

In determining whether the challenged restraint has produced competitive harm, you may look at the following factors:

• the effect of the challenged restraint on prices, output, product quality, and service;

• the purpose and nature of the restraint;

• the nature and structure of the relevant market;

• the number of competitors in the relevant market and the level of competition among them, both before and after the restraint was imposed; and

• whether Defendants possess market power.

The last factor mentioned, market power, has been defined as an ability to profitably raise prices, for a sustained period of time, above those that would be charged in a competitive market.  A firm that possesses market power generally can charge higher prices for the same goods or services than a firm in the same market that does not possess market power.  The ability to

charge higher prices for better products or services, however, is not market power. An important factor in determining whether a defendant possesses market power is a defendant's market share, that is, its percentage of the products or services sold in the relevant market by all competitors. Other factors that you may consider in determining whether a defendant has market power include the number of competitors in the relevant market and whether barriers to entry prevented the offering of alternatives. If a defendant does not possess a substantial market share, it is less likely that defendant possesses market power. If a defendant does not possess market power, it is less likely that the challenged restraint has resulted in a substantial harmful effect on competition in the market.

## Instruction No. 26:  Rule of Reason:  Step Two – Evidence of Competitive Benefits

If you find that Plaintiff has proven that the challenged restraint resulted in substantial harm to competition in a relevant market, you should turn to the second step of the analysis.  At the second step, you must determine if Defendants have proven by a preponderance of the evidence that the restraint produces countervailing competitive benefits.  As I noted earlier when I instructed you on the preponderance of the evidence standard, this is one issue in the case as to which Defendants have the burden of proof.

A procompetitive rationale is a non-pretextual claim that Defendants' conduct is indeed a form of competition on the merits because it involves, for example, greater efficiency, enhanced customer appeal, increased output, improved product quality, or because it enables the creation of new products, or reduces prices.

If you find that Defendants have proven that their conduct has procompetitive benefits, you should move on to the third step of the rule of reason analysis.

**Instruction No. 27:  Rule of Reason:  Step Three – Less Restrictive Alternatives**

If you find that Defendants proved that their conduct had procompetitive benefits or rationales, then you should turn to the third step in the rule of reason analysis, in which you must assess whether Plaintiff has rebutted the procompetitive benefits or rationales or shown that those benefits or rationales could have been achieved through substantially less anticompetitive means.

Any alternative presented by Plaintiff must be a substantially, not marginally, less restrictive means for achieving the same procompetitive rationales.  The alternative must also be virtually as effective in serving Defendants' procompetitive purposes without significantly increased cost.

If Plaintiff rebuts the procompetitive rationales or shows that they could have been achieved through substantially less restrictive means, they have established an unreasonable restraint of trade.

**Instruction No. 28: Unreasonable Restraint of Trade – Balancing Anticompetitive Harms and Procompetitive Benefits**

If you find that the challenged restraint resulted in procompetitive benefits in the relevant market that could not have been achieved through substantially less restrictive means, then you must balance those procompetitive benefits against the anticompetitive harms resulting from the same restraints.

If the anticompetitive harm outweighed the procompetitive benefits, then the challenged restraints are unreasonable. If the anticompetitive harm did not outweigh the procompetitive benefits, then the challenge restraint is reasonable. In conducting this rule of reason analysis, you must consider the benefits and harms to competition and consumers in the market as a whole, not just to a single competitor or group of competitors. Plaintiff bears the burden of proving that the anticompetitive effect of the conduct outweighed any procompetitive benefits that could not have been achieved through substantially less restrictive alternatives.

## Instruction No. 29:  Injury and Causation

If you find that Defendants violated the Sherman Act, then you must decide if Plaintiff is entitled to recover damages from Defendants.

Plaintiff is entitled to recover damages for an injury to its business or property only if it can establish three elements of injury and causation:

(1) Plaintiff was in fact injured as a result of Defendants' alleged violation of the antitrust laws;

(2) Defendants' alleged illegal conduct was a material cause of Plaintiff's injury; and

(3) Plaintiff's injury is an injury of the type that the antitrust laws were intended to prevent.

The first element is sometimes referred to as "injury in fact" or "fact of damage."  For Plaintiff to establish that it is entitled to recover damages, it must prove that it was injured as a result of Defendants' alleged violation of the antitrust laws.  Proving the fact of damage does not require Plaintiff to prove the dollar value of its injury.  It requires only that Plaintiff prove that it was in fact injured by Defendants' alleged antitrust violation.  If you find that Plaintiff has established that it was in fact injured, you may then consider the amount of Plaintiff's damages. It is important to understand, however, that injury and amount of damage are different concepts and that you cannot consider the amount of damage unless and until you have concluded that Plaintiff has established that it was in fact injured.

Plaintiff must also offer evidence that establishes by a preponderance of the evidence that Defendants' alleged illegal conduct was a material cause of Plaintiff's injury.  This means that Plaintiff must have proved that some damage occurred to it as a result of Defendants' alleged antitrust violation, and not some other cause.  Plaintiff is not required to prove that Defendants' alleged antitrust violation was the sole cause of its injury; nor does Plaintiff need to eliminate all

other possible causes of injury. It is enough if Plaintiff has proved that the alleged antitrust violation was a material cause of its injury.

Finally, Plaintiff must establish that its injury is the type of injury that the antitrust laws were intended to prevent. This is sometimes referred to as "antitrust injury." If Plaintiff's injuries were caused by a reduction in competition, acts that would lead to a reduction in competition, or acts that would otherwise harm competition in a relevant market, then Plaintiff's injuries are antitrust injuries. On the other hand, if Plaintiff's injuries were caused by heightened competition, the competitive process itself, or by acts that would benefit competition in a relevant market, then Plaintiff's injuries are not antitrust injuries and Plaintiff may not recover damages for those injuries under the antitrust laws.

In summary, if Plaintiff can establish that it was in fact injured by Defendants' conduct, that Defendants' conduct was a material cause of Plaintiff's injury, and that Plaintiff's injury was the type that the antitrust laws were intended to prevent, then Plaintiff is entitled to recover damages for the injury to its business or property. I will discuss the standards for calculating damages later in these Instructions.

## Instruction No. 30:  Sherman Act Section 2

As I mentioned earlier, in addition to Plaintiff's claim under Section 1 of the Sherman Act, Plaintiff has also asserted three claims under Section 2 of the Sherman Act:  (1) a claim against both Defendants for conspiring to monopolize at least one of the alleged relevant markets for team membership in a Division 1 or Division 2 sanctioned league; (2) a claim against only MLS for monopolization of the alleged relevant market to obtain team membership in a Division 1 sanctioned league in the United States and Canada; and (3) a claim against only MLS for attempted monopolization of the alleged relevant market to obtain team membership in a Division 1 sanctioned league in the United States and Canada.  I will now instruct you on the elements of these claims.

**Instruction No. 31:  Elements of the Conspiracy to Monopolize Count**

Plaintiff's second count alleges that Defendants conspired with each other to monopolize the alleged relevant market for team membership in a Division 1 sanctioned league in the United States and Canada, and that Defendants conspired with each other and with United Soccer League, or "USL," to monopolize the alleged relevant market for team membership in a Division 2 sanctioned league in the United States and Canada, in violation of Section 2 of the Sherman Act.

To prevail against Defendants on its claim of conspiracy to monopolize, Plaintiff must prove, by a preponderance of the evidence, each of the following four elements.  In determining whether Plaintiff has met its burden as to each of these elements, the law provides that all parties to a conspiracy do not need to be parties in the lawsuit.  Therefore, you may not consider, for any purpose, the fact that USL is not appearing as a defendant in this case.

First, that a conspiracy to obtain or maintain monopoly power in the alleged relevant market for team membership in a Division 1 men's professional soccer league in the United States and Canada, or that a conspiracy to obtain or maintain monopoly power in the alleged relevant market for team membership in a Division 2 men's professional soccer league in the United States and Canada, existed.

The second element of the conspiracy to monopolize claim is that Defendants entered into the conspiracy with the specific intention or purpose of monopolizing the alleged relevant market for team membership in a Division 1 sanctioned league in the United States and Canada, or that Defendants conspired with USL with the specific intention or purpose of monopolizing for the benefit of USL to obtain or maintain monopoly power in the alleged relevant market for

team membership in a Division 2 sanctioned league in the United States and Canada.  I will instruct you on what specific intent means in a moment.

The third element is that at least one of the conspirators committed an overt act to further the alleged conspiracy to monopolize.

The fourth and final element is that Plaintiff was injured in its business or property as a result of the alleged conspiracy to monopolize.

## Instruction No. 32:  First Element: Existence of a Conspiracy

In determining whether there was a conspiracy between Defendants, you should follow the instructions I previously gave you on that issue.  As a reminder, Plaintiff must prove both of the following elements:

(1) that the alleged conspiracy existed; and

(2) that each Defendant knowingly became a member of that conspiracy.  To act knowingly means to participate deliberately, and not because of mistake or accident or other innocent reason.

In addition, Plaintiff must prove that the object of the conspiracy was to obtain or maintain a monopoly for MLS in the alleged market for team membership in a Division 1 sanctioned league or a monopoly for USL in the alleged market for team membership in a Division 2 sanctioned league.  In order to find that MLS sought to achieve a Division 2 monopoly for USL, you must find that USL was also a member of the conspiracy.

It is therefore important for you to understand what a monopoly is.  A company has monopoly power when the company has the power to dominate or control a market.  More specifically, a company has monopoly power when it has the power to control prices in the relevant market or to exclude competition from the relevant market.

The power to control prices is the power of a company to establish significantly higher prices for their goods than those charged by competitors for equivalent goods without the company suffering a substantial loss of business to competitors.  Premium prices for premium services are not evidence of monopoly power.  But the ability to substantially raise prices above competitive levels for a significant period of time due to the exclusion of competition would be evidence of monopoly power.

The power to exclude competition means the power of a company to dominate a market by eliminating existing competition from the market or by preventing new competition from entering the market.  In other words, the power to exclude competition is the power to place major barriers in the way of other companies trying to remain in or enter the market.

You were previously instructed on how to determine whether the markets alleged by Plaintiff are relevant antitrust markets.  Those same instructions apply to this conspiracy to monopolize count.

## Instruction No. 33:  Second Element:  Specific Intent to Monopolize

If you determine that there was a conspiracy between Defendants to monopolize at least one of the alleged relevant markets for team membership in a Division 1 or Division 2 sanctioned league, then you must decide whether Plaintiff has proven that each Defendant specifically intended that, by doing so, MLS would acquire or maintain monopoly power in Division 1, or USL would acquire or maintain monopoly power in Division 2.  In other words, you must decide whether the direct or circumstantial evidence shows that Defendants entered into the agreement with the conscious aim of using anticompetitive conduct to enable MLS to acquire or maintain monopoly power in the alleged Division 1 team membership market or for the purpose of enabling United Soccer League to acquire or maintain monopoly power in the alleged Division 2 team membership market.

There are several ways in which Plaintiff may prove that a Defendant had the specific intent to monopolize.  There may be evidence of direct statements of a Defendant's intent to use anticompetitive means to acquire monopoly power in the market.  Such proof of specific intent may be established by documents prepared by responsible officers or employees of a Defendant at about the time of the alleged agreement or by testimony concerning statements of responsible officers or employees of a Defendant.  However, you should be careful to distinguish between a lawful intent to compete vigorously, which may be accompanied by aggressive language, and a specific intent to monopolize by using anticompetitive conduct.

Even if you decide that the evidence does not prove directly that a Defendant actually intended to exercise monopoly power by using anticompetitive conduct, specific intent may be inferred from what a Defendant did.  For example, if the evidence shows that the natural and probable consequence of the alleged agreement or of the conduct of the parties to the alleged agreement was to exclude or destroy competition in the relevant market, that there was no

legitimate business justification but the destruction or damage to competition, and that this was plainly foreseeable by a Defendant, then you may (but are not required to) infer that the Defendant specifically intended to acquire monopoly power by using anticompetitive conduct.

**Instruction No. 34:  Third Element:  Overt Acts in Furtherance of the Conspiracy**

The next element that Plaintiff must prove in order to show that Defendants engaged in a conspiracy to monopolize is that some member of the alleged conspiracy took some identifiable action to bring about the monopolization.  This action to carry out the conspiracy need not be unlawful in and of itself, nor is it necessary that the action accomplish the objective of the conspiracy.  What Plaintiff must show, by a preponderance of the evidence, is that one of the alleged conspirators took some concrete action in furtherance of the conspiracy.

## Instruction No. 35:  Fourth Element: Injury and Causation

The final element of proving a conspiracy to monopolize by Defendants requires Plaintiff to prove by a preponderance of the evidence that Plaintiff was injured in its business or property as a result of the alleged conspiracy.  You should follow the instructions that I previously gave to you with respect to proving injury and causation to determine if Plaintiff has satisfied its burden of proof on this element of its claim.

## THIRD COUNT—MONOPOLIZATION CLAIM (AGAINST MLS ONLY)

### Instruction No. 36: Elements of the Monopolization Count

Plaintiff's third count alleges that MLS has engaged in unlawful monopolization in violation of Section 2 of the Sherman Act. More specifically, Plaintiff claims that it was injured by MLS's monopolization of the alleged market for team membership in a Division 1 sanctioned league in the United States and Canada.

To prevail on this claim, Plaintiff must prove each of the following elements by a preponderance of the evidence:

**First**, that Plaintiff's alleged market to obtain team membership in a Division 1 men's professional soccer league in the United States and Canada is a valid antitrust market;

**Second**, that MLS possessed monopoly power in that alleged market;

**Third**, that MLS willfully acquired or maintained monopoly power in that alleged market by engaging in anticompetitive conduct; and

**Fourth**, that Plaintiff was injured in its business or property because of MLS's anticompetitive conduct.

If you find that Plaintiff has failed to prove any of these elements, then you must find for MLS and against Plaintiff on this claim. If you find that Plaintiff has proved each of these elements by a preponderance of the evidence, then you must find for Plaintiff against MLS on this claim. I will now further explain these elements.

## Instruction No. 37:  First Element: Relevant Market

As I have told you, to succeed on its monopolization claim, Plaintiff must first prove by a preponderance of the evidence that the market to obtain team membership in a Division 1 men's professional soccer league in the United States and Canada is a relevant antitrust market.  You were previously instructed on how to determine whether the markets alleged by Plaintiff are relevant antitrust markets.  Those same instructions apply to this monopolization Count.

## Instruction No. 38:  Second Element: Monopoly Power

If you find that Plaintiff has proven a relevant antitrust market, then you should determine whether MLS had monopoly power in the alleged relevant market for team membership in a Division 1 men's professional soccer league in the United States and Canada.  Monopoly power is the power to control prices, restrict output, or exclude competition in a relevant antitrust market.  More precisely, an entity is a monopolist if it can profitably raise prices substantially above the competitive level for a significant period of time.  However, possession of monopoly power, in and of itself, is not unlawful.  If you find that MLS has monopoly power in the relevant market, then you must consider the remaining elements of this claim.  If you find that MLS does not have monopoly power, then you must find for MLS and against Plaintiff on this claim.

You can consider two kinds of proof to determine whether Plaintiff has proven that MLS had monopoly power:  (1) direct evidence, and (2) indirect evidence.

## Instruction No. 39:  Existence of Monopoly Power—Direct Proof

Plaintiff has the burden of proving that MLS has the ability to raise or maintain the prices that it charges for goods or services in the relevant market above competitive levels.  Plaintiff must prove that MLS has the power to do so by itself—that is, without the assistance of, and despite competition from, any existing or potential competitors.

Plaintiff must also prove that MLS has the power to maintain prices above a competitive level for a significant period of time.  If MLS attempted to maintain prices above competitive levels, but would lose so much business to other competitors that the price increase would become unprofitable and would have to be withdrawn, then MLS does not have monopoly power.

Alternatively, Plaintiff may prove the existence of monopoly power if MLS has the ability to exclude competition.  For example, if MLS attempted to maintain prices above competitive levels, but new competitors could enter the relevant market or existing competitors could expand their sales and take so much business that the price increase would become unprofitable and would have to be withdrawn, then MLS does not have monopoly power.  The ability to earn high profit margins or a high rate of return does not necessarily mean that MLS has monopoly power.

## Instruction No. 40:  Existence of Monopoly Power—Indirect Proof

The second way that Plaintiff can prove that MLS had monopoly power is through indirect proof.  Such indirect proof may include evidence about MLS's share of the relevant markets.  MLS must have a significant share of the at-issue market in order to possess monopoly power.  The higher the market share, the stronger the inference of monopoly power.  A 50 percent market share (or less) is ordinarily not sufficient to support a conclusion that a defendant has monopoly power.  However, if you find that the other evidence demonstrates that MLS does, in fact, have monopoly power despite having a market share below 50 percent, you may conclude that MLS has monopoly power.

You may also consider evidence as to whether there were barriers to entry in the alleged relevant market.  Barriers to entry make it difficult for new competitors to enter the relevant market in a meaningful and timely way.  Barriers to entry might include the large financial investment required to start a league or satisfy the Professional League Standards, specialized marketing practices, and the reputation of the leagues already participating in the market or the brand name recognition of their leagues.

## Instruction No. 41:  Third Element:  Anticompetitive Conduct

The third element that Plaintiff must prove is that MLS willfully acquired or maintained monopoly power in the relevant market through anticompetitive acts as distinguished from legitimate competition.  Anticompetitive acts are acts, other than competition on the merits, that have the effect of preventing or excluding competition or frustrating the efforts of other companies to compete within a relevant market.  Harm to competition is to be distinguished from harm to a single competitor or group of competitors, which does not necessarily constitute harm to competition.  Some examples of harm to competition from the exclusion of competitors include increased prices, decreased production levels, and reduced quality.

The mere possession of monopoly power, if lawfully acquired, does not violate the antitrust laws.  Similarly, the acquisition or maintenance of monopoly power by supplying better products or services, possessing superior business skills, or because of luck is not unlawful.  A monopolist may compete aggressively without violating the antitrust laws, and a monopolist may charge monopoly prices without violating the antitrust laws.  A monopolist's conduct only becomes unlawful where it involves anticompetitive acts.

The difference between anticompetitive conduct and conduct that has a legitimate business purpose can be difficult to determine.  This is because all companies have a desire to increase their profits and increase their market share. These goals are an essential part of a competitive marketplace, and the antitrust laws do not make these goals—or the achievement of these goals—unlawful, as long as a company does not use anticompetitive means to achieve these goals.

In determining whether MLS's conduct was anticompetitive or whether it was legitimate business conduct, you should determine whether the conduct is consistent with competition on the merits, whether the conduct provides benefits to customers, or whether the conduct would

make business sense apart from any effect it has on excluding competition or harming competitors.

The acts or practices that result in the acquisition or maintenance of monopoly power must represent something more than the conduct of business that is part of the normal competitive process or commercial success. They must represent conduct that has made it very difficult or impossible for competitors to compete and that was taken for no legitimate business reason. You may not find that a company willfully acquired or maintained monopoly power through anticompetitive means if it has acquired or maintained that power solely through the exercise of superior foresight and skill.

If you find that Plaintiff has proven by a preponderance of the evidence that MLS willfully acquired or maintained monopoly power through the alleged anticompetitive acts, you must find the third element satisfied and you should consider the remaining elements of this claim. If, however, you find that Plaintiff did not prove this element by a preponderance of the evidence, then you must find for MLS and against Plaintiff on this claim.

## Instruction No. 42:  Fourth Element:  Injury and Causation

The final element of the monopolization claim, once again, requires Plaintiff to prove by a preponderance of the evidence that it was injured in its business or property as a result of the unlawful conduct being alleged.  You should apply the instructions that I previously gave to you with respect to proving injury and causation to determine if Plaintiff has satisfied its burden of proof on this element of its claim.

# FOURTH COUNT—ATTEMPTED MONOPOLIZATION CLAIM (AGAINST MLS ONLY)

## Instruction No. 43:  Elements of the Attempted Monopolization Count

Finally, Plaintiff brings a fourth claim alleging that it was injured by MLS's attempt to monopolize the alleged relevant market to obtain team membership in a Division 1 sanctioned league in the United States and Canada in violation of Section 2 of the Sherman Act.  To prevail on its claim of attempted monopolization, Plaintiff must prove each of the following elements by a preponderance of the evidence:

**First**, that MLS engaged in anticompetitive conduct.

**Second**, that MLS had a specific intent to achieve monopoly power in the alleged relevant market.

**Third**, that there was a dangerous probability that MLS would achieve its goal of monopoly power in the alleged relevant market; and

**Fourth**, that Plaintiff was injured in its business or property by MLS's anticompetitive conduct.

If you find that the evidence is insufficient to prove any one or more of these elements, then you must find for MLS and against Plaintiff on Plaintiff's claim of attempted monopolization.  If you find that the evidence is sufficient to prove all four elements as to MLS, then you must find for Plaintiff and against MLS on this attempted monopolization claim.

## Instruction No. 44:  First Element:  Anticompetitive Conduct

It is not sufficient for Plaintiff to prove that MLS intended to monopolize the alleged relevant market.  Plaintiff must also show that MLS engaged in anticompetitive conduct, coupled with a specific intent to monopolize and a dangerous probability that MLS would succeed.  As I previously instructed you, a company engages in anticompetitive conduct when it attempts to exclude rivals without a procompetitive justification for its conduct.  You should apply those same instructions in deciding whether Plaintiff has proven the anticompetitive conduct element of its attempted monopolization claim.

## Instruction No. 45:  Second Element:  Specific Intent

The second element of an attempt to monopolize claim requires Plaintiff to prove that MLS had a specific intent to monopolize the alleged relevant market.  You should follow the instruction that I previously gave to you on specific intent to determine if Plaintiff has met its burden of proof on this element.

Likewise, you were previously instructed on how to determine whether the market alleged by Plaintiff is a relevant antitrust market.  Those same instructions apply to this attempted monopolization count.

**Instruction No. 46:  Third Element:  Dangerous Probability of Success**

If you find that MLS had the specific intent to achieve a monopoly and engaged in anticompetitive conduct, you also must determine if the evidence shows the next element of attempt to monopolize:  namely, that there was a dangerous probability that MLS would succeed in achieving monopoly power if it continued to engage in the same or similar conduct.  I instructed you previously on monopoly power.

In determining whether there was a dangerous probability that MLS would acquire the ability to control prices in the alleged market to obtain team membership in a Division 1 men's professional soccer league in the United States and Canada, you should consider such factors as:

(a) MLS's market share;

(b) the trend in MLS's market share;

(c) whether the barriers to entry into the market made it difficult for competitors to enter the market;

(d) the strength of competition in the market; and

(e) the likely effect of any anticompetitive or exclusionary conduct on MLS's share of the market.

Again, the purpose of looking at these and other factors is to determine whether there was a dangerous probability that MLS would ultimately acquire monopoly power.  A dangerous probability of success need not mean that success was nearly certain, but it does mean that there was a substantial and real likelihood that MLS would ultimately acquire monopoly power.

## Instruction No. 47:  Fourth Element:  Injury and Causation

The final element of the attempt to monopolize claim once again requires Plaintiff to prove by a preponderance of the evidence that it was injured in its business or property as a result of Plaintiff's attempt to monopolize.  You should follow the instructions that I previously gave to you with respect to proving injury and causation to determine if Plaintiff has satisfied its burden of proof on this element of its claim.

**Instruction No. 48:  Antitrust Damages:  Introduction and Purpose**

If you find that USSF and/or MLS violated the Sherman Act  and that this violation caused injury to Plaintiff, then you must determine the amount of damages, if any, Plaintiff is entitled to recover. The fact that I am giving you these instructions is not an indication of my view as to which party you should find for in this case, or whether any damages are appropriate at all.  Instructions as to the measure of damages are given only for your guidance in the event that you find in Plaintiff's favor in accordance with the other instructions that I have given you.

The law provides that Plaintiff should be fairly compensated for all damages to its business or property that were a direct result or likely consequence of the conduct that you have found to be a Sherman Act violation.  In this trial you have heard testimony from certain NASL team owners. I instruct you that to the extent you determine that any damages are appropriate, those damages must be to compensate for the antitrust injury allegedly sustained by Plaintiff, the NASL, as opposed to any individual NASL team or owner.

Antitrust damages are only compensatory, meaning their purpose is to put an injured plaintiff as near as possible in the position in which it would have been had the alleged Sherman Act violation not occurred.  The law does not permit you to award damages to punish a wrongdoer or to deter particular conduct in the future.  Furthermore, you are not permitted to award to Plaintiff an amount for attorneys' fees or the costs of maintaining this lawsuit.

## Instruction No. 49:  Basis for Calculating Damages

You are permitted to make just and reasonable estimates in calculating Plaintiff's damages.  You are not required to calculate damages with mathematical certainty or absolute precision.

However, the amount of damages must have a reasonable basis in the evidence and must be based on reasonable, non-speculative assumptions and estimates.  Damages may not be based on guesswork or speculation.  Plaintiff must prove the reasonableness of each of the assumptions upon which its damages calculation is based.

If you find that Plaintiff has provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence.

If you find that Plaintiff has failed to carry its burden of providing a reasonable basis for determining damages, then you may not award damages (or you may award nominal damages, not to exceed one dollar).

## Instruction No. 50:  Causation and Disaggregation

If you find that Defendants violated the antitrust laws and that Plaintiff was injured by that violation, Plaintiff is entitled to recover for such injury that was the direct result or likely consequence of the unlawful acts of Defendants.  Plaintiff bears the burden of showing that its injuries were caused by Defendants' antitrust violation, as opposed to any other factors.  If you find that Plaintiff's alleged injuries were caused in part by Defendants' alleged antitrust violation and in part by other factors, then you may award damages only for that portion of Plaintiff's alleged injuries that Plaintiff has proven by a preponderance of the evidence was caused by Defendants' alleged antitrust violation.  If you find that there is no reasonable basis to apportion Plaintiff's alleged injury between lawful and unlawful causes, or that apportionment can only be accomplished through speculation or guesswork, then you may not award any damages at all (or you may award nominal damages, not to exceed one dollar).

<u>**Instruction No. 51: Lost Profits**</u>

Plaintiff claims that it was harmed because it lost profits as a result of Defendants' alleged antitrust violation. If you find that Defendants committed an antitrust violation and that this violation caused injury to Plaintiff, you now must calculate the profits, if any, that Plaintiff lost as a result of Defendants' antitrust violation. To calculate lost profits, you must calculate net profit: the amount by which Plaintiff's gross revenues would have exceeded all of the costs and expenses that would have been necessary to produce those revenues.

Here, Plaintiff claims injury from the denial of two separate sanctioning applications. As with liability, you should separately consider what damages, if any, are associated with each application. For the denial of Plaintiff's Division 1 application for the 2016 season, Plaintiff's alleged lost profits are equal to the difference between what Plaintiff's profits would have been if it had received a Division 1 sanction beginning with the 2016 season versus what its profits would have been had it remained a Division 2 league. For the denial of Plaintiff's Division 2 application for the 2018 season, Plaintiff's alleged lost profits are equal to what Plaintiff's profits would have been if it received a Division 2 sanction beginning with the 2018 season.

In seeking to establish lost profits as a Division 1 league, Plaintiff has used a yardstick approach. A yardstick approach is a method of calculating damages by comparing the Plaintiff company's sales or profits in the relevant time period to that of a similar company that was not affected by the alleged unfair competition. Plaintiff contends that, for its Division 1 damages, MLS is an appropriate yardstick. Defendants contend that MLS and Plaintiff were so different it is not right to compare the two. It is for you to decide whether MLS is or is not a proper yardstick.

## Instruction No. 52:  Mitigation

Plaintiff may not recover damages for any part of its injuries that it could have avoided through the exercise of reasonable care and prudence.  Plaintiff is not entitled to increase any damages through inaction.  The law requires an injured party to take all reasonable steps it can to avoid further injury and reduce its losses.  If Plaintiff failed to take reasonable steps available to it, and the failure to take those steps resulted in greater losses to Plaintiff than it would have suffered had it taken those steps, then Plaintiff may not recover any damages for that part of the injury it could have avoided.

As I noted earlier when I instructed you on the preponderance of the evidence standard, this is another issue in the case as to which Defendants have the burden of proof.  Defendants must prove by a preponderance of the evidence that Plaintiff:

1.      acted unreasonably in failing to take specific steps to minimize or limits its losses;

2.      that the failure to take those specific steps resulted in losses being greater than they would have been had it taken such steps; and

3.      the amount by which Plaintiff's loss would have been reduced had Plaintiff taken those steps.

The law does not require Plaintiff to take every conceivable step that might reduce its damages. The evidence must show that Plaintiff failed to take commercially reasonable measures that were open to it.  Commercially reasonable measures mean those measures that a prudent business entity in Plaintiff's position would likely have adopted, given the circumstances as they appeared at that time.  Plaintiff should be given wide latitude in deciding how to handle the situation, so long as what Plaintiff did was not unreasonable in light of the existing circumstances.

## Instruction No. 53:  General Instructions for Deliberations

Let me now give you some final instructions on how to conduct your deliberations. Plaintiff must prove the essential elements by a preponderance of the evidence, as already explained in these instructions.  To report a verdict, it must be unanimous; you must all agree as to each element.

Your function is to weigh the evidence in the case and determine whether or not Plaintiff has proven the elements of its claims against Defendants by a preponderance of the evidence.

Each juror is entitled to his or her opinion; you each should, however, exchange views with your fellow jurors.  That is the very purpose of jury deliberation—to discuss and consider the evidence; to listen to the arguments of fellow jurors; to present your individual views; to consult with one another; and to reach an agreement based solely and wholly on the evidence—if you can do so without abandoning your own individual judgment.

Each of you must decide the case for yourself, after consideration, with your fellow jurors, of the evidence in the case.  But you should not hesitate to change an opinion that, after discussion with your fellow jurors, appears erroneous.  However, if, after carefully considering all the evidence and the arguments of your fellow jurors, you entertain a conscientious view that differs from the others, you are not to yield your conviction simply because you are outnumbered.

Your final vote must reflect your conscientious conviction as to how the issues should be decided.  In short, the oath you took at the beginning sums up your duty—and that is, without fear or favor to any person, you will well and truly try the issues in this case according to the evidence presented to you in court, and according to the law as I have just instructed you.

## Instruction No. 54:  Use of Notes

For those of you who took notes throughout the trial, do not discuss them with anyone during your deliberations.  Your notes are to be used solely to assist you and are not to substitute for your recollection of the evidence in the case.  The fact that a particular juror has taken notes entitles that juror's views to no greater weight than those of any other juror, and your notes are not to be shown to any other juror during your deliberations.  If, during your deliberations, you have any doubt as to any of the testimony, you may request that any portion of the official trial transcript which is being made of these proceedings be provided to you.

## Instruction No. 55: Communications with the Court

When you begin your deliberations, you should first select someone to be the foreperson. The foreperson will be responsible for signing all communications with me. If it becomes necessary during your deliberations to communicate with me, you may send a note through the Marshal, who will be stationed outside the jury room, signed by your foreperson, or by one or more members of the jury. No member of the jury should ever attempt to communicate with me by any means other than a signed note. I will never communicate with a member of the jury on any subject touching on the merits of the case, other than in writing or orally here in open court.

As I just said, the testimony in this case was transcribed. If you wish to read some portions of the testimony, you may make the request by a note to the Marshal, and I will send the relevant portion of the transcript to you. I suggest, however, that you be specific so that we can identify what testimony you are requesting and get it to you as quickly as possible.

With respect to the exhibits, I will be sending into the jury room a laptop containing all the admitted exhibits. If you have any request about accessing a specific exhibit, please make the request by note so I can respond to it.

You will also receive copies of these instructions. If you have any questions about the instructions, you may ask those questions by note. I will then answer your questions, either in writing or in open court. I will consult with the parties first, so the answer may not be immediate.

Other than the process that I have described about written communications with me, you must not communicate during your deliberations with anyone about this case, including with members of your family or your household. You may not use any electronic device or media such as a telephone, computer, internet, text, or social media to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

You should not consult dictionaries or reference materials or use any other electronic tool to obtain information about the case or to help you decide the case. Do not try to find information from any source outside the confines of this Court.

Bear in mind also that you should not reveal to any person—not even to me—how the jury stands on the questions it has been asked to answer until after you have reached a unanimous verdict and announced it in open court.

When you have reached a verdict, simply send me a note signed by your foreperson that you have reached a verdict. Do not indicate what the verdict is. In no communication with the court should you give a numerical count of where the jury stands in its deliberations.

In a few moments, I will give you the verdict form with the questions for you to answer and you will retire to deliberate on your decision. The questions are not to be taken as any indication that I have any opinion as to how they should be answered. I have no such opinion, and even if I did, it would not be binding on you.

You should answer every question except where the verdict form indicates otherwise. You should also proceed through the questions in the order in which they are listed. Remember, all answers must be unanimous.

After you have reached a verdict, your foreperson will fill in the verdict form that has been given to you, they will sign and date it, and your foreperson will advise the Marshal outside your door that you are ready to return to the courtroom.

I stress again that each of you must be in agreement with the verdict which is announced in Court.

As I've said to you before, thank you for your attention and to the commitment you have shown throughout the trial.  I now ask you to begin your deliberations.

# # #