1

```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK
 2     - - - - - - - - - - - - - - - X
                                    :
 3     NORTH AMERICAN SOCCER        :   17-CV-5495(HG)
       LEAGUE, LLC,                 :
 4                                  :
                   Plaintiff,       :
 5                                  :   United States Courthouse
          -against-                 :   Brooklyn, New York
 6                                  :
       UNITED STATES SOCCER         :
 7     FEDERATION, INC., and        :   December 5, 2024
       MAJOR LEAGUE SOCCER,         :   11:00 a.m.
 8     L.L.C.,                      :
                                    :
 9                  Defendants.     :
       - - - - - - - - - - - - - - - X
10

11         TRANSCRIPT OF CIVIL CAUSE FOR MOTION HEARING
            BEFORE THE HONORABLE HECTOR GONZALEZ
12              UNITED STATES DISTRICT JUDGE
                     (Via Telephone)
13

14                A P P E A R A N C E S:

15     For the Plaintiff:  WINSTON & STRAWN LLP
                           200 Park Avenue
16                         New York, New York 10166
                           BY:  EVA W. COLE, ESQ.
17                              DAVID G. FEHER, ESQ.
                                MARK E. RIZIK, JR., ESQ.
18

19                         PEARSON WARSHAW, LLP
                           15165 Ventura Boulevard, Suite 400
20                         Sherman Oaks, California 91430
                           BY:  CLIFFORD H. PEARSON, ESQ.
21                              MATTHEW A. PEARSON, ESQ.
                                ADRIAN J. BUONANOCE, ESQ.
22
       For the Defendant
23     USSF, INC.:         LATHAM & WATKINS LLP
                           505 Montgomery Street, Suite 2000
24                         San Francisco, California 94111
                           BY:  CHRISTOPHER S. YATES, ESQ.
25                              LAWRENCE E. BUTERMAN, ESQ.
                                ANNA M. RATHBUN, ESQ.
```

PROCEEDINGS                    2

1              A P P E A R A N C E S (Cont'd)

2
    For the Defendant
3   MLS, L.L.C.:          PROSKAUER ROSE LLP
                          Eleven Time Square
4                         New York, New York 10036
                     BY:  BRADLEY I. RUSKIN, ESQ.
5                         KEVIN J. PERRA, ESQ.
                          SCOTT A. EGGERS, ESQ.
6
    REPORTED BY:
7
    Kristi Cruz, RMR, CRR, RPR
8   Official Court Reporter
    kristi.edny@gmail.com
9
    Proceedings recorded by computerized stenography.  Transcript produced by
10  Computer-Aided Transcription.

11

12                  *     *     *     *     *

13

14

15          (Via telephone conference.)

16          THE COURT:  This is a Civil Cause For a Telephonic

17  Motion Conference, docket number 17-CV-5495, *North American*

18  *Soccer League versus United States Soccer Federation, et al.*

19          Will the parties please state their appearances

20  for the record, starting with plaintiff.

21          MR. C. PEARSON:  Good morning, Your Honor.

22          Clifford Pearson, Pearson Warshaw, for NASL.

23          MR. M. PEARSON:  Matthew Pearson from Pearson

24  Warshaw on behalf of NASL.

25          MR. BUONANOCE:  Adrian Buonanoce from Pearson

PROCEEDINGS                                    3

1    Warshaw on behalf of NASL.

2            THE COURT:  Okay.  Anyone else?  Special.

3            MS. COLE:  Eva Cole, Your Honor, from Winston &

4    Strawn on behalf of NASL.

5            Good morning.

6            THE COURT:  All right.  Anyone else for plaintiff?

7            All right.  Let's go with U.S. Soccer, please.

8            MR. YATES:  Good morning, Your Honor.

9            It's Chris Yates from Latham & Watkins for

10   defendant United States Soccer Federation.  I have with me

11   Lawrence Buterman, Anna Rathbun, and David Johnson.

12           THE COURT:  All right.  Good morning, all.

13           And from MLS, please?

14           MR. RUSKIN:  Good morning, Your Honor.

15           It's Brad Ruskin from Proskauer.  With me I have

16   Kevin Perra, Scott Eggers, and there may be one or two other

17   of our colleagues on the phone.

18           THE COURT:  All right.  Thank you, Mr. Ruskin.

19           So at the outset, let me just remind everyone on

20   the line, including any nonparties, that any audio

21   recordings of these proceedings by anyone other than the

22   Court is strictly prohibited by Local Civil Rule 1.8.  Let

23   me also stress that violations of this rule may result in

24   sanctions, including the removal of court-issued media

25   credentials, restricted entry to future hearings, denial of

PROCEEDINGS                     4

1   entry to future hearings, or other appropriate sanctions.

2   Obviously this hearing is being transcribed, as usual, by a

3   court reporter and the parties can request a transcript,

4   which I understand already has been done.

5           And then the other thing, since I have no way of

6   muting folks, unless you need to raise a question, if

7   everyone can please mute their phones while I'm issuing the

8   decision.

9           All right.  So thank you, everyone, for getting on

10  the phone.  We're here today so I can give the parties my

11  ruling on their motions in limine.  Plaintiff's motions in

12  limine were filed on November 4th of this year and docketed

13  at Docket No. 455-1.  Defendants filed an opposition on

14  November 18th, and that's at Docket No. 465-1.  Defendants,

15  likewise, filed motions in limine on November 4th at Docket

16  No. 454-1.  And plaintiffs opposed those motions on

17  November 18th, and that was filed at Docket No. 463-1.

18          One quick administrative note before I give my

19  rulings.  I'm going to grant the sealing motions associated

20  with the briefing for the issues addressed in this order,

21  and the parties don't need to refile any of those papers.

22          So now let me turn to the parties' motions in

23  limine.  I'm going to take plaintiff's motions in limine

24  first, and I'm going to do those in the roman numeral order

25  in the motion.  And then I'm going to turn to defendants and

PROCEEDINGS                                    5

1  do those in order, with one exception.  I'm going to deal

2  with defendants' I believe it's Motion II which deals with

3  whether a witness was properly noticed.  I'll deal with that

4  one at the same time I deal with the related motion from

5  plaintiffs.

6         So Plaintiff's I seeks to exclude evidence or

7  arguments regarding alleged litigation funding and the

8  distribution and impact of any damages award.  I'm going to

9  grant this motion in part and deny it in part.

10        So the first thing is based on Footnote 10 of the

11 opposition, it appears that the motion is moot with respect

12 to any argument about plaintiff's contingency fee

13 arrangement, which defendants indicate they do not intend to

14 raise.

15        With respect to the remainder of the motion, I

16 agree, consistent with my order in the last round of in

17 limine motions, that defendants cannot argue that a damages

18 award would harm them or their ability to carry out

19 socially-beneficial activities.  The risk of unfair

20 prejudice and confusion of the issues substantially outweigh

21 any arguably probative value these arguments may have.

22        I am, however, denying the motion to the extent

23 that plaintiff seeks to exclude references to the litigation

24 funding agreement and Mr. Commisso's financial interest in

25 the case.  This is important evidence of the witness's

PROCEEDINGS                                6

1   potential bias and goes to his credibility.  So I don't

2   think any prejudice is unfair, and certainly not outweighed

3   by the substantial probative value of this evidence.

4   Because Mr. Commisso's role in this case is different from a

5   classic third-party funder, this situation is different than

6   what was highlighted in the *Carroll* case, where such

7   evidence is generally not relevant and/or unduly

8   prejudicial.

9          I also disagree with plaintiff's claim that bias

10  can be established through other means.  Money is an

11  important and often the most important motivator.  The

12  evidence, therefore, has substantial probative value, and

13  unlike, again, in the *Carroll* case which involved a more

14  complicated fact pattern, I see no risk of a collateral

15  dispute emerging on this issue.

16         So that's my ruling on Motion I.

17         Let me turn now to Plaintiff's II, which seeks to

18  preclude defendants from referencing the preliminary

19  injunction decision and the Court's dismissal of Count One

20  at summary judgment.  Again, I'm going to grant this motion

21  in part and deny it in part.

22         On November 12th, earlier this year, I so ordered

23  the parties' stipulation in which they agreed that they

24  would not refer to or discuss the Court's decision on the

25  motions for summary judgment at trial.  So the portion of

PROCEEDINGS                                7

1    plaintiff's motion seeking to preclude reference to the

2    dismissal of Count One is, therefore, moot.

3           With respect to the PI, or preliminary injunction

4    portion of the motion, I am aware that courts in this

5    circuit often exclude reference to PI proceedings as unduly

6    prejudicial under Rule 403.  Accordingly, defendants may not

7    reference the PI decision or suggest that the Court has

8    already reached a conclusion about the merits of plaintiff's

9    claims, except that if plaintiff introduces at trial the

10   letters of intent that were attached to the declaration that

11   Mr. Commisso submitted in connection with the PI motion, or

12   elicits testimony about those letters of intent from any

13   witness, or to the extent that plaintiff's damages

14   calculations are based on fees it would have received from

15   teams that submitted letters of intent in connection with

16   the PI motion, then defendants will be permitted to

17   reference the PI motion and its timing, without referencing

18   the outcome of the PI motion, as necessary to give the jury

19   a full understanding of when and why the letters were

20   generated within the broader context of the litigation.  I

21   find that the use by plaintiff of these letters at trial

22   without proper context would lead to jury confusion and

23   would unduly prejudice defendants' ability to rebut this

24   line of evidence.

25           That concludes my ruling on Plaintiff's II.

1          Let me turn now to Plaintiff's III, which seeks to

2    preclude defendants from arguing any procompetitive

3    justifications for their conduct not supported by expert

4    testimony or allegedly invalid under governing law.  In this

5    section of the motion, plaintiff asks me to preclude

6    defendants from pursuing five specific lines of argument

7    related to procompetitive justifications for their conduct.

8    I'm largely denying this motion, but I'll address each

9    specific line of argument separately to explain my holding.

10          Within Motion III, so this is III, the first

11   category seeks to preclude defendants from arguing that the

12   standards themselves are procompetitive.  In my prior in

13   limine order, I held that while plaintiff may not argue that

14   the use of sanctioning standards-based systems is

15   anticompetitive, plaintiff may nevertheless offer limited

16   evidence on how the standards came to be to the extent

17   necessary to develop the narrative of its case.  Defendants

18   will be held to the same standard.

19          While defendants may not argue that the use of a

20   sanctioning standards-based system is procompetitive as

21   compared to other potential systems, like a promotion or

22   relegation system, defendants may, however, explain the

23   context in which the standards were developed and the

24   reasons that the specific requirements of the standards, for

25   example, the requirement that a Division I league contain a

PROCEEDINGS                               9

1   minimum number of teams, were put in place.  This n may

2   include argument that requirements within the standards are

3   procompetitive and, as the Second Circuit explained in its

4   earlier decision in this case, may include limited

5   information about the history of the restraint, the evil

6   believed to exist, the reason for adopting the particular

7   remedy, and the purpose or end sought to be attained.  And

8   there I was quoting from the Second Circuit's decision at

9   883 F.3d at page 43.  Obviously to the extent defendants

10  stress the procompetitive nature of certain requirements of

11  the standards, plaintiff will be allowed to rebut that

12  theory with its own evidence.

13          Let me turn now to the second prong of Motion III,

14  which seeks to preclude defendants from arguing that there

15  should only be one league in each division as a

16  procompetitive justification for denying plaintiff a

17  Division I or Division II sanction.

18          Plaintiff initially characterizes this section of

19  the motion as seeking to preclude defendants from arguing

20  that there are procompetitive reasons to allow only one

21  league in each division.  Having seen no indication that

22  defendants intend to make this argument, it is clear to me

23  that plaintiff is more broadly seeking to preclude

24  defendants from arguing that the sanctioning decisions were

25  justified based on a fear of ruinous competition.

1          Defendants are correct that in the Circuit's prior

2    ruling, it rejected plaintiff's argument that defendants'

3    sanctioning decisions cannot be justified as preventing

4    ruinous competition, financial disaster, or the evils of

5    price cutting.  And there that was at page 44 of the

6    Circuit's decision.

7          The Circuit held that the arguments plaintiff

8    again advances here are tied to cases where courts were

9    confronted with per se illegal practices, but that in the

10   sports standards context, arguments that a practice promotes

11   stability and other procompetitive justifications still can

12   be relevant.

13         The Circuit further explained that while an

14   antitrust defendant cannot "justify anticompetitive

15   arrangements by saying that an industry's special

16   characteristics warrant them," in the context of a soccer

17   industry historically prone to collapse, the free-rider and

18   stability justifications do not rationalize anticompetitive

19   effects, they evidence procompetitive ones.

20         So consistent with the Circuit's decision, I will

21   not limit defendants' ability to argue the procompetitive

22   effects of their decisions in the manner that plaintiff

23   seeks.

24         Plaintiff's motion in this regard is, therefore,

25   denied.

PROCEEDINGS                                    11

1          Let me turn now to the third prong of this motion,

2    which seeks to preclude defendants from arguing that they

3    applied the standards in good faith.

4          I also deny this section of the motion.  If

5    plaintiff characterizes U.S. Soccer's sanctioning decisions

6    as having been made in bad faith at trial, defendants will

7    be permitted to counter that argument.  I note that

8    plaintiff has not cited a single case in which a court

9    actually precluded a defendant from arguing that it acted in

10   good faith.  Rather, each case that plaintiff cites stands

11   only for the proposition that good intentions alone are not

12   sufficient to defeat a Sherman Act claim.  As defendants

13   acknowledge in their opposition, they of course may not

14   suggest to the jury that their good intentions alone are

15   sufficient to defeat plaintiff's claims.

16         I'll now turn to the fourth prong of the motion,

17   which seeks to preclude defendants from arguing brand

18   protection as a procompetitive justification.

19         In this prong of their motion, plaintiff cites to

20   no on-point authority to support its position, asking me to

21   hold that defendants cannot argue that brand protection is a

22   procompetitive justification for their application of the

23   standards because they have not come forward with expert or

24   other evidence to support that argument.  I'm denying that

25   request.

PROCEEDINGS                                    12

1        At summary judgment, Judge Cogan rejected

2   plaintiff's argument that defendants did not have evidence

3   to support the alleged procompetitive justifications for the

4   standards, holding that the parties' evidence had created an

5   issue of fact that the jury must determine at trial.  I see

6   no reason to disturb that determination at this stage.  To

7   the extent that defendants come forward with evidence or

8   elicit testimony to support an argument that brand

9   protection was a procompetitive justification for their

10  application of the standards, they may do so.  Plaintiff is

11  free, of course, to rebut any such contention with its own

12  evidence and testimony.

13        The fifth and final prong of this motion seeks to

14  preclude defendants from introducing evidence of

15  procompetitive effects in other markets not at issue here.

16        First, plaintiff is correct that any

17  procompetitive benefit defendants offer as justification for

18  their application of the standards must occur in the same

19  market in which competition is being restrained.  However, I

20  credit defendants' assertion that the deposition

21  designations and exhibits about which plaintiff is concerned

22  will not be offered as evidence of procompetitive effects in

23  the downstream markets that Judge Cogan already determined

24  were not relevant to this case.  Although the designations

25  and exhibits at issue may not be offered for the purposes

1   that plaintiff identifies, they are admissible to the extent

2   defendants demonstrate at trial that the evidence is

3   relevant to establish the purposes defendants identify on

4   page 5 of their opposition.

5          Let me turn now to Plaintiff's IV motion.  That

6   motion seeks to preclude evidence or argument that Traffic

7   Sports made an improper payment to induce investors in a

8   team to join NASL.  I'm denying this motion, and I will

9   allow defendants to introduce evidence and testimony,

10  including Davidson's invocation of the Fifth Amendment,

11  related to the alleged payment.  I find that this evidence

12  is relevant under Rule 401 and not unfairly prejudicial to

13  plaintiff under Rule 403.

14         As I understand it, plaintiff's theory of the case

15  is that it was a rapidly growing, successful league that was

16  recruiting more and more teams to play under its purview

17  because of that success until that growth was stopped in its

18  tracks by defendants' alleged anticompetitive conspiracy.

19  Defendants counter that plaintiff's failure was due to

20  issues with the league, unrelated to U.S. Soccer's

21  sanctioning decisions.

22         If plaintiff does intend to argue at trial, as it

23  has in its papers thus far, that the team named in the

24  motion joined NASL rather than another league because of

25  plaintiff's success, defendants are permitted to counter

PROCEEDINGS                                                    14

1  that narrative by introducing evidence of other reasons that

2  team may have joined the league.  This evidence may include

3  the documentary evidence referenced in defendants'

4  opposition to plaintiff's motion and any testimony,

5  including any Fifth Amendment invocation, that Davidson gave

6  on the topic.

7           In ruling on the parties' preliminary motions in

8  limine, I found that defendants may play for the jury

9  portions of Davidson's testimony, including portions in

10 which he invokes his Fifth Amendment rights.  I also found

11 that an adverse inference against plaintiff based on

12 Davidson's invocation will be trustworthy and should be

13 provided in some form following the presentation of

14 Davidson's testimony.

15          While I will not instruct the jury that they can

16 infer from Davidson's invocation of the Fifth Amendment on

17 this issue that the team joined the NASL rather than the MLS

18 or the USL at least in part because of an improper payment,

19 I will permit defendants to introduce the testimony as well

20 as any related evidence in order to make its point.  I find

21 that the probative value of this evidence is not

22 substantially outweighed by the danger of unfair prejudice

23 to plaintiff.  Plaintiff is free to rebut any evidence

24 defendants put forward on this point.

25          Let me turn now to Plaintiff's V motion.  There,

PROCEEDINGS                                   15

1  plaintiff seeks to exclude Rocco Commisso's personal tweets

2  unrelated to the standards and sanctioning issues.  I'm

3  denying that motion.

4          I've reviewed the at-issue tweets and agree with

5  defendants that they are significantly probative in terms of

6  Mr. Commisso's bias and credibility, especially in light of

7  his decision to tweet from an anonymous account.  I am

8  persuaded by the authority presented by defendants that bias

9  of a witness is not a collateral issue.  That is especially

10 so here because the tweets relate to core issues in this

11 case.

12         Although I credit plaintiff's argument that these

13 tweets might be inflammatory, I disagree that the risk of

14 unfair prejudice substantially outweighs their probative

15 value.  As just explained, their probative value is high.  I

16 accept defendants' argument that the tweets are especially

17 probative because they give the jury the opportunity to

18 juxtapose the tone and style of the tweets with the live

19 testimony, which will aid the jury in assessing witness

20 credibility.

21         For that same reason, I reject the argument that

22 other evidence can be used to show bias.  Plaintiff has not

23 shown there to be a Rule 403 issue entitling it to such a

24 remedy.

25         Let me turn now to Plaintiff's VI motion.  That

1    motion seeks to exclude evidence of non-privileged

2    discussions regarding NASL litigation strategy.  I am

3    granting this motion in part and denying it in part.  I

4    understand that this dispute concerns Exhibits 281 and 282.

5    To the extent plaintiff intended for this motion to be

6    broader, I think my ruling will be instructive as to the

7    scope of the permissible evidence here.

8              To begin, I think both exhibits satisfy Rule 401's

9    low relevance bar.  I accept defendants' argument that the

10   content of both emails is relevant to their central defense,

11   namely that NASL failed because of mismanagement and other

12   issues rather than defendants' alleged conduct.

13             The argument on Rule 403, however, is a closer

14   call.  I appreciate that references to litigation not

15   pursued but related to this case may be both unfairly

16   prejudicial and, more importantly here, confusing.  I've

17   reviewed the two exhibits in detail.  I'm going to exclude

18   Exhibit 281 because it is entirely litigation focused.  I

19   agree with plaintiff's argument that the probative value of

20   this document is substantially outweighed by the risk of

21   confusion, as jurors might discredit the claims in this

22   litigation based on it.

23             I reach a different result with respect to

24   Exhibit 282.  Litigation may generally frame in that

25   document the discussion by the owners, but the statements

1  included in Exhibit 282 have very high probative value.  For

2  example, Mr. Edwards's statement that "We must earn

3  Division I status, not sue to get it," is a statement by a

4  party opponent that effectively endorses defendants' central

5  theory of the case.  Its probative value is not

6  substantially outweighed by any unfair prejudice or the risk

7  of confusion because the theme motivating those two

8  problems, the merits of antitrust litigation, is more

9  marginal in this exhibit.

10         Let me turn now to Plaintiff's VII motion, and

11  I'll also address Defendants' II motion.

12         So Plaintiff's VII motion seeks either a trial

13  deposition or to exclude Scott Letellier for failure to

14  disclose.  I'm denying that motion.

15         I agree with defendants that Mr. Letellier was

16  otherwise made known to plaintiff.  Defendants' disclosure

17  of "former members of the PSL Task Force" was sufficiently

18  specific for plaintiffs to identify Mr. Letellier.  This is

19  evidenced by plaintiff's deposition notice served on him.

20  And I don't credit plaintiff's argument that plaintiff chose

21  not to go forward with that deposition only because

22  defendants failed to disclose him.  Because Mr. Letellier

23  has otherwise been disclosed under Rule 26(e), no remedy is

24  warranted.  As I'll explain in a moment, even had there been

25  a technical violation of Rule 26 here, I would not have

1    exercised my discretion to preclude the witness.

2           Let me turn now to the related Defendants' II

3    motion.  In that motion, defendants seek to exclude

4    testimony of former Cosmos players Daniel Szetela and Carlos

5    Mendez for failure to disclose or under Rules 402, 403.

6    Because I'm applying the same factors but reach a different

7    result than I did with the prior motion, let me explain my

8    rationale.

9           I note at the outset that in plaintiff's

10   opposition, it states that it has removed Mr. Mendez from

11   its witness list, so this motion is moot as to him.

12          As to Mr. Szetela, plaintiff argues only

13   halfheartedly that he was properly disclosed.  Both sides

14   agree that I must consider the following four factors in

15   determining whether to preclude testimony.  One, the

16   explanation for failure to disclose.  Two, the testimony's

17   importance.  Three, prejudice to the other party.  And four,

18   the possibility of a continuance.

19          Starting with the first factor, as I just

20   indicated, I don't accept plaintiff's argument that its

21   disclosure of "employees" of the Cosmos or "representatives

22   of current and former NASL teams" suffice.  Those lists,

23   which presumably cover hundreds of people, are materially

24   different in breadth from defendant's disclosure of the much

25   smaller and much more easily-identifiable PSL Task Force.

PROCEEDINGS                                    19

1    Nor does the reservation of rights to identify more

2    witnesses later save plaintiff.  That would render Rule 26 a

3    dead letter.

4          As to the second factor, I agree with defendants

5    that Mr. Szetela's testimony is not very important.

6    Plaintiff says he will testify to the importance of

7    divisional sanctions and the desirability of being a player

8    in D1 or D2, which is important to prove the relevant

9    markets, according to plaintiff.  Plaintiff also says he can

10   testify "about the fact that NASL could compete with MLS on

11   the field."  At the outset, those topics appear to me to be

12   marginal and far removed from the conspiracy allegations in

13   this case.  Furthermore, they look like issues for experts,

14   as plaintiff provides me with no explanation for why this

15   kind of testimony is needed to define the relevant markets

16   in this case.  Plaintiff's treatment of this issue is too

17   cursory for me to find it sufficiently important.

18         Moving on, there would clearly be prejudice to

19   defendants by allowing the witness to testify at trial.

20   This concern is heightened by the unclear nature of his

21   testimony, and I'm not persuaded by the fact that defendants

22   have generally taken discovery on the issues on which the

23   witness plans to testify.  Defendants will still be ambushed

24   by this specific testimony.

25         Finally, I don't believe there is sufficient time

1    for a continuance at this point.  I don't think that there

2    is time to depose the witness.  I agree with defendants that

3    to rush a deposition now would deprive them of the

4    opportunity to seek out documents from the witness via

5    third-party subpoena.

6              As all the factors support defendants, I will

7    grant the motion to preclude Mr. Szetela.

8              This result is consistent with my prior ruling

9    regarding Letellier.  When you contrast this with

10   Mr. Letellier, where the first three factors all cut against

11   plaintiff -- one, defendants effectively disclosed him; two,

12   his testimony goes to issues at the heart of the case; and

13   three, any prejudice to plaintiff was caused by plaintiff's

14   own failure to depose him when he was already noticed -- it

15   becomes clear that these two circumstances are materially

16   distinguishable.

17             In any event, I would also preclude Mr. Szetela's

18   testimony under Rules 401 and 403.  For the reasons already

19   explained, plaintiff has not convinced me that this

20   testimony is relevant to a claim in this case, and I agree

21   with defendants that the risk of unfair prejudice and juror

22   confusion by bringing in a player to testify about his

23   firsthand experience substantially outweigh any marginal

24   probative value of this testimony.  Contrary to plaintiff's

25   claim, it would especially create confusion about an

1    irrelevant player market.

2              So that addresses Defendants' Motion II.

3              Let me go back in order and now turn to

4    Defendants' I.  In that motion, defendant seeks to exclude

5    testimony from Rishi Seghal as to matters over which NASL

6    has asserted that his communications are privileged.  This

7    motion pertains to three categories of evidence.  Category 1

8    is the meaning of and intentions behind NASL's legal

9    agreements and its obligations.  Category 2 involves

10   communications with Traffic Sports and Team Holdings.  And

11   Category 3 involved communications with Douglas Kelley, an

12   individual who was hired by NASL after the Traffic

13   indictment.

14             As to this motion, I'm denying the motion in its

15   entirety.  As to Category 1, the legal agreements, I'm not

16   convinced that we have a sword and shield issue here,

17   particularly in light of plaintiff's recounting of the

18   extensive testimony defendants took on the contractual

19   obligations.  I've reviewed the privilege log excerpts

20   provided by defendants and do not think Seghal asserts a

21   claim in his declaration that in fairness requires

22   examination of the protected communications.  In other

23   words, plaintiff has not disclosed some communications for

24   self-serving purposes, as it appears to me that Mr. Seghal

25   is just providing testimony on issues that also may have

PROCEEDINGS                                    22

1    been discussed in a privileged context.  In this sense, I

2    don't find that there is support for defendants' broad

3    understanding of waiver, which would risk gutting the

4    privilege.

5              With regard to Category 2, I see basically the

6    same issue with defendants' position regarding the

7    communications with Traffic and Team Holdings.  This issue

8    is admittedly complicated due to Mr. Seghal's two-hatted

9    role in the organization, but I don't think the fact that

10   Mr. Seghal said that NASL on one side and Traffic and Team

11   on the other side took different views of the relevant

12   agreements, that that creates some broad subject matter

13   waiver over all documents between NASL and Traffic and Team,

14   especially when it is at least somewhat unclear what precise

15   issues were under discussion in the privileged

16   communications.  As before, I don't see Mr. Seghal actually

17   disclosing any other otherwise privileged communications

18   such that this creates a generalized sword and shield issue,

19   so I deny this portion of the motion, as well.

20             The third category related to Douglas Kelley

21   communications for me is the easiest.  Unlike with the other

22   two categories, this issue was not precipitated by the

23   Seghal declaration, but is rooted in his years-old

24   deposition.  I, therefore, agree with plaintiff that as a

25   procedural matter, this branch of the motion is untimely and

PROCEEDINGS                        23

1    I could deny it on that basis alone, as the time for raising

2    discovery disputes has long past.  In any case, I would deny

3    the motion because defendant provides me with no authority

4    suggesting that a disagreement between a client and counsel

5    about the meaning of a non-privileged document necessarily

6    waives privilege over all communications between the client

7    and counsel.

8              So, like I said, I'm denying this Defendants'

9    Motion I in its entirety.

10             Even though I'm denying the motion, I want to make

11   clear that is in part because motions in limine are, by

12   their nature, broad.  As I said in my prior order, I may

13   only exclude evidence when it is clearly inadmissible on all

14   potential grounds.  Plaintiff is forcing itself to walk a

15   fine line by putting up its own lawyer as a central witness,

16   and the mere fact that I'm not finding waiver today does not

17   mean I will not find it based on the testimony presented at

18   trial.  So I am warning plaintiff to tread carefully on this

19   issue.  I certainly will not tolerate any attempt to abuse

20   the privilege during the trial testimony.

21             Let me turn now to defendants' third motion.  That

22   motion seeks to exclude evidence and argument related to the

23   proposed 2015 amendments to the 2014 standards.  I am

24   granting that motion.

25             Both parties agree that the proposed 2015

1   amendments to the standards were never adopted or applied to

2   plaintiff.  As such, I do not see how these amendments are

3   relevant to a determination of, or probative of, whether the

4   standards were drafted, modified, and applied to plaintiff

5   in a way that harmed competition.  Accordingly, I am not

6   convinced that evidence related to the 2015 proposed

7   amendment is relevant under Rule 401.

8          The Second Circuit has held that implicit in

9   Rule 401's definition of relevance are two distinct

10  requirements.  One, that the evidence must be probative of

11  the proposition it is offered to prove.  And two, that the

12  proposition to be proved must be one that is of consequence

13  to the determination of the action.  And there I was citing

14  from *U.S. v. Kaplan* at 490 F.3d 120.

15         With this in mind, I note that plaintiff has not

16  demonstrated that the proposed 2015 amendments, which were

17  not adopted, had any bearing on or relationship to the

18  sanctioning process in 2016 or 2017.  And given that

19  U.S. Soccer met regarding the proposed 2015 amendments to

20  the standards multiple times before plaintiff had submitted

21  its Division I application, I am not convinced that evidence

22  related to the proposed 2015 amendments is probative of the

23  proposition that the proposed amendments were designed to

24  "raise the Division I requirements so that they were further

25  out of reach for plaintiffs," as plaintiffs argue, or that

PROCEEDINGS                              25

1   the proposed amendments are relevant as evidence of the

2   conspiracy and of the anticompetitive intent and purpose of

3   the defendants' application of the standards.

4           I am also persuaded by the sixth circuit's

5   reasoning in the *Warrior Sports* decision, which is at 623

6   F.3d 281.  In that case, the Sixth Circuit held that the

7   proposed changes that the NCAA considered, but which never

8   went into effect, could not "be challenged because they

9   necessarily did not cause, nor did they threaten to cause,

10  any injury," and that only the rule changes that actually

11  took effect "matter for purposes of the antitrust analysis."

12          Accordingly, because I find that this evidence is

13  not relevant, I will not allow plaintiff to introduce it at

14  trial.

15          Defendants' fourth motion seeks to exclude

16  evidence and argument characterized as related to corporate

17  governance issues, such as an alleged conflict of interest

18  violation, and to exclude all evidence and testimony related

19  to the McKinsey report.  I am granting this motion in part

20  and denying it in part.

21          In his order on the parties' motion for summary

22  judgment, Judge Cogan excluded all testimony on the

23  irrelevant topic of corporate governance and held that NASL

24  will not be permitted to suggest to the jury that defendants

25  have violated any corporate governance rules.  Judge Cogan

PROCEEDINGS                              26

1   also explained that whether U.S. Soccer complied with good

2   corporate governance practices is irrelevant to plaintiff's

3   antitrust claims.  My findings on this motion will be

4   informed by that prior holding.

5           I have reviewed the exhibits provided to me as

6   relevant to this motion, which are Plaintiff's 169,

7   Plaintiff's 170, and Plaintiff's 461.  Although

8   Plaintiff's 169 and 461 contain governance-related

9   discussion, that discussion, at least in part, specifically

10  relates to the governance of the Professional League

11  Standards Task Force and explicitly references the

12  enforcement of the standards.  Therefore, I will not exclude

13  169 or 461.  Since defendants intend to assert at trial that

14  the Professional League Standards Task Force acted without

15  bias, plaintiff must be permitted to admit evidence that

16  calls into question that neutrality or that points to

17  potential issues with the procedures employed by the Task

18  Force and its enforcement of the standards during the

19  relevant period.  This evidence is obviously relevant to

20  plaintiff's claims.

21          However, Plaintiff's 170 is clearly more focused

22  on general corporate governance of U.S. soccer as a whole,

23  and in particular on committees that do not handle the

24  enforcement of the standard, such as the Governance

25  Committee.  Although it briefly mentions the Professional

PROCEEDINGS                    27

1   League Standards Task Force, it does so only in the context

2   of a broader discussion about governance reform at

3   U.S. Soccer.  This is precisely the kind of evidence that

4   Judge Cogan's order sought to exclude, and it is not

5   relevant under Rule 401.

6           Accordingly, I will exclude Plaintiff's 170 and

7   other similar evidence that relates to broader U.S. Soccer

8   corporate governance issues rather than to specific issues

9   with the task force charged with promulgating and enforcing

10   the standards.

11           I am also excluding evidence and argument related

12   to the McKinsey report.  I find that the report, which I

13   have reviewed in its entirety and is filed on the docket at

14   Docket 287-8, is not relevant under Rule 401 and is

15   precluded by Judge Cogan's ruling on corporate governance

16   issues.  I'm obviously aware that Judge Cogan previously

17   determined, for purposes of summary judgment, that the

18   report is a business record and that the quotes within it

19   meet a hearsay exception.  That does not, however, make the

20   report admissible at trial.  To be admissible at trial, it

21   must also be relevant under Rule 401 and not substantially

22   more unfairly prejudicial than probative under Rule 403.

23           As I already discussed, for evidence to be

24   relevant under Rule 401, it must be probative of the

25   proposition it is offered to prove and the proposition to be

1   proved must be of one that is of consequence to the

2   determination of the action.

3            Plaintiff seeks to use the quoted statements from

4   the McKinsey report at trial to demonstrate that

5   U.S. Soccer's board decision-making "was influenced and

6   biased by USSF's entanglement with MLS through both business

7   and personal connections."  However, none of the highlighted

8   quotes relate to U.S. Soccer sanctioning decisions, MLS's

9   role, if any, in the sanctioning process, or any

10  entanglements that would have impacted the way U.S. Soccer

11  decided to enforce the standards.  Rather, the quotes relate

12  more broadly to corporate governance issues, administrative

13  issues, and U.S. Soccer's governance structure.  They are

14  wholly unrelated to U.S. Soccer's sanctioning process.

15           The main quotes that relate to MLS's role in

16  U.S. Soccer governance states that "MLS has a stranglehold

17  of U.S. soccer" and that "having MLS under the auspices of

18  the federation is a challenge.  It's political and

19  paralyzing."  These quotes are on a slide titled "Tension

20  around scope of USSF remit suggests likely execution

21  challenge."

22           Based on the lowercase "s" in the stranglehold

23  quote, like defendants, I read that quote as referencing

24  soccer in the U.S. generally, rather than the U.S. Soccer

25  Federation.  This is supported by the fact that references

1   to the federation in the deck either refer to it as

2   "U.S. Soccer," with the "S" capitalized, or "USSF."  For

3   example, I'm referring to Slides 1, 8, 16, 28, 32, and 36.

4   Indeed, the very slide that references the "stranglehold"

5   refers to the federation as "USSF," all caps, which is

6   Slide 37.  Understood as a reference to soccer in the U.S.

7   generally, this quote is of no relevance to plaintiff.  This

8   is reinforced by McKinsey's representative's testimony that

9   the quote was referencing "tension between the professional

10  side of soccer in the United States and amateur."  And the

11  quote about the challenge of MLS existing "under the

12  auspices of the federation" is vague, with no clear

13  indication of what the challenges are.

14            As such, I find that the report is not probative

15  of a conspiracy between MLS and U.S. Soccer related to

16  sanctioning decisions.  As best, the report is probative of

17  general corporate governance issues facing U.S. Soccer,

18  which, as Judge Cogan has already found, are not relevant to

19  the determination of this action.  Accordingly, under

20  Rule 401 and consistent with the summary judgment decision,

21  I am excluding the McKinsey report.

22            I also note that even if I had found the McKinsey

23  report to be relevant, I would nevertheless exclude it under

24  Rule 403 because any minimal probative value it might have

25  is substantially outweighed by the risk of confusing and

PROCEEDINGS                                          30

1   misleading the jury.  I am not convinced that the statements

2   that plaintiff proposes to put before the jury can be fairly

3   attributed to U.S. Soccer board members, as plaintiff

4   suggests, given that McKinsey's representative testified

5   that it was not McKinsey's "practice to transcribe

6   completely and verbatim comments made in interviews," and

7   that McKinsey often paraphrased statements made by

8   interviewees.  And as previously stated, given the lack of

9   clarity surrounding what specifically the quotes in the deck

10  mean, I find that there is a high risk of confusing and

11  misleading the jury.

12          Let me turn now to Defendants' V motion, which

13  seeks to exclude evidence and arguments related to the 2018

14  U.S. Soccer election.  I am granting this motion in part and

15  holding a portion of it in abeyance.

16          As I already noted, Judge Cogan excluded all

17  testimony related to corporate governance in his summary

18  judgment order.  I agree with defendants that in large part,

19  evidence about this election pertain to internal governance

20  issues and not specifically to the sanctioning process or

21  prior sanctioning decisions.  As such, it is irrelevant to

22  the issues in this litigation and precluded by Judge Cogan's

23  summary judgment order and by Rule 401.

24          Accordingly, of the exhibits the parties identify

25  as relevant to this motion, I will exclude Plaintiff's 202,

1  Plaintiff's 439, and Plaintiff's 207, because they are not

2  relevant to the issues in this litigation and instead

3  pertain to corporate governance issues, such as the

4  mechanics of the 2018 U.S. Soccer election.  Any similar

5  exhibits or testimony that have not already been identified

6  for me fall under the purview of this decision.

7          However, with respect to Plaintiff's Exhibit 206,

8  Ms. Carter's notes to herself taken as she endeavored to

9  learn more about the standards, I'm holding my decision on

10 that exhibit in abeyance.  I do not necessarily see this

11 document as exclusively pertaining to internal governance

12 issues like the exhibits I have already discussed.

13         However, plaintiff will need to establish the

14 trustworthiness of Ms. Carter's notes, which do not appear

15 to be statements by a percipient witness, but rather notes

16 taken during a conversation with others.  At trial, I will

17 allow plaintiff to attempt to develop a foundation for this

18 document and make a case that the origins of the document

19 are sufficiently Rule 403 proof that admitting it will not

20 be misleading or confusing to the jury.  Once plaintiff has

21 endeavored to establish that foundation, I will determine

22 during the trial whether or not the document is admissible.

23 If plaintiff's effort to establish a foundation instead

24 establishes that the document is more or less a summary of

25 information about which Ms. Carter had no firsthand

PROCEEDINGS                              32

1    knowledge, I will likely exclude it since it will be of very

2    limited probative value, and that value will be outweighed

3    by the substantial risk that admitting it could confuse or

4    mislead the jury given that Ms. Carter was not involved in

5    decisions related to the standards or sanctioning in 2016

6    and 2017.

7            Let me turn now to Defendants' VI motion, which

8    seeks to exclude evidence and arguments related to MLS

9    expansion fees.  I am granting this motion.

10           Dr. Williams may not testify regarding the

11   $500 million expansion fee that MLS received from the San

12   Diego football club in 2023, and I will exclude any evidence

13   or argument concerning that same fee.  Dr. Williams may not

14   testify on this topic because I am convinced by defendants'

15   arguments on pages 20 to 21 of their motion that

16   Dr. Williams neither disclosed this fee as a basis for his

17   opinions nor relied on it in forming his opinions.

18           Beyond just Dr. Williams, I am also excluding any

19   evidence or argument about the fee because given the

20   temporal attenuation, I simply do not see how, under

21   Rule 401, a 2023 MLS expansion fee is otherwise relevant.

22   Even if the fee did have minimal probative value, that would

23   be substantially outweighed by the risk of unfairly

24   prejudicing defendants or confusing the jury under Rule 403.

25           Turning next to Defendants' VII motion, which

PROCEEDINGS                                      33

1   seeks to exclude evidence regarding women's soccer

2   litigation, investigation, and standards changes.  This

3   motion is granted for now, and let me explain what I mean by

4   that.

5              My prior order was clear that evidence concerning

6   women's soccer formed just one part of one category of

7   evidence, all of which represents just a tiny portion of the

8   case.  I also explained, in agreeing with defendants, that

9   the evidence of other activities could be relevant by

10  undercutting the notion that defendants worked to undermine

11  other leagues or otherwise diminish competition in the lower

12  markets.  That is a narrowly-defined lane and I expect

13  defendants to stay in it.

14             Because this evidence has low probative value,

15  that value is substantially outweighed by the risk of

16  confusion and unfair prejudice coming from the introduction

17  of evidence about women's soccer that plaintiff wants to

18  introduce.  I think the risks of confusion and unfair

19  prejudice are heightened because the evidence about the

20  women's soccer litigation, investigation, and the standards

21  change does not undermine the limited purpose for which I

22  held that defendants could introduce the other activities

23  evidence as defined in my prior order.  And here, I actually

24  think the risk of devolving into a side trial on the women's

25  soccer litigation is high in no small part because it is

1   easier for a layperson juror to wrap his or her head around

2   than the more complex antitrust claims.

3           That being said, I do caution defendants to tread

4   carefully in this area.  If they go beyond the bounds of my

5   prior order, including by excessively pressing on the

6   importance of their other activities, like women's soccer, I

7   may be persuaded to find that they have opened the door to

8   at least some of the evidence plaintiff now seeks to

9   introduce.  I'll again emphasize that I do not want to see a

10  trial on those collateral issues.  This trial is not about

11  whether any party is good or bad.

12          And finally, Defendants' VIII motion, which seeks

13  to prevent plaintiff from referring to U.S. Soccer and MLS

14  broadly as "defendants" when referring to activities in

15  which only one defendant was involved.

16          I'm not inclined to rule on this at the moment,

17  and certainly I don't intend to waste time policing the

18  parties' rhetoric at trial.  Plaintiff should be clear about

19  which defendant it is referring to at trial when making its

20  arguments.  If it does appear that plaintiff is conflating

21  the two defendants improperly or if its rhetoric becomes

22  misleading, then I will obviously admonish plaintiff in the

23  presence of the jury as necessary.  But I don't believe that

24  I need to spend any time now prejudging that issue.

25          So I think that concludes my decision on the

PROCEEDINGS                                    35

1   various in limine motions filed by the parties, but I do

2   have a few other administrative items that I want to deal

3   with while I have the parties on the line.

4          The first involves the trial schedule.  As the

5   parties may recall, one of the issues that I had in terms of

6   scheduling was a large criminal trial that was backing up at

7   the end of your trial.  But it now looks like that trial is

8   going to completely plead out, and I'll know more -- I

9   should have a definitive answer on that by early next week.

10  So assuming that that case goes away, what I intend to do is

11  to start the trial not on the 6th of January, but on

12  January 13th.  I think that's more fair for the jurors.  I

13  don't see any problem for the parties since you had this

14  whole period of time blocked anyway, and that way there's

15  not a break with having to take that Thursday and Friday

16  off.  That was a calendar issue on my part that came up

17  after our conference.  So I'm letting you know now that I'm

18  likely going to move the start date of the trial from

19  January 6th to January 13th, but I will let you know early

20  next week when I'm certain of that.

21         Any questions on that issue?

22         MR. C. PEARSON:  No, Your Honor.

23         THE COURT:  Who was that, please?

24         MR. C. PEARSON:  It's Clifford Pearson for the

25  plaintiff.

PROCEEDINGS                                      36

1              No, Your Honor.  Will that alter the pretrial

2    hearing date?

3              THE COURT:  No, we'll keep the conference date as

4    is.

5              MR. C. PEARSON:  Okay, great.  Regarding the

6    conference date, Your Honor, if I may just ask one

7    question --

8              THE COURT:  Who is that again?

9              MR. C. PEARSON:  This is Clifford Pearson for

10   NASL.

11             Regarding the Pretrial Conference date, to those

12   traveling back to the West Coast, do you have an anticipated

13   time period as to how long that's going to last?

14             THE COURT:  What time is it scheduled for?

15             MR. C. PEARSON:  2 p.m.

16             THE COURT:  2 p.m.?  I guess that depends on you,

17   right?  Hold on.  Let me just pull up my calendar.  Just

18   give me one second.

19             I mean, if it helps the travelers, I can start

20   that conference earlier.  Why don't the parties meet and

21   confer on that and then just reach out to Mr. Neptune, my

22   deputy.  The only thing I have is something mid-morning on a

23   criminal matter, and I think some of you have already

24   arranged with Mr. Neptune to sort of walk through that day

25   for your technology people, but that can always be moved.

PROCEEDINGS                        37

1   So I'm more than happy to accommodate the lawyers' schedules

2   with travel.  So just coordinate among yourself and let

3   Mr. Neptune know and we'll make that so that you can get out

4   of here earlier.

5                MR. C. PEARSON:  Clifford Pearson again.

6                Thank you very much, Your Honor.  And may I ask

7   how long you're available to us to start?  And then we'll

8   talk among the parties.

9                THE COURT:  Probably I can start at noon, because

10  I think I have a criminal matter at 11:00.  Given how much

11  we've done already with in limine motions, given what you

12  know already about my jury selection process, and I might as

13  well sort of tell you, I've also been thinking that given

14  that we'll be in January, in the midst of flu season, I'm

15  probably going to opt for a jury of ten as opposed to eight,

16  but I'm still giving that some thought.  That doesn't really

17  affect -- that just means that we have to qualify a panel of

18  16, which is not much different than to qualify a panel of

19  14.

20               So that's where my thinking is now.  So that's

21  just something for you to think about.  I'm just worried if

22  we're going to go three to four weeks right in the height of

23  flu season, that people can start dropping off.  So that's

24  my thinking right now.  But, I mean, I don't anticipate a

25  lot more.

PROCEEDINGS                                      38

1          Let me get to my second point, because maybe that

2     will inform how much needs to be done at that conference.  I

3     mean, there obviously appears to be a lot of pretrial work

4     that the parties are still coordinating among themselves.

5     And you said in the Joint Pretrial Order that you are not

6     requesting a ruling on the objections and responses on your

7     exhibit list and were working to narrow those disputes.  I

8     mean, I took a look at that exhibit list.  It's actually not

9     very helpful for me.  There are, by my count -- let me just

10    look -- 87 joint exhibits that I'm happy to pre-admit, and

11    the more joint exhibits that you submit to me, I'm happy to

12    pre-admit those so that at trial you can just start talking

13    about them and publish them without any need to offer them

14    for admission.

15         But there are literally hundreds, if not maybe

16    1,000 objections on the other probably 1,500 exhibits

17    between plaintiffs and defendants total.  And just as a

18    simple matter of how many days and hours there are left

19    between now and whatever that is, January 13th if that's

20    when we start, I can't imagine how I'm expected to rule on

21    those objections, right?  I definitely have been, I think,

22    compared to other civil cases, flexible in the amount of in

23    limine briefing that I've allowed the parties.  I'm not

24    going to be entertaining more in limine motions.  I mean,

25    that's it.

PROCEEDINGS                                        39

1          So any other objections I'm going to resolve at

2    trial.  And I'm giving thought on how I'm going to allocate

3    the time to resolve those objections, if they require

4    sidebars, and which party is going to have the clock run

5    against them for the objection.  I haven't sort of thought

6    about that yet.  But I'm just trying to be as transparent as

7    possible that the more time we spend during the trial

8    hammering out objections -- and I'm more than happy to look

9    at a document and say admitted or not admitted.  I feel

10   pretty comfortable doing that.  But if we start requiring

11   lengthy sidebars, then I'm going to start allocating time

12   from your trial time to those sidebars.  I've got to think

13   about how I'm going to do that, but I'm certainly going to

14   do that.  So that's something for you to be thinking about.

15         MS. COLE:  Your Honor, Eva Cole for NASL.

16         If I may, I mean, to the objections, just to give

17   Your Honor a sense of what the parties have been doing and

18   where we are on this, so we've been conferring to narrow the

19   exhibit objections.  We expect to exchange one of set of

20   narrow objections by early next week.  Our collective

21   thinking was that then each side would wish to present kind

22   of a very small number of key exhibit objection disputes to

23   the Court for resolution in advance of the trial, and we

24   hope to do that in a very streamlined way to allow it to be

25   very efficient and we would hope to be able to accomplish

PROCEEDINGS                           40

1   that relatively soon, if that would be amenable to Your

2   Honor.

3           THE COURT:  So, Ms. Cole, you're telling me you

4   now want a third round, basically, of in limine practice?

5           MS. COLE:  Well, it would really be very targeted

6   on specific exhibits and it would be organized by, you know,

7   the type of objection that we have.  Just, you know, I'll

8   give Your Honor an example.  So there are some disputes, for

9   example, about whether certain communications qualify as

10  co-conspirator party admissions under 801.  There are

11  certain objections about whether defendants can use certain

12  documents from Traffic's and Davidson's criminal cases,

13  which our position is they have nothing to do with NASL and

14  are limited by your Court's previous ruling on that.  So

15  those are the types of things that we thought would be

16  actually efficient to handle in advance of trial.

17          THE COURT:  And when you say "limited," what do

18  you mean by "limited" and what am I going to see?  Am I

19  going to get another 20-page brief from each side?

20          MS. COLE:  We do not have to do any briefing if

21  Your Honor does not want that.  We could just, you know,

22  kind of present a chart in a streamlined fashion along with

23  the set of exhibits that we would ask Your Honor to rule on

24  in advance.

25          THE COURT:  All right.  You can do that if you --

PROCEEDINGS                                    41

1  since it's on the phone, you can't see my facial expression,

2  but my facial expression is one of frustration, all right?

3  So take that for what it's worth.

4         When do you plan to do this?

5         MS. COLE:  We can confer with the other side, Your

6  Honor, and let you know.

7         THE COURT:  All right.  So let me know when you

8  plan to do this.  And that, I guess, segues --

9         Yes?  Who is that speaking?

10        MR. YATES:  I'm sorry, Your Honor.  It's Chris

11  Yates from Latham & Watkins.

12        THE COURT:  Yes, Mr. Yates?

13        MR. YATES:  Defendants haven't agreed to the

14  process that Ms. Cole just identified.  I think that, you

15  know, we've gotten a lot of guidance today regarding Your

16  Honor's thinking on what is and is not likely to be

17  admitted.  And so I would propose the parties take a day,

18  consider what Your Honor has ruled on, and then try to meet

19  and confer and do what we can with the exhibits and try to

20  move some more into the joint exhibit category, because I

21  agree with Your Honor that my strong preference is to be

22  able to publish things as quickly as possible.

23        The other thing I would say, Your Honor, just on

24  pretrial is we're supposed to submit narrow deposition

25  designations to Your Honor I believe tomorrow.  I think, you

PROCEEDINGS                                    42

1   know, the parties would probably benefit, given today's in

2   limine rulings, from a bit more time to submit those so that

3   we can cut things that have been excluded by Your Honor's

4   rules here today.

5          THE COURT:  Mr. Yates, that makes perfect sense to

6   me.  Next Friday, is that good enough?

7          MR. YATES:  That's fine.  We could probably even

8   do it Wednesday, but if --

9          THE COURT:  Friday's fine.

10         MR. YATES:  Perhaps Friday is safer.

11         THE COURT:  That was going to be my next point,

12  which is if the dispute over deposition designation looks

13  anything like the exhibit list, that's going to also present

14  a huge problem.  In any event, when you do present me with

15  the designations, if you could provide -- I'm not sure we've

16  talked about this before -- but if you could provide me with

17  three hard copy sets in color so I could see them, and then

18  also do electronic.  But just as courtesy copies, provide

19  the disputes.

20         I don't need anything that the parties have agreed

21  to, unless you think I need to see it for context and it

22  makes sense to print it that way, otherwise I would just

23  want to see what you are disputing.  But I'll leave that to

24  your best judgment in terms of how many trees to save.

25         Any questions on that?

PROCEEDINGS                    43

1          MR. YATES:  This is Chris Yates.

2          Thank you, Your Honor.

3          THE COURT:  Any questions on that?

4          All right.  So I've looked at your preliminary

5    instructions.  I'm telling you now that my preliminary

6    instructions are not going to do anything close to what

7    either side is asking for in terms of explaining the law.  I

8    will use some version of your summary of the case and try to

9    be as anodyne and neutral as possible.  But I am not going

10   to go into things like the purpose of the Sherman Act and --

11   I think in all the cases you cited, both sides, to me on

12   this, I don't think any of those were from a Court giving

13   that as a preliminary instruction.  If I misread that, let

14   me know, but I think everything you were giving me were

15   final jury instructions, which I obviously will consider for

16   the final jury instructions.

17          But for the preliminary instructions, my

18   preliminary instructions are pretty anodyne and neutral

19   about the case, and I'm just telling the jury basically what

20   they're going to be expecting and that's it.  So don't

21   expect my preliminary instructions to delve into the law

22   here in any respect.

23          Then with respect to the voir dire questions, I've

24   looked at those.  I am going to accept some of those.  I'm

25   not sure yet what those are.  I normally don't share that

PROCEEDINGS                    44

1   with the parties, but let me see where they are and when,

2   and then if I share them, obviously I'll share them with

3   everyone.

4          Let me just look at my notes to make sure there

5   was nothing else.

6          I think that was it.  Obviously to the extent you

7   need to submit any orders for whoever's going to be in court

8   with electronics and computers and stuff, just try to get

9   that in as early as possible and I'll turn that around so

10  there are no logistical issues.

11         Anything else while you have me?  And identify

12  yourself just so the reporter knows, please.

13         MR. C. PEARSON:  Clifford Pearson.

14         Nothing, Your Honor.

15         THE COURT:  Okay.

16         MR. YATES:  Chris Yates.

17         Nothing, Your Honor.  Thank you for your time.

18         THE COURT:  Mr. Ruskin?

19         MR. RUSKIN:  Nothing, Your Honor.  Thank you.

20         THE COURT:  So tomorrow I'm getting -- what am I

21  getting from you tomorrow?  Or is everything now pushed?

22         MR. YATES:  Your Honor, Chris Yates.

23         I believe it probably makes sense to push it to

24  next Friday and then we'll get you the narrowed -- further

25  narrowed deposition designations that comply with the orders

PROCEEDINGS                                    45

1    here today.

2            THE COURT:  No, that's fine.  But were proposed

3    final jury instructions due tomorrow as well, and the

4    proposed verdict sheet?

5            MR. YATES:  Chris Yates.

6            Yes, Your Honor.

7            THE COURT:  Is that still on track?

8            MR. YATES:  Chris Yates.

9            I believe so, Your Honor.  You know, certainly I

10   think we can submit those tomorrow so Your Honor can begin

11   looking at them.

12           THE COURT:  Okay.  That would be helpful.  Very

13   good.

14           All right.  Thank you, everyone.  Have a good day.

15           (Matter adjourned.)

16

17                          *   *   *

18

19                  CERTIFICATE OF REPORTER

20

21   I certify that the foregoing is a correct transcript of the

     record of proceedings in the above-entitled matter.

22

23

      /s/ Kristi Cruz
24   _____
     Kristi Cruz RMR, CRR, RPR
25   Official Court Reporter