# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| NORTH AMERICAN SOCCER LEAGUE, LLC,<br><br>        Plaintiff,<br><br>  v.<br><br>UNITED STATES SOCCER FEDERATION, INC., and MAJOR LEAGUE SOCCER, L.L.C.,<br><br>        Defendants. | Case No. 1:17-cv-05495-HG<br><br>**DEFENDANTS UNITED STATES SOCCER FEDERATION, INC. AND MAJOR LEAGUE SOCCER, L.L.C.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A NEW TRIAL UNDER FEDERAL RULE OF CIVIL PROCEDURE 59** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

LEGAL STANDARD.............................................................................................2

ARGUMENT .........................................................................................................2

I.     The Court Correctly Required NASL To Prove One Of Its Relevant Markets ................2

     A.     NASL's Claims Required Proof Of A Relevant Market .......................................3

          1.     NASL's Section 1 Claim Required Proof Of A Relevant Market ..............3

               a.     NASL Did Not Bring A *Per Se* Case ...............................................3

               b.     Under The Rule Of Reason, NASL Must Prove A Market ............5

          2.     NASL's Section 2 Conspiracy To Monopolize Claim Required Proof Of A Relevant Market.......................................................................8

          3.     NASL's Section 2 Monopolization And Attempted Monopolization Claims Required Proof Of A Relevant Market ..............11

     B.     NASL Waived Any Argument That It Need Not Prove A Relevant Market ........13

II.     The Court Correctly Allowed Defendants To Challenge NASL's Purported Markets ...............................................................................................................15

III.     The Court Correctly Admitted Evidence Relating To Rocco Commisso And To Traffic Sports ...............................................................................................18

     A.     The Court Correctly Admitted Commisso's Tweets ............................................18

     B.     The Court Correctly Admitted Evidence Of Commisso's Litigation Funding ...............................................................................................................19

     C.     The Court Correctly Admitted Evidence Related To Traffic Sports ....................20

IV.     The Court Need Not Address NASL's Other Claimed "Erroneous Evidentiary Rulings" ...............................................................................................................22

     A.     The Court Correctly Excluded Evidence Regarding The 2015 Proposed Amendments To The Professional League Standards ..........................................22

     B.     The Court Correctly Excluded The McKinsey Report .........................................23

C. The Court Correctly Excluded Portions Of Dr. Williams's Division 1 Damages Opinions And Could Have Excluded Him Entirely ..............................23

V. The Court Could Have Granted Defendants' Rule 50 Motion Even If The Jury Had Found In NASL's Favor ........................................................................................25

CONCLUSION ........................................................................................................................25

**CASES**

*1-800 Contacts, Inc. v. FTC*,
  1 F.4th 102 (2d Cir. 2021) ...................................................................................3

*ABKCO Music v. Sagan*,
  50 F.4th 309 (2d Cir. 2022) .................................................................................2

*Abraham & Veneklasen J.V. v. Am. Quarter Horse Ass'n*,
  776 F.3d 321 (5th Cir. 2015) ..............................................................................25

*AD/SAT v. Assoc. Press*,
  181 F.3d 216 (2d Cir. 1999)................................................................................25

*Air China Ltd. v. Li*,
  2010 WL 3260154 (S.D.N.Y. Aug. 5, 2010), *aff'd sub nom. Air China, Ltd. v.
  Kopf*, 473 F. App'x 45 (2d Cir. 2012)................................................................25

*Arizona v. California*,
  460 U.S. 605 (1983)..........................................................................................4, 5

*Auraria Student Hous. at the Regency v. Campus Village Apartments, LLC*,
  843 F.3d 1225 (10th Cir. 2016) .......................................................................9, 10

*Avaya, Inc. v. Telecom Labs*,
  2009 WL 2928927 (D.N.J. Sept. 9, 2009) ...........................................................5

*Bill Beasley Farms, Inc. v. Hubbard Farms*,
  695 F.2d 1341 (11th Cir. 1983) ..........................................................................10

*Brader v. Allegheny Gen. Hosp.*,
  64 F.3d 869 (3d Cir. 1995)..................................................................................10

*Cap. Imaging Assocs. v. Mohawk Valley Med. Assocs.*,
  996 F.2d 537 (2d Cir. 1993)..................................................................................3

*Carroll v. Trump*,
  124 F.4th 140 (2d Cir. 2024) ..............................................................................19

*Chapman v. N.Y. St. Div. for Youth*,
  546 F.3d 230 (2d Cir. 2008)................................................................................10

*City of New York v. Grp. Health Inc.*,
  649 F.3d 151 (2d Cir. 2011)................................................................................16

*Clear Connection Corp. v. Comcast Cable Commc'ns Mgmt. LLC*,
    2020 WL 6742889 (E.D. Cal. Nov. 17, 2020) .........................................................5

*Concord Assocs., L.P. v. Ent. Props. Tr.*,
    2014 WL 1396524 (S.D.N.Y. Apr. 9, 2014), *aff'd*, 817 F.3d 46 (2d Cir. 2016) ...................10

*Concord Assocs., L.P. v. Ent. Props. Tr.*,
    817 F.3d 46 (2d Cir. 2016) ..................................................................................12

*Deutscher Tennis Bund v. ATP Tour, Inc.*,
    610 F.3d 820 (3d Cir. 2010) .................................................................................4

*Dickson v. Microsoft Corp.*,
    309 F.3d 193 (4th Cir. 2002) ...............................................................................10

*Dr.'s Hosp. of Jefferson, Inc. v. Se. Med. All., Inc.*,
    123 F.3d 301 (5th Cir. 1997) ...............................................................................10

*Elec. Commc'ns Corp. v. Toshiba Am. Consumer Prods.*,
    129 F.3d 240 (2d Cir. 1997) ..............................................................................9, 10

*Emigra Grp. v. Fragomen, Del Rey, Bernsen & Loewy, LLP*,
    612 F. Supp. 2d 330 (S.D.N.Y. 2009) ................................................................9, 10

*Fraser v. Major League Soccer, L.L.C.*,
    284 F.3d 47 (1st Cir. 2002) ...........................................................................4, 6, 7, 10

*FTC v. Indiana Federation of Dentists*,
    476 U.S. 447 (1986) .............................................................................................7

*Geneva Pharms. Tech Corp. v. Barr Lab. Inc.*,
    386 F.3d 485 (2d Cir. 2004) .................................................................................7

*Heerwagen v. Clear Channel Commc'ns*,
    435 F.3d 219 (2d Cir. 2006) ...............................................................................12

*Hudson Valley Asbestos Corp. v. Tougher Heating & Plumbing Co.*,
    510 F.2d 1140 (2d Cir. 1975) ...............................................................................9

*In re Ciprofloxacin Hydrochloride Antitrust Litig.*,
    363 F. Supp. 2d 514 (E.D.N.Y. 2005) ...................................................................7

*In re Set-Top Cable Television Box Antitrust Litig.*,
    2011 WL 1432036 (S.D.N.Y. Apr. 8, 2011) ............................................................7

*In Re Zinc Antitrust Litig*,
    155 F. Supp. 3d 337 (S.D.N.Y. 2016) ..................................................................10

*Jessup v. Am. Kennel Club, Inc.*,
    61 F. Supp. 2d 5 (S.D.N.Y. 1999), *aff'd on dist. ct. op.*, 210 F.3d 111 (2d Cir.
    2000) ........................................................................................................................25

*Kreager v. Gen. Elec. Co.*,
    497 F.2d 468 (2d Cir. 1974)....................................................................................10

*MacDermid Printing Sols. LLC v. Cortron Corp.*,
    833 F.3d 172 (2d Cir. 2016)..................................................................................6, 25

*Merced Irrigation v. Barclays Bank*,
    165 F. Supp. 3d 122 (S.D.N.Y. 2016)....................................................................12

*NASL v. U.S. Soccer*,
    883 F.3d 32 (2d Cir. 2018)...............................................................1, 3, 5, 6, 7, 25

*Nat'l Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club*,
    325 F.3d 712 (6th Cir. 2003) ...................................................................................4

*NCAA v. Alston*,
    594 U.S. 69 (2021).................................................................................1, 4, 6, 8, 16

*Newton v. City of New York*,
    171 F. Supp. 3d 156 (S.D.N.Y. 2016)....................................................................18

*Ohio v. Am. Express*,
    585 U.S. 529 (2018)...............................................................................................7, 8

*On Track Innovations v. T-Mobile USA*,
    106 F. Supp. 3d 369 (S.D.N.Y. 2015)....................................................................24

*PepsiCo, Inc. v. Coca-Cola Co.*,
    315 F.3d 101 (2d Cir. 2002)................................................................................11, 12

*Raedle v. Credit Agricole Indosuez*,
    670 F.3d 411 (2d Cir. 2012)......................................................................................2

*Re/Max Int'l, Inc. v. Realty One, Inc.*,
    173 F.3d 995 (6th Cir. 1999) ..................................................................................13

*Shak v. JPMorgan Chase Co.*,
    156 F. Supp. 3d 462 (S.D.N.Y. 2016)....................................................................12

*Spectrum Sports, Inc. v. McQuillan*,
    506 U.S. 447 (1993)..........................................................................1, 9, 10, 11, 12

*Staton v. Nucor Steel Hertford*,
    2005 WL 6218141 (E.D.N.C. June 28, 2005) .......................................................23

*Teamsters Local 445 Freight Div. v. Bombardier Inc.*,
546 F.3d 196 (2d Cir. 2008)........................................................................12

*Tesser v. Bd. of Educ.*,
370 F.3d 314 (2d Cir. 2004)........................................................................18

*United States v. Abel*,
469 U.S. 45 (1984)........................................................................19

*United States v. Awadallah*,
436 F.3d 125 (2d Cir. 2006)........................................................................18, 19

*United States v. Consolidated Laundries Corp.*,
291 F.2d 563 (2d Cir. 1961)........................................................................8

*United States v. Grinnell Corp.*,
384 U.S. 563 (1966)........................................................................11

*United States v. Quinones*,
511 F.3d 289 (2d Cir. 2007)........................................................................13

*United States v. Sancho*,
157 F.3d 918 (2d Cir. 1998)........................................................................21

*United States v. Smith*,
778 F.2d 925 (2d Cir. 1985)........................................................................22

*United States v. Spruill*,
808 F.3d 586 (2d Cir. 2015)........................................................................13

*United States v. Visa U.S.A., Inc.*,
344 F.3d 229 (2d Cir. 2003)........................................................................8

*United States v. Yellow Cab Co.*,
332 U.S. 218 (1947)........................................................................9

*US Airways, Inc. v Sabre Holdings Corp.*,
938 F.3d 43 (2d Cir. 2019)........................................................................6

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
956 F.2d 1245 (2d Cir. 1992)........................................................................4

*Walker v. Raja*,
2023 WL 6390162 (E.D.N.Y. Sept. 30, 2023)........................................................................18

*Warrior Sports, Inc. v. NCAA*,
623 F.3d 281 (6th Cir. 2010)........................................................................22

*Zsa Zsa Jewels, Inc. v. BMW of N. Am., LLC,*
    2022 WL 2315977 (E.D.N.Y. June 27, 2022) .......................................................................18

## STATUTES

15 U.S.C. § 2.........................................................................................................................9

## RULES

Fed. R. Civ. P. 61 ................................................................................................................19

## OTHER AUTHORITIES

*Bribe*, Oxford English Dictionary, https://www.oed.com/dictionary/bribe_n..............................21

**INTRODUCTION**

After a three-week trial, the jury rejected NASL's Sherman Act claims because NASL failed to prove any of its four alleged relevant markets. ECF No. 538. That was unsurprising: NASL's made-for-litigation markets never had any basis in the real world. The jury rightly determined that NASL's case fell at the first hurdle.

NASL does not meaningfully contest its failure of proof. Instead, it claims that it should not have had to prove a relevant market at all. NASL now contends that requiring the jury to find "that one of NASL's relevant markets existed" was a "serious error of law that was directly contrary to federal antitrust law." ECF No. 545-1 at 1 ("Br."). But less than four months ago, NASL itself argued that the jury "ha[d] to find at least one relevant market" for it to prevail on any of its claims. Yates Decl., Ex. A, Hr'g Tr. at 22 ("Pretrial Tr."). NASL's current disclaimer of the need to prove any relevant markets is yet another attempt to "shape-shift out of its own position." ECF No. 532 at 7.

More importantly, NASL is wrong. Antitrust law is crystal clear that, in a rule of reason case, a plaintiff must prove a relevant market. *See NCAA v. Alston*, 594 U.S. 69, 93 (2021) ("Whether an antitrust violation exists necessarily depends on a careful analysis of market realities."). Indeed, the Second Circuit held—*in this case*—that a Section 1 claim under the rule of reason requires proof of "an adverse effect on competition in the relevant market." *NASL v. U.S. Soccer*, 883 F.3d 32, 42 (2d Cir. 2018). And the Supreme Court has termed it "beyond doubt" that Section 2 claims require proof of a relevant market. *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 457 (1993). NASL tries to duck the relevant market requirement by claiming that the Court should have permitted it to proceed with a *per se* case. But the Second Circuit already rejected that gambit when it held that the "[r]egulation of league sports is a textbook example of when the rule of reason applies." *NASL*, 883 F.3d at 41.

NASL's other arguments fare no better. NASL complains that it was improper for Defendants to highlight the inconsistency between NASL's fictitious markets (supported only by the *ipse dixit* of its expert) and actual evidence regarding marketplace realities. But that is precisely what trials are for. NASL also cannot show that the admission of highly probative evidence regarding Mr. Commisso's bias and Traffic Sports was an abuse of discretion or warrants a new trial (an even higher burden). NASL concedes that its other claimed evidentiary "errors"—the exclusion of irrelevant evidence and unreliable expert testimony—had no relation to the jury's verdict and thus are not even grounds for a new trial. And there was no error. Rather, as was confirmed by the jury's verdict, there was an abject failure by NASL to prove its case.

The jury got it right. No error by this Court caused that result. Just as NASL has no one to blame but itself for its failure as a league, it has no one to blame but itself for bringing a meritless case. Its motion for a new trial should be denied.

## LEGAL STANDARD

"[J]ury verdicts should be disturbed with great infrequency." *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012). Motions for a new trial "ordinarily should be denied 'unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'" *ABKCO Music v. Sagan*, 50 F.4th 309, 324 (2d Cir. 2022).

## ARGUMENT

## I. THE COURT CORRECTLY REQUIRED NASL TO PROVE ONE OF ITS RELEVANT MARKETS

NASL's lead argument is that the Court erred in requiring NASL to prove at least one of its relevant markets. Br. 6–12. That is flatly wrong. Each one of NASL's antitrust claims required proof of a relevant market, and NASL waived any argument to the contrary.

### A. NASL's Claims Required Proof Of A Relevant Market

#### 1. NASL's Section 1 Claim Required Proof Of A Relevant Market

NASL's Section 1 claim did not merit *per se* treatment. And under the rule of reason, NASL was required to prove one of its relevant markets at trial.

##### a. NASL Did Not Bring A *Per Se* Case

NASL contends that "*per se* analysis should apply" to its Section 1 claim. Br. 9. That is wrong twice over: NASL did not bring a *per se* case, and the law of the case bars NASL from raising this argument now.

***Merits.*** NASL's Section 1 claim is not susceptible to *per se* treatment. A *per se* violation occurs "only … where a defendant's actions are so plainly harmful to competition and so obviously lacking in any redeeming pro-competitive values that they are 'conclusively presumed illegal without further examination." *Cap. Imaging Assocs. v. Mohawk Valley Med. Assocs.*, 996 F.2d 537, 542 (2d Cir. 1993). This designation "is saved for certain types of restraints, e.g., geographic division of markets or horizontal price fixing, that have been established over time to 'lack … any redeeming virtue." *1-800 Contacts, Inc. v. FTC*, 1 F.4th 102, 114–15 (2d Cir. 2021). "Most cases fall outside these narrow, carefully demarcated categories." *Cap. Imaging*, 996 F.2d at 543.

In this very case, the Second Circuit noted that the "regulation of league sports is a textbook example of when the rule of reason applies" and rejected NASL's attempt to invoke "cases where courts were confronted with per se illegal practices." *NASL*, 883 F.3d at 41, 44 (2d Cir. 2018). The Second Circuit reasoned that U.S. Soccer's "voting procedures and early history are a far cry from the collusive activity that would warrant per se antitrust analysis," distinguishing the cases that NASL continues to cite. *Compare id.*, *with* Br. 8–9 & n.7. And it held, in no uncertain terms, that "the full rule-of-reason analysis applies" in this case. *NASL*, 883 F.3d at 42. NASL's continued argument to the contrary—redeployed now in an attempt to secure a new trial after

3

having failed to prove its rule of reason case—is baseless.

Indeed, courts have unequivocally held that the rule of reason applies to sports governing bodies and have repeatedly rejected *per se* treatment in this context. For example, in *NCAA v. Alston*, the Supreme Court considered a suit that "involve[d] admitted horizontal price fixing [i.e., limits on student-athlete compensation] in a market where the defendants exercise monopoly control." 594 U.S. 69, 86 (2021). Even there, the Supreme Court rejected the application of the *per se* rule and applied the rule of reason. *See id.* at 88–92. Similarly, in *Fraser v. Major League Soccer, L.L.C.*, the First Circuit considered a challenge to early MLS rules on player employment and salaries and held that "rejection of the *per se* rule [was] straightforward." 284 F.3d 47, 59 (1st Cir. 2002). These cases are part of the legion of authorities rejecting *per se* treatment of challenges to the rules of sports leagues and governing bodies. *See, e.g.*, *Deutscher Tennis Bund v. ATP Tour, Inc.*, 610 F.3d 820, 831–33 (3d Cir. 2010) (holding that "the *per se* rule does not apply" to a tennis tour and collecting other sports cases); *Nat'l Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 719 (6th Cir. 2003) (rejecting *per se* analysis of hockey-league rule).

***Law of the Case.*** Both this Court (through three different judges) and the Second Circuit (unanimously) have rejected NASL's arguments that either quick look or *per se* rules apply in this case. The law of the case doctrine, which posits that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages" of litigation, *Arizona v. California*, 460 U.S. 605, 618 (1983), controls. "[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).

At the preliminary injunction stage, NASL also argued that "quick-look" analysis applied. ECF No. 3-1 at 19–21. Chief Judge Brodie "decline[d] to apply the quick look test," and applied

the rule of reason. ECF No. 49 at 35–36. On appeal, NASL argued that the court erred in not applying a quick look. The Second Circuit rejected the argument, observing that the Professional League Standards were "far from being obviously anticompetitive." *NASL*, 883 F.3d at 41–42.

Undeterred, at summary judgment NASL once again argued for *per se* or quick-look analysis. ECF No. 293 at 38. In its motion for summary judgment, NASL vowed that "[i]f the Court does not hold that the per se rule or quick look test applies on this motion, NASL would proceed to prove a full rule of reason violation at trial with expert evidence addressing the market definition and market power issues." *Id.* at 38 n.15. Judge Cogan's opinion applied the rule of reason, satisfying the condition NASL placed on itself. ECF No. 399 at 54–57.

Despite striking out on this argument multiple times, NASL took yet another swing in the jury instructions, arguing again that it was "entitled to present its Section 1 claim to the jury on a per se theory." ECF No. 474 at 56. NASL thus walked away without explanation from the representation it made to the Court at summary judgment. This Court squarely rejected NASL's theory once again. *Compare id.* at 49–57 (NASL arguing for per se instruction), *with* ECF No. 531 at 27 (Court instructing jury that "you must apply what is called the 'rule of reason'").

Because this Court has "decide[d] upon a rule of law," its prior decisions "continue[] to govern." *Arizona*, 460 U.S. at 618. The law of the case thus precludes NASL from raising this theory in a motion for new trial. *See, e.g.*, *Clear Connection Corp. v. Comcast Cable Commc'ns Mgmt. LLC*, 2020 WL 6742889, at *3–4 (E.D. Cal. Nov. 17, 2020) ("the law of the case requires the rule of reason analysis be applied"); *Avaya, Inc. v. Telecom Labs*, 2009 WL 2928927, at *12 (D.N.J. Sept. 9, 2009) (finding that "a Rule of Reason analysis is appropriate" was "a legal conclusion, which cannot be disturbed under the law of the case doctrine").

### b. Under The Rule Of Reason, NASL Must Prove A Market

NASL is simply wrong that it was "serious error" to require NASL to prove its "claimed

relevant markets" to prevail on its Section 1 claim and that "[n]o such legal requirement exists." Br. 6. "Whether an antitrust violation exists necessarily depends on a careful analysis of market realities." *Alston*, 594 U.S. at 93. The Second Circuit has held repeatedly—including *in this very case*—that proving a relevant market is required for a Section 1 claim, holding that "a plaintiff bears the initial burden of demonstrating that a defendant's challenged behavior can have an adverse effect on competition in the relevant market." *NASL*, 883 F.3d at 42. Even when a plaintiff makes that showing with direct evidence, it still must "show[] an 'actual adverse effect on competition as a whole *in the relevant market*.'" *Id.* (emphasis added).

In other rule of reason cases, too, the Second Circuit has held that proof of a relevant market is required. *See, e.g.*, *MacDermid Printing Sols. LLC v. Cortron Corp.*, 833 F.3d 172, 182 (2d Cir. 2016) (There is "only one way to prove an adverse effect on competition under the rule of reason: by showing actual harm to consumers *in the relevant market*." (emphasis added)); *US Airways, Inc. v Sabre Holdings Corp.*, 938 F.3d 43, 55 (2d Cir. 2019) ("The first step of the rule of reason analysis, then, requires the identification of the 'consumers in the relevant market,' i.e., the market in which the anticompetitive effects of the challenged restraint are to be measured.").

*Fraser* reached the same conclusion. There, the plaintiffs brought Section 1 and Section 2 claims against MLS, its operator-investors, and U.S. Soccer relating to "MLS's control over player employment." 284 F.3d at 53–55. The district court granted summary judgment to MLS and its operator-investors on the Section 1 claim, finding that they comprised a single entity and therefore could not conspire under Section 1. *Id.* at 55. The Section 2 claims proceeded to a three-month trial, after which a jury found that the plaintiffs failed to prove their alleged relevant markets for the Section 2 claims. *Id.* The First Circuit affirmed the judgment on the Section 1 claim because "as structured by plaintiffs themselves, this case would have been lost at trial based on the jury's

rejection of plaintiffs' own market definition." *Id.* at 59.[1]  Rejecting a *per se* theory, the First

Circuit held that "[a]s in any other non-*per se* case," the plaintiffs would have to show "significant

power *in a properly defined market*" and that "the practices in question adversely affected

competition *in that market*." *Id.* at 59 (emphases added).

NASL's argument (at 6–8) that a direct showing of anticompetitive harm "can obviate the

need for an inquiry" into relevant markets is another transparent attempt to import quick look or

*per se* principles into this rule of reason case.  NASL quotes *FTC v. Indiana Federation of Dentists*,

476 U.S. 447 (1986), for its position that it need not prove a relevant market.  But that case is

representative of "an abbreviated, 'quick look' version of the rule of reason." *NASL*, 883 F.3d at

41.  And, *in this very case*, the Second Circuit distinguished *Indiana Federation* and held that "the

full rule-of-reason analysis applies." *Id.* at 42.  NASL's argument is squarely foreclosed.[2]

Nor does NASL's citation (at 6–7) to a footnote in *Ohio v. American Express*, 585 U.S.

529, 543 n.7 (2018) move the needle.  There, the Court explained why *Indiana Federation* was

inapplicable to vertical restraints.  Contrary to NASL's contention, the Court did *not* hold that a

plaintiff claiming a horizontal restraint never has to define a relevant market.  Regardless, this case

---

[1] The *Fraser* plaintiffs had alleged—for both their Section 1 and 2 claims—that the relevant geographic market was the United States and the relevant product market was Division 1 professional soccer players.  *Id.* at 55, 60.  The jury "returned its verdict after answering only the first two questions" of a "15-question special verdict form," finding that plaintiffs had failed to prove their alleged markets.  *Id.* at 55.  The First Circuit accordingly held that "had the district court allowed the section 1 claim, it too would have been defeated by the jury's finding that the market alleged in the complaint had not been proved." *Id.* at 60–61.

[2] NASL's other citations (Br. 7) are similarly inapposite, and only contradict its position. *See In re Set-Top Cable Television Box Antitrust Litig.*, 2011 WL 1432036, at *5 (S.D.N.Y. Apr. 8, 2011) ("A Sherman Act complaint must allege a relevant product market and geographic market."); *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 363 F. Supp. 2d 514, 521 (E.D.N.Y. 2005) ("Traditionally, the starting point of an antitrust inquiry is the definition of the relevant market."); *Geneva Pharms. Tech Corp. v. Barr Lab. Inc.*, 386 F.3d 485, 496 (2d Cir. 2004) (noting that "[e]valuating market power [under Section 2] begins with defining the relevant market" and that "[t]his inquiry will also prove useful for analyzing the § 1 allegations because a market definition provides the context against which to measure the competitive effects of an agreement.").

does not involve a horizontal restraint. U.S. Soccer (as the national governing body for the sport of soccer) and MLS (a men's professional soccer league) are not competitors. *Am. Express*, 585 U.S. at 543 n.7 ("[H]orizontal restraints involve agreements between competitors not to compete in some way."). NASL's cases (at 7–8 & n.6) all involve a policy adopted by *competing members* of an organization that operated to restrict those members' ability to compete against one another for customers. *See, e.g.*, *Alston*, 594 U.S. at 86 (2021) (rules adopted by NCAA "horizontal price fixing" because NCAA "member schools compete fiercely for student-athletes"); *United States v. Visa U.S.A., Inc.*, 344 F.3d 229, 242 (2d Cir. 2003) (noting "competitors have agreed to abide by a restrictive exclusivity provision"); *see also* ECF No. 307 at 7–11, 21–23. That is not—and has never been—the case here, as no one involved with professional leagues voted on either of the sanctioning decisions at issue. ECF No. 525-1 at 8 ("Rule 50(a) Br.").

NASL was thus required to establish a relevant market to prevail on its Section 1 claim. The jury found that NASL failed to do so. NASL's evidence as to its alleged markets consisted of nothing more than the *ipse dixit* of its expert, unsupported by any actual market facts. The testimony NASL cites (at 8 n.7) is conclusory: NASL did not put a single document in front of Professor Noll, and nothing in the trial record supports his groundless theory. In fact, the Court could have easily granted Defendants' Rule 50 motion on this ground. As Defendants explained— and as was borne out by the jury verdict—the evidence throughout trial confirmed that market realities in no way supported NASL's proposed relevant markets. Rule 50(a) Br. 14–19.

## 2. NASL's Section 2 Conspiracy To Monopolize Claim Required Proof Of A Relevant Market

NASL's conspiracy to monopolize claim likewise required proof of a relevant market. In arguing to the contrary (Br. 10–12), NASL relies on an outdated statement in *United States v. Consolidated Laundries Corp.*, 291 F.2d 563, 572–73 (2d Cir. 1961), that market power is not an

"essential" element of such a claim. That statement no longer represents the state of the law.

Consolidated Laundries was based on United States v. Yellow Cab Co., which held that, to satisfy Section 2's requirement to "monopolize any part of the trade or commerce among the several States," 15 U.S.C. § 2 (emphasis added), it was "enough if some appreciable part of interstate commerce is the subject of a monopoly, a restraint or a conspiracy." 332 U.S. 218, 225 (1947). Some early cases interpreted Yellow Cab to mean that market power is not an "essential" element of a conspiracy to monopolize claim. Br. 11 (citing cases).

In Spectrum Sports v. McQuillan, the Supreme Court clarified its holding in Yellow Cab and firmly rejected "the notion that proof of unfair or predatory conduct alone is sufficient" under Section 2. 506 U.S. at 457. Instead, the Court held that Section 2 required "proof of the relevant market" and "monopoly power." 506 U.S. 447, 457–59 (1993).[3] While Spectrum Sports addressed an attempted monopolization claim, the Second Circuit has applied its holding to all Section 2 claims, holding that "the defendant's power in the relevant market must be established, to establish whether the defendant is a monopolist or is threatening to become one." Elec. Commc'ns Corp. v. Toshiba Am. Consumer Prods., 129 F.3d 240, 246 (2d Cir. 1997); see also Auraria Student Hous. at the Regency v. Campus Village Apartments, LLC, 843 F.3d 1225, 1237 (10th Cir. 2016) ("When examined through the lens provided by . . . Spectrum Sports, the decision in Yellow Cab cannot sustain a reading that dispenses with market identification in conspiracy-to-monopolize cases.").[4]

---

[3] Spectrum Sports noted that Yellow Cab construed Section 2's "any part" language not for "relevant market" purposes, but to suggest "that it is immaterial how large an amount of interstate trade is affected" to fall within Section 2's interstate commerce reach. Id. at 457 n.9.

[4] Each of the cases upon which NASL relies trace back to Yellow Cab or to Consolidated Laundries. Br. 11. But none of those cases dispenses with a relevant market analysis, and they in fact support Defendants on this point. See Hudson Valley Asbestos Corp. v. Tougher Heating & Plumbing Co., 510 F.2d 1140, 1144 (2d Cir. 1975) ("[T]he futility of any effort to monopolize either submarket as shown by the evidence . . . amply supports the finding of the district court."); Emigra Grp. v. Fragomen, Del Rey, Bernsen & Loewy, LLP, 612 F. Supp. 2d 330, 363 (S.D.N.Y.

NASL simply ignores that binding law. For decades, it has been clear that a plaintiff alleging a conspiracy to monopolize must prove a relevant market. *See, e.g., Chapman v. N.Y. St. Div. for Youth*, 546 F.3d 230, 237–38 (2d Cir. 2008) (affirming dismissal of conspiracy claim because "proposed relevant market clearly [did] not encompass all interchangeable substitute products"); *Elec. Commc'ns*, 129 F.3d at 246; *Kreager v. Gen. Elec. Co.*, 497 F.2d 468, 471 (2d Cir. 1974) ("[T]he monopolist must have both the power to monopolize, and the intent to monopolize the relevant market."); *Concord Assocs., L.P. v. Ent. Props. Tr.*, 2014 WL 1396524, at *20 (S.D.N.Y. Apr. 9, 2014) ("[W]ithout a definition of that market there is no way to measure the defendant's ability to lessen or destroy competition."), *aff'd*, 817 F.3d 46 (2d Cir. 2016).[5]

That makes sense for several reasons. *First*, Section 2's "any part" language does not distinguish between the three causes of action enumerated in the statute. And because it is "beyond doubt" that monopolization claims require proof of a relevant market, *Spectrum Sports*, 506 U.S. at 457, it is "equally apparent" that the "any part" language "does not excuse a plaintiff in a conspiracy-to-monopolize case from identifying a relevant market." *Auraria Student Hous.*, 843 F.3d at 1236. *Second*, to hold otherwise would render a conspiracy-to-monopolize claim an "oxymoron," as "one cannot monopolize something that does not exist." *Emigra*, 612 F. Supp. 2d at 363. Here, the jury found that NASL's claimed markets did not exist—so it would have been impossible for Defendants to possess a "specific intent" to monopolize them. And *third*, to

_____

2009) ("There quite plainly is no admissible evidence supporting the existence of the alleged Service Submarket, so the very notion of a conspiracy to monopolize it is an oxymoron—one cannot monopolize something that does not exist."); *see also In Re Zinc Antitrust Litig*, 155 F. Supp. 3d 337, 383 (S.D.N.Y. 2016) ("[T]he relevant market is the market for LME zinc warehouse services . . . [A]s with the other Section 2 claims, plaintiffs' conspiracy claim also lacks any explicit reference to the market for the sale of SHG zinc.").

[5] The rule is the same in other circuits. *See, e.g., Fraser*, 284 F.3d at 68; *Brader v. Allegheny Gen. Hosp.*, 64 F.3d 869, 877 (3d Cir. 1995); *Dickson v. Microsoft Corp.*, 309 F.3d 193, 211–13 (4th Cir. 2002); *Dr.'s Hosp. of Jefferson, Inc. v. Se. Med. All., Inc.*, 123 F.3d 301, 311 (5th Cir. 1997); *Bill Beasley Farms, Inc. v. Hubbard Farms*, 695 F.2d 1341, 1343 (11th Cir. 1983).

dispense with a relevant market would be "inconsistent with the policy of the Sherman Act," which "directs itself not against conduct which is competitive, even severely so, but against conduct which unfairly tends to destroy competition itself." *Spectrum Sports*, 506 U.S. at 458.

### 3. NASL's Section 2 Monopolization And Attempted Monopolization Claims Required Proof Of A Relevant Market

NASL contends that neither its monopolization nor its attempted monopolization claims required proof of a relevant market because it presented so-called "direct evidence" of MLS's ability to control prices or exclude competition. Br. 8, 12. That is wrong on the facts and the law.

On the facts, NASL presented no such direct evidence. Instead, NASL points to *U.S. Soccer's* ability to deny a sanction to a soccer league and deems that to be evidence of *MLS's* ability to "exclude competition." *See* Br. 8 & n.7, 12. But U.S. Soccer is not MLS, and MLS is the sole defendant on these two claims.[6] NASL attempts a familiar sleight of hand, saying it showed evidence of "*Defendants'* monopoly power to exclude competition through the anticompetitive application of the Standards." Br. 12 (emphasis added). The Court previously warned NASL about wrongly conflating the two Defendants in this way. *See* ECF No. 542 at 34 ("MIL Tr.").

On the law, NASL is also incorrect. It has long been settled that "[t]he offense of monopoly under § 2 of the Sherman Act" requires "the possession of monopoly power in the relevant market." *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966). The same is true for attempted monopolization. *Spectrum Sports,* 506 U.S. at 457. NASL misreads the import of *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 107–08 (2d Cir. 2002). While that case did mention that "there is authority to support [the] claim that a relevant market definition is not a necessary

---

[6] NASL cites its opposition to *U.S. Soccer's* motion for summary judgment for the alleged "record sources and case law" that support its argument against *MLS*. *See* Br. 8 n.7 (citing ECF No. 272). Whatever that evidence may allegedly show, it is not direct evidence that MLS had power to control prices or exclude competition. It is the same for the cited trial testimony.

component of a monopolization claim," the Second Circuit also noted that "numerous cases state that defining a relevant market is generally a necessary component of analyzing a monopolization claim." *Id.* The Court did not have to decide the question because, like NASL here, the plaintiff failed to offer direct evidence of controlling prices or excluding competition. *Id.* at 108.

At any rate, the Second Circuit's subsequent decision in *Heerwagen v. Clear Channel Communications* held that "a plaintiff claiming monopolization is obligated to establish the relevant market because the power to control prices or exclude competition only makes sense with reference to a particular market." 435 F.3d 219, 229 (2d Cir. 2006); *see id.* ("Someone who has market power does not generally have it everywhere." (quoting Herbert Hovenkamp, Federal Antitrust Policy: The Law of Competition and Its Practice § 3.6, at 112 (2d ed. 1999)).[7] The Court in *Heerwagen* held that a "showing of market power is a substantive element of plaintiff's monopolization claim . . . and plaintiff cannot escape proving her claims with reference to a particular market *even if she intends to proffer direct evidence* of controlling prices or excluding competition." *Id.* (emphasis added); *see also Concord*, 817 F.3d at 53 (relevant market analysis "is equally applicable to" Section 2 claims "because 'without a definition of that market there is no way to measure the defendant's ability to lessen or destroy competition'").

Unsurprisingly, none of NASL's cases (at 12) support its argument. It is, after all, "beyond doubt" that market definition is an element of its monopolization claim. *Spectrum Sports,* 506 U.S. at 457. Both *Merced Irrigation v. Barclays Bank*, 165 F. Supp. 3d 122, 141 (S.D.N.Y. 2016), and *Shak v. JPMorgan Chase Co.*, 156 F. Supp. 3d 462, 482 (S.D.N.Y. 2016), refer to *Heerwagen*'s

---

[7] A portion of *Heerwagen* that addressed certain class-action issues was overruled by *Teamsters Local 445 Freight Div. v. Bombardier Inc.*, 546 F.3d 196, 201 (2d Cir. 2008). Yet *Heerwagen*'s discussion of relevant markets is still good law. *See, e.g., Concord*, 817 F.3d at 53.

statement that monopoly power must be proven "with reference to a particular market."[8]

### B.     NASL Waived Any Argument That It Need Not Prove A Relevant Market

In all events, NASL should be precluded from arguing that it was not required to prove a relevant market.  Over more than seven years of litigation, NASL described its claims as relating to its alleged markets, not some unknown and mysterious "part of interstate commerce."  *Contra* Br. 11.  In the Complaint, in the Pretrial Order, and in its proposed jury instructions and verdict form (among other places), NASL repeatedly recognized that it was required to prove a relevant market.  *See, e.g.*, ECF No. 57; ECF No. 464; ECF No. 474.  The record thus "convincingly demonstrates" that NASL "affirmatively agreed to and, at times, even recommended the actions [it] now challenges."  *United States v. Spruill*, 808 F.3d 586, 598 (2d Cir. 2015).

NASL's post-verdict change of heart cannot salvage its claims.  The Second Circuit "has recognized waiver where a party actively solicits or agrees to a course of action that he later claims was error" or where "a party makes a 'tactical decision' not to raise an objection."  *Id.* at 597; *see also, e.g.*, *United States v. Quinones*, 511 F.3d 289, 320–22 (2d Cir. 2007) (party who solicited and agreed to jury instruction waived plain-error argument as to this instruction).  This Court should reject NASL's latest attempt to "shape-shift out of its own position" and "pull the rug out from under Defendants."  ECF No. 532 at 7.

NASL repeatedly acknowledged that it must prove a relevant market.  For example, at the pretrial conference, NASL argued that the jury must find a relevant market for each of its claims:

- "[T]he jury must unanimously find that there is a relevant market in which either the unreasonable restraint of trade or the monopolization took place,"  Ex. A, Pretrial Tr. at 32;

---

[8]  NASL also cites (at 12 n.12) *Re/Max Int'l, Inc. v. Realty One, Inc.*, 173 F.3d 995 (6th Cir. 1999), which applied the "quick look" analysis of *Indiana Federation* to a Section 2 case.  *See id.* at 1019–20.  Both the Second Circuit and this Court rejected NASL's argument that its case should get "quick look" treatment.  *Supra* at 4–5, 7.

- The jury "ha[s] to find at least one relevant market," *id.* at 22;

- "You have to find this in at least one of these relevant markets that they presented," *id.* at 22; and

- "With respect to the instructions, I don't really have a problem with saying you all must find the same relevant market and the violation in that market," *id.* at 33.

NASL's earlier representations are in accord.

**Section 1.** In its Complaint, NASL alleged relevant markets and framed its Section 1 claim with respect to those relevant markets. ECF No. 57 at ¶¶ 229–45, 269, 273–74 ("Compl."). At summary judgment, NASL admitted that if the rule of reason applied to its Section 1 claim, it would need to "address[] the market definition and market power issues." ECF No. 293 at 38 n.15. In the parties' initial jury-instruction submission, NASL recognized that it needed to prove a relevant market for its Section 1 claim if the rule of reason applied. ECF No. 474 at 58–66; *id.* at 70 (joint language: "If you find that NASL has proven . . . the existence of a relevant market or markets . . . ."). And NASL's initial proposed verdict form also required the jury to answer whether it had proven a conspiracy to restrain trade "in a market." ECF No. 474-1 at 1. NASL's change of heart came in the second jury-instruction submission, after the Court rejected its attempt to import *per se* or quick-look principles into this case. ECF No. 507 at 34 n.7 (late-breaking NASL objection to having to prove relevant market); *cf.* ECF 526 at 10 (acknowledging relevant-market requirement). This Court should reject NASL's gamesmanship.

**Section 2 Conspiracy to Monopolize.** In its Complaint, NASL framed this claim with respect to its alleged markets. Compl. ¶¶ 281–85. In the pretrial order, NASL described its claim as relating to the team-membership markets. ECF No. 464 at 4. In the initial jury-instruction submission, NASL recognized that it needed to prove a relevant market. ECF No. 474 at 89–95. It did so again in its initial verdict form. ECF No. 474-1 at 1–2. And again in its Rule 50(a) opposition. ECF No. 526 at 20. And it did not make this objection in its second jury-instruction

submission. *See* ECF No. 507 at 51–54. NASL failed to preserve this objection.

***Section 2 Monopolization and Attempted Monopolization.*** In its Complaint, NASL framed these claims with respect to its alleged markets. Compl. ¶¶ 286–94 (monopolization), ¶¶ 295–302 (attempted monopolization). In the pretrial order, NASL described these claims as "monopoliz[ing] the relevant Division 1 league-membership market." ECF No. 464 at 4–5. In the initial jury-instruction submission, NASL recognized that a relevant market was an element of these claims. ECF No. 474 at 100–02 (monopolization); *id.* at 113–17 (attempted monopolization). Its initial verdict form referred to the Division 1 team-membership market for these counts. ECF No. 474-1 at 2. NASL only (partially) changed its tune in the second jury-instruction submission: it did not object to relevant market being an element of the monopolization count, *see* ECF No. 507 at 60–61, but claimed that "direct evidence of monopoly power may obviate the need for a relevant market analysis," *id.* at 63. It did not raise the same objection on the attempted monopolization count. *Id.* at 71; *cf.* ECF No. 526 at 20 (referring to "the requirement[] of proving relevant markets" with respect to each of its claims).

As the Court has recognized, NASL has a long history of attempting to "spring[] . . . new theor[ies] of its case" onto the Court and Defendants. ECF No. 532 at 7. NASL consistently recognized that it needed to prove a relevant market, and Defendants challenged its claims on that basis. Having failed to prove its case, NASL tries to change course again. But NASL long ago waived any argument that proof of a relevant market is unnecessary.

## II. THE COURT CORRECTLY ALLOWED DEFENDANTS TO CHALLENGE NASL'S PURPORTED MARKETS

NASL next contends that the Court erred by "exclud[ing] evidence regarding downstream markets" but then "permit[ting] Defendants to attack NASL's relevant markets." Br. 13. But whether NASL's alleged markets would hold up to real-world scrutiny, against actual market facts,

was plainly relevant. The Court rightly permitted Defendants to challenge those markets.

NASL had to prove that its markets reflected the real world. *See, e.g.*, *Alston*, 594 U.S. at 93 (requiring "careful analysis of market realities"). A relevant market "must be defined as all products reasonably interchangeable by consumers for the same purposes." *City of New York v. Grp. Health Inc.*, 649 F.3d 151, 155 (2d Cir. 2011) (citation omitted). So where a plaintiff "alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products . . . the relevant market is legally insufficient." *Id.* (citation omitted).

NASL argued that U.S. Soccer had a monopoly in so-called Division 1 and Division 2 sanctioning markets, and that it conspired to give MLS (and USL) monopolies in supposed Division 1 and Division 2 team-membership markets. Under NASL's own market theories, it did not need to prove any downstream anticompetitive effects. But Defendants were well within their rights to poke holes in NASL's market theories and argue that NASL and MLS compete with other professional leagues in the United States and other professional soccer leagues around the world, across nearly every aspect of their business, including for investors and team owners.

That is why, on summary judgment, Judge Cogan noted that Defendants could "challenge[] NASL's alleged relevant markets as being too broad or too narrow" and "could offer alternative markets that include the good or service that is [the] subject of the plaintiff's complaint." ECF No. 399 at 38 n.7. It is why NASL's motion *in limine* conceded that such evidence "is relevant in assessing the bounds of the at-issue relevant market of team owners." ECF 455-1 at 15 n.6. It is why the Court rejected NASL's motion *in limine*. MIL Tr. 12–13 (citing ECF 455-1 at 5). It is why, in the Pretrial Order, NASL described anticipated testimony from Rishi Sehgal and Rocco Commisso as including "NASL's actual and potential competitors in the marketplace," ECF No. 464 at 10–11, and testimony from Don Garber and Clark Hunt about "MLS's actual and potential

competitors in the marketplace," *id.* at 13, 15. And it is why, in the jury instructions—in language that *NASL* first proposed—the Court instructed that the jury "may also consider how people in the industry and the public at large view the products" and that "decid[ing] which products compete with each other" is "a practical determination." ECF No. 531 at 30 (final charge); *accord* ECF 474 at 65–66 (NASL proposal). NASL's claim of "serious error" rings hollow.

In fact, the "errors" that NASL points to (at 13–14) are anything but. When Professor Noll was asked whether he was aware that Mr. Hunt had testified that MLS competes with other U.S. professional leagues and foreign soccer leagues, Noll *volunteered* that "I don't even disagree with [that]." Ex. D, Tr. 2236–37. And when NASL's counsel asked why that did not impact Noll's market definition, Noll was permitted to answer. Ex. E, Tr. 2265. It was only when counsel for NASL went on to ask about harm to competition that defense counsel objected because the issue was beyond the scope of direct or cross-examination. *Id.*, Tr. 2265–66. Plus, NASL's own documents and witnesses confirmed that professional soccer leagues compete on a global scale against other sports and entertainment options across nearly every aspect of their business. *See* Rule 50(a) Br. 16–17 (collecting evidence); *see also, e.g.*, Ex. D, Tr. 2043–48 (Commisso).[9]

NASL's complaint about U.S. Soccer's closing is flawed. Br. 13–14. *First*, counsel for U.S. Soccer simply summarized for the jury the undisputed evidence from trial. *See* Rule 50(a) Br. 14–19. *Second*, counsel for NASL argued in his closing that that evidence "was a complete diversion" because it did not involve "the markets at issue here." Ex. F, Tr. 2796. NASL may be disappointed that the jury disagreed with its proposed markets. That, however, is not due to any evidentiary error, but rather NASL's own failure of proof.

---

[9] The testimony of MLS executives as to who they competed with was also relevant to rebut the claim that NASL was a competitive threat to MLS, the impetus for the alleged conspiracy.

## III. THE COURT CORRECTLY ADMITTED EVIDENCE RELATING TO ROCCO COMMISSO AND TO TRAFFIC SPORTS

NASL next claims that the Court erroneously admitted "prejudicial" evidence regarding Rocco Commisso and Traffic Sports that "tainted the verdict." Br. 14. But NASL does not (and cannot) connect the admission of this evidence to the jury's verdict that NASL failed to prove its alleged relevant markets. The Court's rulings admitting this evidence were also correct.

### A. The Court Correctly Admitted Commisso's Tweets

NASL seeks to relitigate the Court's *in limine* ruling that the "inflammatory" personal invective that Mr. Commisso used against MLS executives in his anonymous tweets was relevant to his bias and credibility. Br. 14–16. NASL offers nothing new to challenge that ruling.

Courts have "broad discretion … under Rule 403's probative-prejudice balancing analysis." *Zsa Zsa Jewels, Inc. v. BMW of N. Am., LLC*, 2022 WL 2315977, at *2 (E.D.N.Y. June 27, 2022). "[S]o long as the district court has conscientiously balanced the proffered evidence's probative value with the risk for prejudice, its conclusion will be disturbed only if it is arbitrary or irrational." *United States v. Awadallah*, 436 F.3d 125, 131 (2d Cir. 2006). NASL's burden is even higher because it is seeking a new trial. "To order a new trial based on the admission or rejection of evidence at trial, the challenged evidentiary rulings must have been a clear abuse of discretion and so clearly prejudicial to the outcome of the trial that the court is convinced that a seriously erroneous result or miscarriage of justice occurred." *See Newton v. City of New York*, 171 F. Supp. 3d 156, 164 (S.D.N.Y. 2016). Thus, "evidentiary rulings by the trial court rarely rise to the level of requiring a new trial." *Walker v. Raja*, 2023 WL 6390162, at *3 (E.D.N.Y. Sept. 30, 2023).[10]

---

[10] That is especially true here, where NASL's claims of evidentiary error bear no relation to the relevant market issue on which the jury decided the case. *See Tesser v. Bd. of Educ.*, 370 F.3d 314, 319 (2d Cir. 2004) ("[A]n evidentiary error in a civil case is harmless unless the [movant]

NASL's principal argument is that the defense's "incendiary examination" of Mr. Commisso regarding his tweets "had nothing to do with eliciting relevant facts, and was intended to prejudice NASL's claims by inflaming the jury against Mr. Commisso personally." Br. 15. As the Court has previously ruled, NASL is incorrect. *See* MIL Tr. 15. Mr. Commisso wrote his tweets to try to inflict the maximum damage on the reputation of his perceived enemies, Mr. Garber and Mr. Gulati, whom NASL claimed (at least most of the time) were the principal conspirators against it. As such, those tweets were plainly relevant to Mr. Commisso's bias and animus. After all, "[p]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *United States v. Abel*, 469 U.S. 45, 52 (1984).

Mr. Commisso's tweets address core topics like the alleged interactions between U.S. Soccer and MLS, NASL's sanctioning application process, and this litigation. As such, the Court carefully weighed the inflammatory nature of Mr. Commisso's tweets against their probative value, and properly exercised its discretion in deciding not to exclude them. MIL Tr. 15. That conclusion was neither "arbitrary or irrational." *Awadallah*, 436 F.3d at 131.

**B.    The Court Correctly Admitted Evidence Of Commisso's Litigation Funding**

NASL also argues that the Court erred in admitting evidence that Mr. Commisso funded this litigation. Br. 15–16. For this argument, NASL relies exclusively on *Carroll v. Trump,* 124 F.4th 140 (2d Cir. 2024). NASL already cited the district court decision in *Carroll* in its motion *in limine*. In denying that motion, this Court ruled that "[b]ecause Mr. Commisso's role in this case is different from a classic third-party funder, this situation is different than what was highlighted in the *Carroll* case, where such evidence is generally not relevant and/or unduly prejudicial." MIL

---

demonstrates that it is likely that in some material respect the factfinder's judgment was swayed by the error." (cleaned up)); Fed. R. Civ. P. 61 (harmless-error standard).

Tr 6.  Nothing in the Second Circuit's later decision affirming the district court's reasoning in *Carroll*, *see* 124 F.4th at 171–74, warrants reexamining this Court's ruling.

The critical feature in this case is that it involved funding provided by *a principal witness for the plaintiff.*  *Cf.* Ex. C, Tr. 1415 (noting that NASL viewed Mr. Commisso as a "key player").  As this Court recognized, where the funder is a witness in the case, an interest in the outcome is relevant to the witness's bias, because "[m]oney is an important and often the most important motivator."  MIL Tr. 6.  Many courts agree.  *See* ECF No. 466 at 9–10.[11]

NASL also contends that it was prejudiced because Defendants referred to Mr. Commisso as a "billionaire."  Br. 16.  But when it suited NASL's ends, it also elicited testimony about Mr. Commisso's wealth.  *See, e.g.,* Ex. D, Tr. 1986 (counsel asking Mr. Commisso if he was "a wealthy man"); Ex. B, Tr. 475–76 (Sehgal referring to Mr. Commisso as "a well resourced businessman").  NASL does not get to pick one rule for itself and another for Defendants.

### C.    The Court Correctly Admitted Evidence Related To Traffic Sports

The Court *rejected* NASL's motion *in limine* and held that "Defendants must be permitted to introduce evidence and solicit testimony related to Traffic's and Davidson's indictments and guilty pleas," both "to provide a plausible alternative explanation for the injuries that Plaintiff claims to have suffered and to try to defeat Plaintiff's theory of causation."  ECF No. 451 at 5.  In doing so, the Court cautioned Defendants that they "may not belabor the details of Davidson's and Traffic's conduct" or use the indictments "as a smear tactic."  *Id.* at 7–8.  Here, NASL treats the Court's admonition as if it were a complete victory.  NASL cites occasions in which its objections to questions about Traffic were supposedly unfairly overruled, as if the mere mention of Traffic

---

[11]    NASL also argues that Mr. Commisso's bias was evident because he was NASL's Chairman and a team owner, and so there was no need to admit his funding arrangements.  Br. 16. But the funding agreement was relevant precisely because Mr. Commisso's interest in the outcome was not the same as that of any other owner; it was supercharged.  *See* Ex. I, DX-874.

had been prohibited. *See* Br. 17. But more than half of the objections that NASL cites had nothing to do with the Court's *in limine* ruling—they were objections that the question lacked foundation or was beyond the scope. *See, e.g.*, *id.* (citing Tr. 784, 1406, 1408, 1409, 2436). Perhaps NASL believed that citing the overruling of those objections would create an appearance of a recurring problem, but the appearance is a false one. Defendants stayed within the Court's boundaries.

NASL also complains that Aaron Davidson took the Fifth on "trivial, irrelevant, or undisputed issues." Br. 17. Not so. Davidson took the Fifth on critically relevant and disputed subjects, including: (1) whether the Traffic indictments caused it to stop funding NASL (Ex. J, JX-114, at 107–08, 194, 207); (2) whether NASL intentionally destroyed Mr. Davidson's emails after his indictment (*id.* at 144-145); (3) Traffic's inability to sell sponsorships for the league (*id.* at 179–80, 196–97); (4) the amount of Traffic's investment in the league (*id.* at 216–23); and (5) whether Traffic paid a bribe to have the Cosmos join NASL (*id.* at 117–18, 123–24, 127–28, 132–35).

Most of NASL's remaining arguments were raised and rejected in its motion *in limine*. *Compare* Br. 17–18, *with* ECF No. 466 at 12–16; MIL Tr. 13–14. And none of NASL's three new points have merit. *First*, NASL claims that the payment to "Golden Miracle Management" could not be a bribe because a "[a] bribe is a payment to 'pervert the judgment of or influence the action of a person in a position of trust,' such as a government official—not a payment to a consultant." Br. 17–18 n. 14. But paying a consultant illicitly to influence his advice to his client is a textbook "bribe." *See United States v. Sancho,* 157 F.3d 918 (2d Cir. 1998) (affirming mail fraud conviction for paying bribe to a consultant). It also fits with the ordinary understanding of a "bribe."[12]

*Second*, NASL claims there is no evidence Mr. Sehgal was aware of the bribe. Br. 18. Yet

---

[12] *See Bribe*, Oxford English Dictionary, https://www.oed.com/dictionary/bribe_n (last visited Apr. 2, 2025) ("A sum of money, gift, or other inducement which is given another person in order to influence his or her behavior.").

Mr. Sehgal sent an email to Mr. Davidson asking whether Traffic was still recommending that it pursue "the other channel," suggesting Mr. Sehgal was at least aware of the bribe, if not personally involved. Ex. H, DX-163; *see* ECF No. 465-1 at 13–15.

*Third*, NASL argues (at 18) that the Court "prejudice[d] the jury" by instructing them that NASL's closing argument about the advice that Davidson's lawyer gave him was not evidence. Ex. G, Tr. 2864. That instruction could not possibly have been prejudicial. NASL's counsel argued that Davidson was "not invoking the Fifth because there's some criminality involved . . . [h]e was invoking the Fifth because his lawyer told him to invoke the Fifth all over the place in the time period." Ex. F, Tr. 2818–19. That was an affirmative statement about legal advice allegedly given to Mr. Davidson that exists *nowhere* in the record and that therefore exceeded the bounds of proper argument. *See United States v. Smith*, 778 F.2d 925, 929 (2d Cir. 1985).

## IV. THE COURT NEED NOT ADDRESS NASL'S OTHER CLAIMED "ERRONEOUS EVIDENTIARY RULINGS"

NASL complains of "other evidentiary errors that had serious impacts" and "should be corrected upon retrial." Br. 18–19. NASL admits that none of these "errors" are grounds for a new trial, so the Court need not address them. Regardless, the rulings were correct.

### A. The Court Correctly Excluded Evidence Regarding The 2015 Proposed Amendments To The Professional League Standards

The Court correctly concluded that the 2015 proposed amendments to the Standards were not relevant under Rule 401 because they were "never adopted or applied to" NASL. MIL Tr. 24. NASL did not "demonstrate[] that the proposed 2015 amendments, which were not adopted, had any bearing on or relationship to" the challenged sanctioning decisions in 2016 or 2017. *Id.* at 24–25. U.S. Soccer's board had met multiple times regarding the proposed amendments before NASL submitted its D1 application. *Id.* And because the proposed amendments "never took effect," they simply do not "matter[]" for purposes of the antitrust analysis." *Warrior Sports, Inc. v. NCAA*, 623

F.3d 281, 285 (6th Cir. 2010); *see also Staton v. Nucor Steel Hertford*, 2005 WL 6218141, at *3 (E.D.N.C. June 28, 2005) (excluding "unimplemented safety manual" as "irrelevant, prejudicial, [causing] confusion of the issues, misleading to jury"); ECF No. 454-1 at 8–11 (MIL).

**B.  The Court Correctly Excluded The McKinsey Report**

This Court correctly held that the McKinsey report was "not relevant under Rule 401," was "precluded by Judge Cogan's ruling on corporate governance issues," and flunked Rule 403's balancing test.  MIL Tr. 27–30.  As for Rule 401, "none of the highlighted quotes relate to U.S. Soccer sanctioning decisions, MLS's role, if any, in the sanctioning process, or any entanglements that would have impacted the way U.S. Soccer decided to enforce the standards." *Id.* at 28.  They are thus "wholly unrelated to U.S. Soccer's sanctioning process" and are "not probative of a conspiracy between MLS and U.S. Soccer related to sanctioning decisions." *Id.* at 28–29.  As for Rule 403, the statements cannot be "fairly attributed to U.S. Soccer board members," and given the "lack of clarity surrounding what specifically the quotes in the deck mean," there was "a high risk of confusing and misleading the jury." *Id.* at 29–30; *see* ECF 454-1 at 11–16 (MIL).

**C.  The Court Correctly Excluded Portions Of Dr. Williams's Division 1 Damages Opinions And Could Have Excluded Him Entirely**

NASL next makes the remarkable claim that it was error to exclude certain of Dr. Williams' damages opinions.  *First*, NASL claims that there was no need for Dr. Williams to make *any* deduction to NASL's Division 1 damages for the fees that it would have owed to Team Holdings.  Br. 23–24.  That is a transparent attempt to sidestep the plain, unambiguous language of the 2013 Operating Agreement.  *See generally* ECF No. 510; ECF No. 514.  And as Judge Cogan correctly found, Dr. Williams' failure to account for NASL's agreement with Team Holdings was "a major oversight."  ECF No. 399 at 25.  After all, NASL's settlement with Team Holdings reflected "myriad facts," and if NASL had been granted a Division 1 sanction, "Team Holdings may very

well have demanded better terms or refused to enter into a settlement agreement at all." *Id.* at 26.

*Second*, NASL argues that Dr. Williams did not need to subtract projected Division 2 entry fees from his Division 1 damages estimate. Br. 25. But as this Court rightly noted, Dr. Williams made a comparison that was "fundamentally unequal," ECF No. 451 at 25. In calculating NASL's Division 2 damages, Dr. Williams assumed that NASL would receive expansion fees until 2025. But in calculating NASL's value as a Division 2 league for purposes of deducting that value from his Division 1 damage calculation, Dr. Williams assumed that NASL would have value as a Division 2 league only until 2017 (obviating a need to deduct from expansion fees in future years). That imbalance undeniably "result[ed] in an inflated D1 damages calculation." *Id.*

NASL's argument is especially brazen because Dr. Williams could have been excluded entirely due to his fundamental (and repeatedly demonstrated) unreliability. During trial, it became clear that Dr. Williams miscalculated D1 damages under the 2013 Operating Agreement because he neglected a material change in the defined term of "Expansion Team" and incorrectly assumed that Puerto Rico FC counted as one of the Expansion Teams. *See* ECF No. 510; ECF No. 514; Rule 50(a) Br. 24–25. Those errors impacted Dr. Williams' damages calculations by more than $100 million. He was more than overdue for a "red card," ECF No. 451 at 26, and this Court could have exercised its gatekeeping function to exclude his "invalid and unreliable expert testimony" in its entirety. *On Track Innovations v. T-Mobile USA*, 106 F. Supp. 3d 369, 378 (S.D.N.Y. 2015).

Dr. Williams also admitted at trial that he was "unable to answer th[e] question" of whether his latest revised D1 damages estimate was correct. Ex. E, Tr. 2461. In light of his unreliable and speculative testimony, the jury did not have a "reasonable basis [grounded] in the evidence" to find damages as a matter of law. ECF No. 531 at 62 (final charge). The Court could have granted judgment to Defendants as to damages. *See* Rule 50(a) Br. 24–25.

## V. THE COURT COULD HAVE GRANTED DEFENDANTS' RULE 50 MOTION EVEN IF THE JURY HAD FOUND IN NASL'S FAVOR

Beyond raising nothing that warrants a new trial, NASL's motion fails for another reason. Even if the jury had found for NASL, the Court could have granted Defendants' Rule 50 motion for failure to prove a conspiracy or harm to competition. *See* Rule 50(a) Br.; *cf. Air China Ltd. v. Li*, 2010 WL 3260154, at *3 (S.D.N.Y. Aug. 5, 2010) (new trial on punitive damages denied as "futile" because any award would be improper as matter of law), *aff'd sub nom. Air China, Ltd. v. Kopf*, 473 F. App'x 45 (2d Cir. 2012).

As to the conspiracy, NASL presented no evidence "tend[ing] to show that association members, in their individual capacities, consciously committed themselves to a common scheme designed to achieve an unlawful objective." *NASL*, 883 F.3d at 40 (quoting *AD/SAT v. Assoc. Press*, 181 F.3d 216, 234 (2d Cir. 1999)). Instead, it offered evidence of deliberations and two votes by the U.S. Soccer Board. As cases like *Jessup v. Am. Kennel Club, Inc.*, 61 F. Supp. 2d 5, 6–7, 11–12 (S.D.N.Y. 1999), *aff'd on dist. ct. op.*, 210 F.3d 111 (2d Cir. 2000), and *Abraham & Veneklasen J.V. v. Am. Quarter Horse Ass'n*, 776 F.3d 321, 326–27, 332–34 (5th Cir. 2015), show, that is nowhere near enough. No reasonable jury could have found that U.S. Soccer and MLS unlawfully conspired to deny NASL's sanctioning applications. Rule 50(a) Br. 6–14.

As for harm to competition, NASL failed to offer sufficient evidence of any harm beyond that to itself. *Id.* at 19–22. Because "the antitrust laws protect competition, not competitors," NASL had to "show that more than its own business suffered." *MacDermid*, 833 F.3d at 187. It did not do so; instead, all of its proof concerned damage to its own business, which is legally insufficient. Rule 50(a) Br. 19–22. No reasonable jury could have found otherwise.

## CONCLUSION

For these reasons, the Court should deny NASL's motion for a new trial.

Date: April 3, 2025                    Respectfully submitted,

By: */s/ Christopher S. Yates*

**LATHAM & WATKINS LLP**
Christopher S. Yates (*pro hac vice*)
Aaron T. Chiu (*pro hac vice*)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 391-0600
chris.yates@lw.com
aaron.chiu@lw.com

Lawrence E. Buterman
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
lawrence.buterman@lw.com

Anna M. Rathbun (*pro hac vice*)
David L. Johnson (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: (202) 637-2200
anna.rathbun@lw.com
david.johnson@lw.com

*Counsel for Defendant United States*
*Soccer Federation, Inc.*

**PROSKAUER ROSE LLP**
*/s/ Bradley I. Ruskin*
Bradley I. Ruskin
Kevin J. Perra
Keisha-Ann Gray
Scott A. Eggers
Eleven Times Square
New York, New York 10036
(212) 969-3000
bruskin@proskauer.com
kperra@proskauer.com
kgray@proskauer.com
seggers@proskauer.com

Colin R. Kass
1001 Pennsylvania Ave., NW, Suite 600S
Washington, DC 20004

(202) 416-6800
ckass@proskauer.com

Genesis Sanchez Tavarez
One International Place
Boston, MA 02110
(617) 526-9675
gsancheztavarez@proskauer.com

*Counsel for Defendant Major League
Soccer, L.L.C.*

## CERTIFICATE OF COMPLIANCE

I, Christopher S. Yates, an attorney admitted *pro hac vice* to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1(c) and Rule IV.B.2 of Judge Hector Gonzalez's Individual Practices, that the foregoing Memorandum of Law was prepared in Microsoft Word is 25 double-spaced pages, not including the items excluded by Local Rule 7.1(c).

Dated: April 3, 2025

 /s/ *Christopher S. Yates*
Christopher S. Yates