UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NORTH AMERICAN SOCCER LEAGUE, LLC,

                         Plaintiff,

v.

UNITED STATES SOCCER FEDERATION, INC., and MAJOR LEAGUE SOCCER, L.L.C.

                         Defendants.

Case No. 1:17-cv-05495-HG

**NASL'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR NEW TRIAL UNDER RULE 59**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ iii

ARGUMENT ........................................................................................................................................ 1

I.    A new trial is warranted under Rule 59 because the jury was incorrectly required to reject NASL's claims unless it found one of NASL's four specific relevant markets. ............................ 1

    A.    A Rule of Reason plaintiff challenging a horizontal restraint can prevail without proving a specific relevant market. ................................................................................................ 1

    B.    A *per se* claim does not require proof of a relevant market, and NASL was improperly prevented from pursuing its *per se* claim at trial. ................................................................ 2

    C.    A relevant market is not an element of a conspiracy to monopolize claim. ....................... 3

    D.    A monopolization or attempted monopolization plaintiff can prevail without proving a relevant market. ................................................................................................................ 5

    E.    An antitrust plaintiff is not required to prove the specific markets it alleges. ................... 6

    F.    NASL did not waive its relevant market arguments. ......................................................... 7

II.    A new trial is warranted based on serious errors in evidentiary rulings. ................................ 8

III.    A new trial is warranted because the admission of inflammatory and prejudicial evidence was another serious error. ........................................................................................................ 9

IV.    Upon retrial under Rule 59, the Court should correct several other serious errors. ......... 10

V.    The Court properly declined to grant Defendants' Rule 50(a) motion. ............................... 10

CONCLUSION ................................................................................................................................. 10

CERTIFICATE OF COMPLIANCE ............................................................................................... 12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Aluminum Warehousing Antitrust Litig.*,
  2014 WL 4277510 (S.D.N.Y. Aug. 29, 2014) ............................................................................6

*Anderson v. Branen*,
  17 F.3d 552 (2d Cir. 1994) .......................................................................................................8

*Auraria Student Housing v. Campus Village*,
  843 F.3d 1225 (10th Cir. 2016) ................................................................................................5

*Carroll v. Trump*,
  124 F.4th 140 (2d Cir. 2024) ....................................................................................................9

*Chapman v. N.Y. State Div. for Youth*,
  2006 WL 6256750 (2d Cir. Oct. 24, 2006) ...............................................................................4

*Chapman v. N.Y. State Div. for Youth*,
  546 F.3d 230 (2d Cir. 2008) .....................................................................................................5

*Charych v. Siriusware*,
  2018 WL 4870906 (E.D.N.Y. July 30, 2018), *aff'd*, 790 F. App'x 299 (2d Cir.
  2019) .........................................................................................................................................4

*Concord Assocs. v. Entm't Props. Tr.*,
  2014 WL 1396524 (S.D.N.Y. Apr. 9, 2014) .............................................................................5

*E.R. Squibb v. Lloyd's & Cos.*,
  241 F.3d 154 (2d Cir. 2001) .....................................................................................................8

*Elecs. Commc'ns v. Toshiba Am.*,
  129 F.3d 240 (2d Cir. 1997) ..................................................................................................4, 6

*Emigra Grp. v. Fragomen*,
  612 F. Supp. 2d 330 (S.D.N.Y. 2009) ......................................................................................4

*Fraser v. MLS*,
  284 F.3d 47 (1st Cir. 2002) .......................................................................................................1

*FTC v. Ind. Fed. of Dentists*,
  476 U.S. 447 (1986) ..................................................................................................................1

*Gelboim v. Bank of Am. Corp.*,
  823 F.3d 759 (2d Cir. 2016) .....................................................................................................2

*Geneva Pharms. v. Barr Lab'ys*,
  386 F.3d 485 (2d Cir. 2004)..................................................................................5

*Golden State Transit v. City of Los Angeles*,
  754 F.2d 830, 832 n.3 (9th Cir. 1985).....................................................................3

*Heerwagen v. Clear Channel*,
  435 F.3d 219 (2d Cir. 2006)................................................................................5, 6

*Hudson Valley Asbestos Corp. v. Tougher Heating & Plumb.*,
  510 F.2d 1140 (2d Cir. 1975).................................................................................4

*IHS Dialysis v. Davita*,
  2013 WL 1309737 (S.D.N.Y. Mar. 31, 2013) ....................................................3, 5

*Kreager v. Gen. Elec.*,
  497 F.2d 468 (2d Cir. 1974)...................................................................................4

*L.A. Mem'l Coliseum v. NFL*,
  726 F.2d 1381 (9th Cir. 1984) ................................................................................7

*MacDermid Printing v. Cortron*,
  833 F.3d 172 (2d Cir. 2016)...................................................................................1

*NASL v. U.S. Soccer Fed'n, Inc.*,
  883 F.3d 32 (2d. Cir. 2018)................................................................................1, 3

*NCAA v. Alston*,
  594 U.S. 69 (2021)..............................................................................................1, 2

*NCAA v. Bd. of Regents*,
  468 U.S. 85 (1984).................................................................................................2

*Ohio v. Am. Express*,
  585 U.S. 529 (2018)...............................................................................................1

*P&L Dev. v. Gerber Prods.*,
  715 F. Supp. 3d 435 (E.D.N.Y. 2024) ...................................................................4

*Pac. Life Ins. Co. v. Bank of N.Y. Mellon*,
  2021 WL 673479 (S.D.N.Y. Feb. 22, 2021)..........................................................9

*PepsiCo, Inc. v. Coca-Cola Co.*,
  315 F.3d 101 (2d Cir. 2002)...................................................................................5

*Radiant Burners v. Peoples Gas Light*,
  364 U.S. 656 (1961)...............................................................................................2

*Relevent Sports v. USSF*,
   61 F.4th 299 (2d Cir. 2023) ...................................................................................................2

*SEC v. McGinn*,
   2011 WL 1770472 (N.D.N.Y. May 9, 2011).........................................................................3

*Shak v. JPMorgan Chase*,
   156 F. Supp. 3d 462 (S.D.N.Y. 2016)............................................................................4, 6, 7

*Shields v. World Aquatics*,
   2024 WL 4211477 ..................................................................................................................3

*Spectrum Sports v. McQuillan*,
   506 U.S. 447 (1993).............................................................................................................4, 6

*Tomeo v. CitiGroup*,
   2018 WL 4627386 (N.D. Ill. Sept. 27, 2018) .......................................................................9

*Tops Mkts. v. Quality Mkts.*,
   142 F.3d 90 (2d Cir. 1998).....................................................................................................5

*U.S. v. Aiyer*,
   500 F. Supp. 3d 21 (S.D.N.Y. 2020).....................................................................................2

*U.S. v. Cons. Laundries*,
   291 F.2d 563 (2d Cir. 1961)...................................................................................................4

*U.S. v. Grinnell*,
   384 U.S. 563 (1966)................................................................................................................6

*U.S. v. Visa USA*,
   344 F.3d 229 (2d Cir. 2003)...................................................................................................2

*Univ. of Texas v. Camenisch*,
   451 U.S. 390 (1981)................................................................................................................3

*US Airways v. Sabre Holds.*,
   938 F.3d 43 (2d Cir. 2019).....................................................................................................1

*USFL v. NFL*,
   842 F.2d 1335 (2d Cir. 1988).................................................................................................7

*Virgin Atl. v. Nat'l Mediation Bd.*,
   956 F.2d 1245 (2d Cir. 1992).................................................................................................8

*Volvo N. Am. v. MIPTC*,
   857 F.2d 55 (2d Cir. 1988).................................................................................................3, 4

*William G. Wilcox, D.O. v. U.S.*,
  888 F.2d 1111 (6th Cir. 1989) ................................................................................................3

*In re Zinc Antitrust Litig.*,
  155 F. Supp. 3d 337 (S.D.N.Y. 2016) ................................................................................3, 4

**Statutes**

Sherman Act § 1 ............................................................................................................................1, 2

Sherman Act § 2 ......................................................................................................................3, 4, 5

**Other Authorities**

Fed. R. Civ. P. 50(a) ....................................................................................................................10

Fed. R. Civ. P. 59 .....................................................................................................................1, 10

# ARGUMENT

**I.    A new trial is warranted under Rule 59 because the jury was incorrectly required to reject NASL's claims unless it found one of NASL's four specific relevant markets.**

**A.    A Rule of Reason plaintiff challenging a horizontal restraint can prevail without proving a specific relevant market.**

There is no requirement that a Section 1 plaintiff challenging a horizontal restraint always prove the specific contours of the relevant market. Rather, a "finding of actual, sustained adverse effects on competition … is legally sufficient to support a finding that the challenged restraint was unreasonable even in the absence of elaborate market analysis," without an "inquir[y] into market definition." *FTC v. Ind. Fed. of Dentists*, 476 U.S. 447, 460-61 (1986). The Supreme Court reaffirmed this in *Ohio v. American Express*, and many other courts have done the same.[1]

Defendants cite no contrary case law. Instead, Defendants misleadingly quote language from decisions on other issues—for example, generalized statements that market analysis can be important,[2] or that a plaintiff can prove a Rule of Reason claim by showing harm in a relevant market.[3] *None* of these cases considers whether a plaintiff alleging horizontal restraints can show anticompetitive harm directly without proving the specific contours of the relevant market.

NASL proved the existence of horizontal restraints at trial. Where a membership organization like USSF applies rules restraining competition among members in a horizontal relationship like MLS, USL, and NASL, that is a horizontal restraint.[4] Defendants argue that these

---

[1] *Am. Express*, 585 U.S. 529, 543 n.7 (2018) (the "Court d[oes] not need to precisely define the relevant market" for "horizontal restraints"); Mot. 7 & n.4 (compiling cases).
[2] *E.g.*, *NCAA v. Alston*, 594 U.S. 69, 93 (2021) (calling for "a careful analysis of market realities.").
[3] *E.g.*, *NASL*, 883 F.3d at 42 ("adverse effect on competition in the relevant market"); *US Airways v. Sabre Holds.*, 938 F.3d 43, 55 (2d Cir. 2019) (plaintiff identifies "relevant market" in "first step of the rule of reason"); *MacDermid Printing v. Cortron*, 833 F.3d 172, 182 (2d Cir. 2016) ("harm to consumers in the relevant market."); *Fraser v. MLS*, 284 F.3d 47, 59 (1st Cir. 2002) ("adversely affected competition in that market"). None of these cases considers whether anticompetitive harm in a relevant market can be shown without proving the precise definition of that market.
[4] *E.g.*, *NCAA v. Alston*, 594 U.S. 69, 86 (2021) (horizontal restraint); *NCAA v. Bd. of Regents*, 468 U.S. 85, 99 (1984) (same); *U.S. v. Visa USA*, 344 F.3d 229, 242-243 (2d Cir. 2003) (same).

1

restraints were not horizontal because "no one involved with professional leagues voted on … sanctioning decisions" (Opp'n 8), but that distorts antitrust law. The question is whether the restraint *limited competition among entities in a horizontal relationship*—not whether entities in a horizontal relationship voted to impose the restraint. That is why NCAA's and Visa's rules limiting competition among their members have been held to be horizontal restraints. *See* Mot. 7 & n.4.

It is clear the restraints here are horizontal because the competing leagues agreed to abide by USSF's sanctioning decisions.[5] As the Second Circuit recently held in a case against USSF, when "leagues … have … agreed to abide by the will of the association[]," "[t]hat is enough" to establish a "horizontal" restraint. *Relevent Sports v. USSF*, 61 F.4th 299, 307-09 (2d Cir. 2023).

### B. A *per se* claim does not require proof of a relevant market, and NASL was improperly prevented from pursuing its *per se* claim at trial.

It was also serious error to require NASL to prove a relevant market because NASL was entitled to present its Section 1 claim to the jury under a *per se* theory, which does not require proof of a relevant market. Mot. 9-10. *Per se* analysis applies where an organization's standards process was subjected to partisan influence and restrained competition among members. *E.g.*, *Radiant Burners v. Peoples Gas Light*, 364 U.S. 656, 657-60 (1961); *Gelboim v. Bank of Am. Corp.*, 823 F.3d 759, 775-76 (2d Cir. 2016); Mot. 9-10 (compiling cases). Here, NASL introduced evidence showing the extensive partisan influence of MLS and Sunil Gulati over USSF's process for adopting and applying the Standards. Mot. 10. Accordingly, the Court should have "instructed the jury on what the jury would be required to find as a matter of fact to find" a *per se* violation. *U.S. v. Aiyer*, 500 F. Supp. 3d 21, 24 (S.D.N.Y. 2020).

Defendants argue that NASL cannot pursue a *per se* claim because, during the preliminary injunction phase, the Second Circuit declined to apply *per se* analysis at that time based on the

---

[5] *Compare* Opp'n 8 (seeking to distinguish *Visa* case because Visa members "agreed to abide by" rules) *with* ECF No. 26-1 ¶ 29 (USSF member leagues must abide by USSF rules and decisions).

2

limited pre-discovery fact record. *NASL v. USSF*, 883 F.3d 32, 44 (2d Cir. 2018). But the Court did not decide whether the subsequent discovery record could prove a *per se* claim at trial, nor could it. "[T]he findings of fact and conclusions of law made by a court [regarding] a preliminary injunction are not binding at trial." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).[6]

Similarly, Defendants are mistaken in arguing that the Court rejected NASL's *per se* claim on summary judgment. Because the underlying facts supporting *per se* analysis were disputed, the Court held that *per se* condemnation was not "necessitate[d]" as a matter of law, but also denied Defendants' motion for summary judgment as to that claim. ECF No. 399 at 54, 57.

Defendants are also incorrect in asserting that sports governing bodies like USSF are always subject to the Rule of Reason rather than the *per se* standard. While Defendants cite various sports cases decided under the Rule of Reason, the law is clear that sports associations are subject to the *per se* rule when the facts support this. *E.g.*, *Volvo N. Am. v. MIPTC*, 857 F.2d 55, 72 (2d Cir. 1988) (upholding *per se* claim against tennis governing body); *Shields v. World Aquatics*, 2024 WL 4211477, at *1-2 (9th Cir. 2024) (upholding *per se* claim against swimming governing body).

### C. A relevant market is not an element of a conspiracy to monopolize claim.

It was also serious error to require NASL to prove a relevant market because "a relevant market definition is not a necessary element of a Section 2 conspiracy claim." *IHS Dialysis v. Davita*, 2013 WL 1309737, at *4 n.3 (S.D.N.Y. Mar. 31, 2013); *accord In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 382 (S.D.N.Y. 2016) ("[R]igorous proof of a relevant market … [is] not, in this Circuit, [an] essential element[] of conspiracy to monopolize"); *Emigra Grp. v. Fragomen*,

---

[6] *Accord William G. Wilcox, D.O. v. U.S.*, 888 F.2d 1111, 1114 (6th Cir. 1989) (quoting *Golden State Transit v. City of L.A.*, 754 F.2d 830, 832 n.3 (9th Cir. 1985) ("'[D]ecisions on preliminary injunctions do not constitute law of the case and 'parties are free to litigate the merits.'"); *SEC v. McGinn*, 2011 WL 1770472, at *7 (N.D.N.Y. May 9, 2011) (same). *Clear Connection* and *Avaya*, cited by Defendants (at 5), are off-point and merely held that a decision not to apply the *per se* rule was law of the case in later motion practice absent any new allegations or evidence.

3

612 F. Supp. 2d 330, 363 (S.D.N.Y. 2009) (same).[7] This is because "specific intent to monopolize, and not monopoly power, is the essential element when a conspiracy to monopolize is involved." *Hudson Valley Asbestos Corp. v. Tougher Heating & Plumb.*, 510 F.2d 1140, 1144 (2d Cir. 1975); *U.S. v. Cons. Laundries*, 291 F.2d 563, 572-73 (2d Cir. 1961) (same). The elements of a conspiracy to monopolize thus include no requirement to prove relevant market. *Volvo*, 857 F.2d at 74.[8]

Defendants argue that all these decisions from 1961 through 2024 are bad law and that a 1993 Supreme Court decision changed the law—*Spectrum Sports v. McQuillan*—but that case discussed *monopolization and attempted monopolization*, not a conspiracy to monopolize, and the Court did not address whether those claims could be proven through direct evidence. 506 U.S. 447, 455-56 (1993); *infra* 5-6. Defendants similarly err in citing *Electronics Communications v. Toshiba America*, which involved only a "monopolization claim" and just held that monopolization requires "power in the relevant market"—not that the plaintiff must always prove the market's contours. 129 F.3d 240, 242, 246 (2d Cir. 1997). *Kreager v. General Electric* did not even specify what types of Section 2 claims were being asserted—it just listed elements of various types of Section 2 claims and stated that "there was a total failure of proof on the Section 2 claims." 497 F.2d 468, 471 (2d Cir. 1974). As for *Chapman v. N.Y. State Division for Youth*, claims for both monopolization and conspiracy to monopolize had been dismissed, and on appeal, the plaintiff just argued that it validly had alleged a relevant market. Pls. Reply Br., 2006 WL 6256750 (2d Cir. Oct. 24, 2006). The Second Circuit merely affirmed that no relevant market had been alleged, and it did not even consider whether either claim could be proven without a relevant market, since that

---

[7] Defendants mischaracterize *Zinc* and *Emigra* as decisions requiring proof of a relevant market. In reality, those courts found that the plaintiffs had failed to show a *specific intent* to monopolize and just cited the plaintiffs' allegations about the relevant markets in doing so.
[8] *Accord P&L Dev. v. Gerber Prods.*, 715 F. Supp. 3d 435, 464 (E.D.N.Y. 2024); *Charych v. Siriusware*, 2018 WL 4870906, at *5 (E.D.N.Y. July 30, 2018), *aff'd*, 790 F. App'x 299 (2d Cir. 2019); *Shak v. JPMorgan Chase*, 156 F. Supp. 3d 462, 490 (S.D.N.Y. 2016).

4

issue had not been presented on appeal. 546 F.3d 230, 237-38 (2d Cir. 2008).

Defendants have identified a Tenth Circuit case adopting their position—*Auraria Student Housing v. Campus Village*—but that decision *explicitly cited* the "Second Circuit" and its "*Consolidated Laundries*" decision as an example of the contrary view that "proof of a relevant market is *not* required for § 2 conspiracy claims." 843 F.3d 1225, 1237 & n.8 (10th Cir. 2016) (emphasis in original).[9] This Court is bound by Second Circuit authority.

### D. A monopolization or attempted monopolization plaintiff can prevail without proving a relevant market.

"[R]elevant market definition is not a necessary component" of "monopolization and attempted monopolization claims" where there is "direct evidence of monopoly power," such as the "ability to control prices or exclude competition." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 107-08 (2d Cir. 2002); *IHS Dialysis*, 2013 WL 1309737, at *4 n.3 (same); *accord Geneva Pharms. v. Barr Lab'ys*, 386 F.3d 485, 500 (2d Cir. 2004) ("'Monopoly power … can be proven directly through evidence of control over prices or the exclusion of competition.'") (citing *Tops Mkts. v. Quality Mkts.*, 142 F.3d 90, 98 (2d Cir. 1998)); Mot. 12 & n.12 (compiling cases).

Defendants argue that these three Second Circuit precedents were all overruled by *Heerwagen v. Clear Channel*, and that several subsequent district court decisions cited by NASL were simply wrong. But in fact, *Heerwagen* reaffirmed that "[m]onopoly power 'may be proven directly by evidence of the control of prices or the exclusion of competition.'" 435 F.3d 219, 227 (2d Cir. 2006). Misleadingly, Defendants focus on *Heerwagen*'s statement that a "plaintiff cannot escape proving her claims *with reference to* a particular market even if she intends to proffer direct evidence." *Id.* at 229 (emphasis added). But as later explained in *Shak*, this just meant that a

---

[9] The only other cited case adopting Defendants' position is *Concord Associates*—an unreported decision stating incorrectly that a conspiracy to monopolize plaintiff "generally must define the relevant market" to show the "defendant's ability to lessen or destroy competition," which is not an element of that claim in this Circuit. 2014 WL 1396524, at *20 (S.D.N.Y. Apr. 9, 2014).

monopolization plaintiff must make "'reference to a particular market,'" as NASL did—not that it must prove as an element that that market is correct. 156 F. Supp. 3d at 481-82 (quoting *In re Aluminum Warehousing Antitrust Litig.*, 2014 WL 4277510, at *35 (S.D.N.Y. Aug. 29, 2014)).

Defendants also incorrectly cite *Spectrum* for the proposition that it is "'beyond doubt' that market definition is an element of [a] monopolization claim." Opp'n 12. But what *Spectrum* actually stated is that "it is beyond doubt that [monopolization] requires proof of *market power* in a relevant market." 506 U.S. at 457 (emphasis added). Power in a relevant market can be proven with "direct evidence," as the Second Circuit repeatedly has held since *Spectrum*. *Supra* 5.[10]

Here, NASL introduced direct evidence at trial of MLS' control of prices, including the fact that MLS has inflated its team prices in the absence of any competitor D1 leagues. Mot. 8. NASL also provided direct trial evidence of MLS' exclusion of competition through its successful conspiracy with USSF to exclude any D1 competitor. *Id.*

### E. An antitrust plaintiff is not required to prove the specific markets it alleges.

Significantly, Defendants do not even attempt to defend a serious verdict form error applicable to all of NASL's claims—the fact that the Court rejected NASL's proposed verdict form that asked whether Defendants "participated in a conspiracy to unreasonably restrain trade in ***a market*** for top-tier or second-tier men's professional soccer leagues," and instead issued a verdict form that required NASL to "prove[] one of its four specific relevant markets." Mot. 4-6. The case law holds that a plaintiff can prevail where the jury finds anticompetitive harm in a relevant market that is different or broader than the one alleged by the plaintiff.[11]

---

[10] The same is true of *U.S. v. Grinnell*, 384 U.S. 563, 570-71 (1966) and *Electronics Communications*, 129 F.3d at 246. Those cases just held that monopolization requires "power in the relevant market"—not that the plaintiff must always prove what the relevant market is.

[11] *E.g.*, *USFL v. NFL*, 842 F.2d 1335, 1363-67 (2d Cir. 1988) (where jury "define[d] a [] market … broader than the market alleged by the" plaintiff, upholding jury instruction to determine whether "defendants have the power to control prices or exclude competition in this broader market"); *L.A.*

### F. NASL did not waive its relevant market arguments.

There is no support for Defendants' argument that NASL waived its right to prove anticompetitive harm directly without showing a relevant market. NASL has argued throughout this case that it should be permitted to do so, including on summary judgment and in multiple sets of jury instructions, even as the Court repeatedly rejected that argument. Mot. 2, 4.

Defendants ignore this history and instead seek to cobble together purported "concessions" on this issue by quoting prior NASL statements out of context. Defendants falsely assert that "[i]n the Complaint [and] Pretrial Order, … NASL repeatedly recognized that it was required to prove a relevant market." Opp'n 13-14. In fact, NASL just referred to the relevant markets it was alleging, and even *explicitly disputed* whether it was required to prove relevant markets in the joint pretrial order. ECF No. 57 ¶ 229; ECF No. 464 at 4-5, 8. A plaintiff does not waive its right to offer direct evidence to prove anticompetitive harm just because it also alleges relevant markets. *E.g.*, *Shak*, 156 F. Supp. 3d at 486 (rejecting pleaded relevant market but holding that "plaintiffs have adequately alleged monopoly power" through "direct evidence").[12]

Nor did NASL waive its relevant market arguments after the Court repeatedly rejected NASL's prior arguments that it need not prove a relevant market. NASL offered instructions in both rounds of proposed jury instructions that would have permitted it to prove its claims without proving a specific relevant market, which the Court rejected (Mot. 4), while also stating that it would "not entertain repetitive objections to portions of [jury] instructions." ECF No. 499 (docket entry). There was "no need to reiterate [NASL's] objection" at every stage, where NASL's

---

*Mem'l Coliseum v. NFL*, 726 F.2d 1381, 1394 (9th Cir. 1984) ("[I]t was not necessary for the jury to accept absolutely either the NFL's or the plaintiff's market definitions. Instead, the critical question is whether the jury could have determined that … Rule 4.3 harmed competition").
[12] Defendants also wrongly assert that NASL gave up its *per se* claim on summary judgment by stating that NASL would "prove a full rule of reason violation at trial," when in fact NASL was just confirming that it was not abandoning its Rule of Reason claim. ECF No. 293 at 38 n.15.

7

"position previously has been made clear to the trial judge and it [wa]s plain that a further objection would be unavailing." *E.R. Squibb v. Lloyd's & Cos.*, 241 F.3d 154, 167 (2d Cir. 2001) (rejecting argument that party waived challenge to verdict form after previously objecting).[13]

There is also no merit to Defendants' argument that NASL conceded at the final pretrial conference that a jury must find a specific relevant market rather than relying on direct evidence of anticompetitive harm. Opp'n at 13-14. The question being discussed at the conference was completely different—whether, to prove a relevant market, it was necessary for (1) each juror to find any relevant market, or (2) all jurors unanimously to find at least one market that is *the same.* ECF No. 547-2, Dec. 20, 2024 Hr'g Tr. 22:12-25, 32:2-14, 33:1-11. NASL's counsel ultimately agreed that "the jury must unanimously find that there is a relevant market." *Id.* But the entire premise of this discussion was that the Court already had ruled that it would require a specific relevant market to be found, over NASL's prior objections. *See* Mot. 2, 4.

**II.    A new trial is warranted based on serious errors in evidentiary rulings.**

It was also serious error for the Court to allow Defendants to present evidence and argument about downstream markets for fans, sponsors and broadcasters after barring NASL from doing so. Mot. 13-14. Defendants do not deny this disparate treatment—they ask the Court to reaffirm it. Defendants argue that "[u]nder NASL's own market theories, it did not need to prove any downstream anticompetitive effects," but "Defendants were well within their rights to poke holes in NASL's market theories and argue that NASL and MLS compete with other professional leagues … across nearly every aspect of their business," including downstream markets. Mot. 16.

---

[13] *Accord Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (same for jury instructions); *Virgin Atl. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) ("'[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'").

This argument is an improper attempt to defend unequal treatment.[14]

Defendants argue that some downstream evidence was relevant because NASL stated that, "[t]o the extent [downstream] evidence is relevant in assessing the bounds of the at-issue relevant market of team owners, NASL does not seek to preclude it," among other similar statements. ECF No. 293 at 15 n.6; Opp'n 16. But this misses the point. Whether or not that evidence was excluded, it should not have been excluded only for NASL. That unequal treatment requires a new trial.

### III. A new trial is warranted because the admission of inflammatory and prejudicial evidence was another serious error.

It was serious error to admit extensive inflammatory evidence that served to unfairly prejudice the jury against NASL, including evidence of Rocco Commisso's Twitter posts and litigation funding. Mr. Commisso was questioned at length about whether he believed MLS officials were "raping" USSF, Bernie Madoff's Ponzi scheme, and how this litigation was paid for. Mot. 15-16. Defendants argue that these topics are relevant to showing bias, but bias cannot be used as a basis to admit highly prejudicial evidence, where the witness' support of one party against another is already clear—as was true of Mr. Commisso as NASL's Chairman and a team owner.[15]

It was also serious error to permit Defendants to smear NASL with repetitive evidence about Traffic's unrelated criminal bribery. Defendants now downplay this evidence, but it went far beyond "provid[ing] a plausible alternative explanation for [NASL's] injuries." Opp'n 20. Defendants focused their case on a prejudicial narrative about Traffic's criminality—for example,

---

[14] *See Pac. Life Ins. Co. v. Bank of N.Y. Mellon*, 2021 WL 673479, at *11 (S.D.N.Y. Feb. 22, 2021) (evidence must be excluded or admitted for both sides; "[W]hat is good for the goose is good for the gander."); *Tomeo v. CitiGroup*, 2018 WL 4627386, at *7 (N.D. Ill. Sept. 27, 2018) (same).
[15] *Carroll v. Trump*, 124 F.4th 140, 172 (2d Cir. 2024) (upholding exclusion of litigation-funding bias evidence because witness "frankly admitted" her "opposition and distaste for" the other side). Defendants argue that *Carroll* is different from this case because Mr. Commisso was "a principal witness for the plaintiff." Opp'n 20. But this purported distinction not only lacks any support in the case law—it also makes no sense, since Ms. Carroll *was* the plaintiff and was her own primary witness, yet the court still prohibited cross-examination of her regarding her litigation funding.

9

pushing one witness to say NASL was "proud of [its] association with Traffic," playing video of Davidson invoking the Fifth 75 times, and asking extensive questions about an irrelevant payment from Traffic to a consultant that Defendants baselessly have labeled a "bribe."  Mot. 16-18.

## IV.     Upon retrial under Rule 59, the Court should correct several other serious errors.

As explained in NASL's Motion, several other evidentiary errors had serious impacts that should be corrected on retrial:

• Defendants fail to respond to NASL's argument that the timing and nature of the proposed 2015 Standards was relevant to proving Defendants' concerted action and anticompetitive intent to protect the MLS monopoly.  Mot. 19-20.  The *Warrior Sports* case cited by Defendants merely held that unadopted rules could not have caused an *antitrust injury*.  Opp'n 22-23.

• Defendants ignore NASL's argument that the McKinsey report was highly relevant because the jury should have been permitted to decide if Gulati's and MLS' dominance of the USSF Board, as Board members described to McKinsey, extended to USSF's sanctioning decisions.  Mot. 21.

• Defendants fail to respond to NASL's argument that the Court's *Daubert* holdings on damages improperly resolved disputed fact questions in Defendants' favor and allowed Defendants to escape paying damages based on the uncertainty their own misconduct caused.  Mot. 24-25.

## V.     The Court properly declined to grant Defendants' Rule 50(a) motion.

When Defendants previously moved for judgment under Rule 50(a), this Court did not grant that motion, and for good reason.  As noted in NASL's opposition, "[o]n summary judgment, NASL already made a sufficient showing on the elements of its claims to establish triable issues of fact, and the addition of trial testimony to the record only bolsters that showing."  ECF No. 526 at 1; ECF No. 399 (denying summary judgment; "[T]he evidence plaintiff presents is strong").

## CONCLUSION

For all the foregoing reasons, the Court should grant a new trial under Rule 59.

| | | |
|---|---|---|
| Dated: April 17, 2025 | By: | s/Jeffrey L. Kessler |

                                 Jeffrey L. Kessler
                                 David G. Feher
                                 Eva W. Cole
                                 Johanna Rae Hudgens
                                 Mark E. Rizik Jr.
                                 **WINSTON & STRAWN, LLP**
                                 200 Park Avenue
                                 New York, NY 10166
                                 Telephone: (212) 294-6700
                                 Facsimile: (212) 294-4700
                                 jkessler@winston.com
                                 dfeher@winston.com
                                 ewcole@winston.com
                                 jhudgens@winston.com
                                 mrizik@winston.com

                                 Clifford H. Pearson (Admitted *Pro Hac Vice*)
                                 Daniel L. Warshaw (Admitted *Pro Hac Vice*)
                                 Matthew A. Pearson (Admitted *Pro Hac Vice*)
                                 **PEARSON WARSHAW, LLP**
                                 15165 Ventura Boulevard, Suite 400
                                 Sherman Oaks, California 91403
                                 Tel.: (818) 788-8300
                                 Fax.: (818) 788-8104
                                 cpearson@pwfirm.com
                                 dwarshaw@pwfirm.com
                                 mapearson@pwfirm.com

                                 Neil J. Swartzberg (Admitted *Pro Hac Vice*)
                                 **PEARSON WARSHAW, LLP**
                                 555 Montgomery Street, Suite 120
                                 San Francisco, California 94104
                                 Tel.: (415) 433-9000
                                 Fax.: (415) 433-9008
                                 nswartzberg@pwfirm.com

                                 *Counsel for Plaintiff North American Soccer League, LLC*

## CERTIFICATE OF COMPLIANCE

I, Jeffrey L. Kessler, an attorney admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1(c) and Rule IV.B.2 of Judge Hector Gonzalez's Individual Practices, that the foregoing document was prepared in Microsoft Word and is 10 double-spaced pages, not including the items excluded by Local Rule 7.1(c).

Dated: April 17, 2025                                    By:   s/Jeffrey L. Kessler
                                                               Jeffrey L. Kessler